UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>　　　　　　　　Defendants. | Civil No.<br><br><br>**VERIFIED COMPLAINT<br>AND JURY DEMAND** |

The plaintiff John Doe, said name being fictitious, by his attorneys Murray-Nolan Berutti LLC, with knowledge as to his own acts, and on information and belief as to all others, alleges as follows:

**OVERVIEW**

1. This matter arises out of the actions taken by staff members at Delaware Valley Regional High School ("DVRHS"), under the auspices of the Delaware Valley Regional High School Board of Education ("Board"), the Attorney General of New Jersey ("AG"), and the New Jersey Department of Education ("NJDOE"), to socially transition Jane Doe ("Jane"), a minor child, from female to male without informing the plaintiff John Doe, her father, or seeking his consent. Mr. Doe has repeatedly expressed his objections to such acts and has been advised that the acts shall continue regardless, purportedly due to requirements of state discrimination law and policy.

1

2. The Board's actions constitute deliberate interference with Mr. Doe's fundamental constitutional right to care for and raise his child, a liberty interest under the Fourteenth Amendment of the United States Constitution, as determined by the Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality). Such acts, and the enforcement of the laws and policies on which such interference purportedly is based, must immediately be restrained and enjoined since Mr. Doe is being deprived of his constitutional right to make critical child-rearing decisions concerning the care, custody, and control of his minor child. Defendants' actions are subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest, a standard which cannot be satisfied by defendants under the circumstances presented.

3. Defendants' actions and the laws and policies upon which they are purportedly based also violate Mr. Doe's rights to be the primary person responsible for his child's education, in violation of 20 U.S.C. §3401(3).

4. Defendants' actions and the laws and policies upon which they are purportedly based also violate Mr. Doe's parental rights as guaranteed by the New Jersey Constitution.

5. Mr. Doe seeks to vindicate his fundamental rights of parenting, including the rights to have primary authority in the upbringing of his children and the right to make healthcare and medical decisions for his child without interference by the State. Thus, Mr. Doe seeks a Declaratory Judgment that defendants' acts and public policies are unconstitutional, an injunction prohibiting such interference with his constitutional and statutory rights and against the enforcement of contrary laws and public policies, and an award of monetary damages against the Board, the Superintendent, and individual employees of the school district who have violated his fundamental rights.

**THE PARTIES**

1. John Doe ("Mr. Doe") is a loving and caring father of minor child Jane Doe

("Jane"), who is a student at DVRHS, which is a regional high school located at 19 Senator Stout Road, Frenchtown, New Jersey.

2. Defendant Scott McKinney ("McKinney") is an individual residing at 233 Short Hills Drive, Bridgewater, New Jersey, is the Superintendent of DVRHS, and as such is the chief executive of the school district. He is named individually and in his official capacity.

3. Defendant Ashley Miranda ("Miranda") is an individual residing at 406 Saddle Ct. Flemington, New Jersey 08822. She is named individually and in her official capacity.

4. The Board is duly organized and formed pursuant to the laws of the State of New Jersey with respect to the establishment of school districts and school boards and receives federal funding.

5. Matthew J. Platkin is the Attorney General of the State of New Jersey and is named only in his official capacity.

6. Defendant Angelica Allen-McMillan is Acting Commissioner of the NJDOE and is named only in her official capacity.

7. John Roes 1-10 is a fictitious name for Board members and/or employees who aided in the violations of Mr. Doe's rights as set forth herein.

8. All defendants are state actors.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, such that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

10. Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) since defendants reside in the District, and the events and omissions complained of occurred in the District.

## FACTS COMMON TO ALL COUNTS

12. Jane is a minor child who has a documented diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD") and Unspecified Mental Disorder ("UMD").

13. Jane, who endured the childhood trauma of the death of her mother, has been under the care of a therapist for depression, anxiety, and gender confusion since April 21, 2022. Mr. Doe and mental health professionals have agreed to take a cautious approach to Jane's gender confusion given her underlying trauma and psychiatric co-morbidities.

14. The Board has a policy titled "5756 - Transgender Students," ("Board Policy 5756") a true copy of which is attached hereto as **Exhibit A** and which is incorporated herein by reference, which provides, in part:

> The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court-ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression.

15. The NJDOE published guidance to New Jersey public schools encourages them to take a "student-centered approach" to students who believe themselves to be transgender, which declares, "school district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun use, and parental communications." A true copy of such guidance is attached hereto as **Exhibit B** and is incorporated herein by reference.

16. Upon information and belief, the AG is actively litigating the legal position that although such policy is merely guidance, school districts must follow it since to do otherwise would violate the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.*, which provides certain anti-discrimination provisions with respect to gender identity.

17. When a student's name and pronouns are changed by a school so that the student can live as the opposite sex while at school and/or elsewhere, the school is initiating a social transition. Social transition is a psychotherapeutic intervention and is not a neutral act. Cass, H., *Independent review of gender identity services for children and young people: Interim report* (2022).

18. Gender dysphoria is considered a serious mental-health condition that requires professional help. "Since it is impossible to definitively delineate the contribution of various factors contributing to gender identity development for any given young person, a comprehensive clinical approach is important and necessary" *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8,* WPATH, International J. Trans. Health 2022, Vol. 23, No. S1-S258 (2022) ("WPATH").

19. Parents must be permitted to seek a mental health evaluation prior to any psychological intervention. Mental health providers "should provide guidance to parents/caregivers and supports to a child when a social gender transition is being considered" so that the parents can succeed in "making informed decisions about the advisability and/or parameters of a social transition for their child." WPATH at S78

20. As a freshman at DVRHS, Jane participated in an extracurricular club known as Students Advocating for Equality ("SAFE"), which purportedly exists or claims to exist to "promote open discussion and awareness about modern cultures and topics surrounding intersectionality while aiming to make positive contributions to our community and school."

21. Miranda is the staff advisor of SAFE and is neither a state licensed medical doctor nor psychologist.

22. Jane attended a SAFE meeting and expressed to defendant Miranda that she would like to undergo a social transition from female to male in school. Miranda immediately affirmed

5

Jane's expressed identity and began to facilitate Jane's social transition.

23. Miranda did not ask Jane about her mental health history, her history of trauma, or whether Jane was currently under the care of a mental health professional.

24. Contrarily, Miranda asked Jane if she would like to change her name and pronouns and be known only as a male at school, to which Jane agreed.

25. Miranda sent a communication to the entire staff of DVRHS other than two teachers. In such communication, Miranda informed staff of Jane's name change and advised that all such staff were required thereafter to use the alternate male name by which Jane desired to be called. Staff were also informed that Mr. Doe was not to be informed of Jane's social transition.

26. The only exception is that Miranda decided not to send the communication to two teachers, both of whom have contacts with members of the Doe household. The purpose of excluding such teachers, Sarah Hall and Kari Gursky, from the email was to keep Mr. Doe from learning of Jane's social transition which was taking place at DVRHS.

27. Thereafter, when communicating with Mr. Doe about his daughter, and before Mr. Doe eventually learned of the social transition of his daughter at DVRHS, the school always uses Jane's given female name, which was done for the purpose of concealing Jane's social transition at DVRHS, thus demonstrating a knowing interference with Mr. Doe's rights.

28. In December 2023, months after it commenced, Mr. Doe learned of Jane's social transition at school when another parent called Jane by a boy's name in his presence. Only after Mr. Doe inquired of the parent why the parent was calling Jane by a boy's name, the parent explained to Mr. Doe that Jane was being called by such name at school since she was being socially transitioned.

29. Upon learning that Jane had been provided with a separate identity at school and that DVRHS and its staff was intentionally concealing such fact from him, and due to his

6

daughter's distress at living a second life, Mr. Doe placed Jane on home instruction until he could share Jane's personal and therapeutic history with McKinney, Ashley, and the Board (the "Board Defendants").

30. On December 8, 2023, Mr. Doe met with DVRHS administration as well as Miranda, who indicated that she was not aware of Jane's ADHD and UMD diagnoses or her past trauma when she facilitated Jane's social transition. Miranda also advised that she was unaware that Jane was under the care of a therapist at Mr. Doe's parental direction and with his consent.

31. Mr. Doe informed the District that he and Jane's therapist were not in agreement with Jane's social transition and expressly denied his consent to the continuance of Jane's social transition at school.

32. The District advised that it would continue to have Jane called by a male name until such time as Jane indicated otherwise, such that it specifically and deliberately insisted on interfering directly with protected aspects of Mr. Doe's parent-child relationship.

33. Following the meeting, a Cease and Desist letter was served on the Board Defendants. The Cease and Desist letter asserted, among other things, that Mr. Doe's parental rights were being violated. A true copy of the Cease and Desist letter is attached hereto as **Exhibit C**, and is incorporated herein by reference.

34. Thereafter on December 8, 2023, a letter was forwarded by Mr. Doe's attorneys which confirmed the critical events of the meeting that had occurred, reiterated that a Cease and Desist was served, and renewed the demand that the Board Defendants cease and desist from socially transitioning Jane against Mr. Doe's parental judgment as to Jane's best interests. A true copy of such letter is attached hereto as **Exhibit D** and is incorporated herein by reference.

35. On December 22, 2023, the Board Defendants responded via legal counsel, who advised that Jane was approved for home instruction, but "that the District will continue to abide

by federal and state law as well as the Department of Education guidance regarding transgender students to ensure that the District is not discriminating against a student based on gender identity or expression." A true copy of such letter is attached hereto as **Exhibit E** and is incorporated herein by reference.

36. Consequently, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship and expressed deliberate indifference to Mr. Doe's fundamental rights and further interfered with such constitutional and statutory rights by establishing a policy that the only way Jane could return to the classroom is if Mr. Doe chose to waive his constitutional and statutory parental rights and to abide by the Board Defendants' violations thereof, based on the Board Defendants' interpretation of law and public policy, as to Policy 5756's guidance.

37. On January 2, 2024, counsel for the Board Defendants further noted in an email to Mr. Doe's attorney that the school district had a goal to implement "home instruction" for Jane in a public library, but that "to ensure there is no misunderstanding," Mr. Doe should "know that during home instruction the teachers will comply with district policy, NJDOE guidance, and federal and state laws regarding A.H.'s name preference."

38. Consequently, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship, expressed deliberate indifference to Mr. Doe's fundamental rights, and further interfered with such constitutional and statutory rights by establishing a policy that made it impossible for Jane to receive a public education unless Mr. Doe yielded his constitutional and statutory parental rights.

39. There is no fundamental constitutional right for Jane to socially transition, and the Board Defendants have no compelling government interest in requiring the social transition of Jane to proceed. Moreover, even if such compelling government interest did exist, which it does

not, the Board Defendants' actions are not narrowly tailored to achieve such interest.

40. The AG and NJDOE have no compelling government interest in promulgating and enforcing laws and public policies that interfere with parents' fundamental constitutional and federal statutory rights, as is the case with Mr. Doe, and even if such compelling government interest did exist, which it does not, the AG and NJDOE's actions are not narrowly tailored to achieve such interest.

41. Mr. Doe has no other viable alternative other than to send Jane to DVRHS. In light of the willful and deliberate violations to his rights that have occurred, and the promise of continued violations of the same rights based on the purported basis of Board Policy 5756, NJDOE guidance, and federal and state laws which alleged to require as much, Mr. Doe hereby seeks the immediate protection of his parental rights.

42. Such rights also include Mr. Doe's parental right for Jane to receive "maintenance and support for a thorough and efficient system of free public school instruction," in keeping with N.J. Cont. Art. 8 §1.

43. Further, given the District's intransigent insistence that even during what purportedly is "home instruction" it will deliberately violate Mr. Doe's rights, Mr. Doe seeks appointment of an independent monitor to ensure that defendants do not interfere with his rights upon Jane's return to school.

**FIRST COUNT**
**(Declaratory Judgment 28 U.S.C. § 2201)**

1. Mr. Doe repeats and reasserts each and every allegation above as is fully set forth herein at length.

2. An actual controversy exists among the parties hereto within the jurisdiction of this Court as to their rights and responsibilities which is appropriate for declaration of the rights and other legal relations among and between them with respect to the matters set forth above.

3. "It is cardinal with … [the United States Supreme Court] that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality).

4. The rights to "to teach and the right of parents to engage … so to instruct their children … are within the liberty of the [Fourteenth] Amendment." *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Troxel*, *supra,* 530 U.S. at 77 (Thomas, J., concurring).

5. The United States Supreme Court has thus "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66

6. Accordingly, "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69

7. There is a "presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69

8. The United States Supreme Court's "decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977) (plurality).

9. 20 *U.S.C.* §3401(3) is the supreme law of the land, and provides, in pertinent part, that "parents have the primary responsibility for the education of their children, and States, localities, and private institutions have the primary responsibility for supporting that parental role."

10. There is no fundamental right of minor children under the United States Constitution to socially transition without their parents' knowledge or consent.

11.     The NJDOE's Policy 5756 violates Mr. Doe's fundamental constitutional rights under the Fourteenth Amendment's Due Process Clause, without limitation, since it promites the substitution of the judgment of school districts, school administrators, and school staff members for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health, should social transitioning lead to the child's desire to progress with medical transitioning, and, thus, is void and unenforceable.

12.     To the extent that the NJLAD, *N.J.S.A.* 10:5-1 *et seq.* or other state law is intended to preclude parental knowledge and consent of social transitioning of their minor children in schools, it violates fundamental constitutional parental rights under the Fourteenth Amendment's Due Process Clause, since it substitutes the judgment of public officials for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health should social transitioning lead to the child's desire to progress with medical transitioning and, thus, is void and unenforceable.

13.     The NJDOE Policy 5756 and Board Policy 5756 violate fundamental constitutional parental rights since they substitute the judgment of public officials for that of parents with respect to important aspects of their children's education, including related to issues concerning mental health, welfare, and physical health, should social transitioning lead to the child's desire to progress with medical transitioning, and, thus, are void and unenforceable.

14.     The NJDOE's guidance violates 20 *U.S.C.* §3401(3), since the state's school districts receive federal funding, and the guidance removes parents from having primary responsibility for the education of their children and places the primary responsibility for the education of children as to social transitioning with state and localities that do not necessarily support the parental role, but rather interfere with the parental role, as in Mr. Doe's case.

15.     To the extent that the NJLAD is intended to preclude parental knowledge and

consent of social transitioning of their minor children, it is contrary to and cannot be harmonized with the responsibilities of school districts in the state to support parents' educational upbringing of their minor children per 20 *U.S.C.* §3401(3) and, thus, is unconstitutional as violating the Supremacy Clause, *U.S. Const.* Art. VI, Cl. 2, such that it void and unenforceable.

16. The District's Policy 5756 is unconstitutional as violating the Supremacy Clause, *U.S. Const.* Art. VI, Cl. 2, since the district receives federal funding and is thus required to comply with 20 *U.S.C.* §3401(3), which it is violating.

17. To the extent that any other federal or state laws or policies on which defendants, or some of them, purport to rely in further proceeding with Jane's social transition, such laws and/or policies are void and unenforceable by reason of their violating the Fourteenth Amendment's Due Process Clause and/or 20 *U.S.C.* §3401(3), in whole or in part, for the reasons set forth above.

18. There is no compelling governmental interest in the State, the Board Defendants, or anyone operating under the Board's authority to socially transition a minor child without the fully informed consent of the child's parents.

19. The Board Defendants have shown an outward contempt of Mr. Doe's parental rights and have promised to compel Jane's continued social transition despite Mr. Doe's demands to the contrary such that his constitutional and statutory parental rights are knowingly and contumaciously being impaired, such that independent monitoring of the District's practices as related the violation of Mr. Doe's rights must be required.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A. Declaring that so long as he is a fit parent, which is presumed, Mr. Doe has a fundamental right pursuant to the Fourteenth Amendment's Due Process Clause to direct the

upbringing of his child including, without limitation, with respect to all issues related to his child's mental health, welfare, and physical health, without interference by defendants in the absence of a compelling governmental interest which is narrowly tailored to achieve such interest;

B. Declaring that there is no compelling governmental interest in any of the defendants, all of whom and which are state actors, to socially transitioning a child without the fully informed consent of the child's parents or legal guardians;

C. Declaring the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, to be unconstitutional and void under the Fourteenth Amendment's Due Process Clause to the extent that it is would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

D. Declaring the NJDOE's Policy 5756 and Board Policy 5756 to be unconstitutional and void under the Fourteenth Amendment's Due Process Clause since they deprive parents of fully informed knowledge and consent with respect to aspects of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

E. Declaring the NJDOE's guidance to be in violation of 20 *U.S.C.* §3401(3), such that it is unconstitutional and void under Article VI, Cl. 2 of the United States Constitution;

F. Declaring the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, to be in violation of 20 *U.S.C.* §3401(3), to the extent that it is deprives parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular such that it is unconstitutional and void under Article VI, Cl. 2 of the United States Constitution;

G. Declaring the District's Policy 5756 to be in violation of 20 *U.S.C.* §3401(3), such that it is unconstitutional and void under Article VI, Cl. 2 of the United States Constitution;

H. Declaring that there is no fundamental constitutional right for a minor to socially transition;

I. Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

J. Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

K. Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

L. Providing temporary restraints and preliminary injunctive relief as needed;

M. Compelling the Board to provide mainstream classroom instruction to Jane;

N. Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole expense, upon Jane's return to school;

O. Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs;

P. Awarding such other and further relief as may be equitable and just.

14

## SECOND COUNT
### (42 U.S.C. § 1983 – Parental Rights)

1. Mr. Doe repeats and reasserts each and every allegation above as is fully set forth herein at length.

2. The Board Defendants have knowingly and contumaciously committed and continue to commit a constitutional tort by socially transitioning Mr. Doe's minor daughter without parental notification or consent so as to frustrate his right to direct the upbringing of his child including, without limitation, issues related to his child's mental health, welfare, and physical health, without interference by the state in violation of Mr. Doe's fundamental liberty interests as set forth above, in violation of the Fourteenth Amendment's Due Process clause.

3. There is no compelling, significant, or other reasonable governmental interest in the Board Defendants' socially transitioning Jane in violation of Mr. Doe's fundamental constitutional parental rights as aforesaid, and their acts in such regard otherwise are arbitrary, capricious, and/or irrational.

4. Defendants' actions are purportedly based on reliance on federal and state law and policy which compels such actions all of which such laws and policies including, without limitation, N.J.S.A. 10:5-1 *et seq.*, and the NJDOE's Policy 5756, enforcement and promulgation of which by state actors violates the federal constitutional and statutory rights of parents as aforesaid, such that they violate the Supremacy Clause of the Constitution.

5. By their actions, defendants have deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution, *to wit,* the Fourteenth Amendment of the Constitution, and are causing severe and permanent damages, including, without limitation, emotional distress, economic damages, physical harm, and consequential damages.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A. Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B. Punitive Damages against the Board Defendants and John Roes 1-10 only;

C. Consequential Damages against the Board Defendants and John Roes 1-10 only;

D. Permanently restraining and enjoining the Board Defendants, and anyone acting under their authority, from socially transitioning the plaintiff's daughter or otherwise interfering with his parental rights;

E. Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq*. or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

F. Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

G. Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

H. Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole cost and expense, upon Jane's return to school;

I. Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

J. Awarding interest as allowed by law;

16

  K. Awarding such other and further relief as may be equitable and just.

**THIRD COUNT**
**(Violation of N.J.S.A. 10:6-2 *et seq.*)**

  1. Mr. Doe repeats and reasserts each and every allegation above as if fully set forth herein at length.

  2. Defendants, by their conduct, have acted under color of law so as to interfere and/or attempt to interfere by means of express or implied threats, intimidation, and coercion with the exercise and enjoyment by Mr. Doe of his due process rights, privileges, and/or immunities secured by the Constitution or laws of the United States, and the New Jersey Constitution as aforesaid, including, without limitation, the right to parent a minor child who is receiving a thorough and efficient education, such that they have caused Mr. Doe damage in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 *et seq*.

  WHEREFORE, the plaintiff demands judgment in his favor, and against defendants as follows:

  A. Compensatory Damages against the Board Defendants and John Roes 1-10 only;

  B. Punitive Damages against the Board Defendants and John Roes 1-10 only;

  C. Consequential Damages against the Board Defendants and John Roes 1-10 only;

  D. Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

  E. Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent

17

with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

 F. Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

 G. Appointing an independent monitor to protect Mr. Doe's parental rights, at the sole expense of the school district, upon his daughter's return to school;

 H. Awarding the plaintiff all costs of suit, including reasonable legal fees and costs, per statute;

 I. Awarding interest as allowed by law;

 J. Awarding such other and further relief as may be equitable and just.

## JURY DEMAND

The plaintiff demands trial by jury on all Counts so triable.

       **MURRAY-NOLAN BERUTTI LLC**
       Attorneys for Defendants/Counterclaimants/Third Party Plaintiffs.

       *s/ Ronald A. Berutti*
       _____
       Ronald A. Berutti

Dated: January 5, 2024

## VERIFICATION UNDER OATH

      John Doe of full age, being duly sworn upon his or her oath according to law deposes and says:

    1. I am the plaintiff in this matter.

    2. I have read the Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

                                                                       _____
                                                                          John Doe

Dated: January 5, 2024