UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>                     Plaintiff,<br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>                     Defendants. | Civil Action No. 3:24-cv-107 GC-JBD |

**BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE SEEKING TEMPORARY RETRAINTS AND A PRELIMINARY INJUNCTION.**

MURRAY-NOLAN BERUTTI LLC
136 Central Avenue, 2nd Floor
Clark, New Jersey 07066
908-588-2111
ron@murray-nolanberutti.com
Attorneys for Plaintiff John Doe

On the Brief:
Ronald A. Berutti - 023361992

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................1

LEGAL ARGUMENT ........................................................................................................7

POINT I-DEFENDANTS HAVE AND CONTINUE TO VIOLATE FUNDAMENTAL CONSTITUTIONAL RIGHTS WHICH CONTINUES TO CAUSE IRREPARABLE INJURY TO MR. DOE...................................................................................................11

POINT II- A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE APPROPRIATE. .........................................................................10

CONCLUSION................................................................................................................14

## TABLE OF AUTHORITIES

<u>**Page**</u>

**Cases**

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ................................................................... 13

*Bellotti v. Baird*, 443 U.S. 622, 634 (1979) ................................................................ 9

*Croft v. Westmoreland Cnty., Ch. & Youth. Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997) ........................................................................................ 9

*Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997) ........................................................................................ 8

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ...................................... 9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) .................................................................................... 11

*Gruenke v. Siep*, 225 F.3d 290, 295 (3d Cir. 2000) ...................................................... 8

*Hodgson v. Minn.*, 497 U.S. 417, 471(1990) ......................................................... 8,9

*In re Custody of Smith*, 969 P.2d 21 (Wa. 1998) ........................................................ 8

*Mahanoy Area School Dist. V. B.L.*, 141 S.Ct. 2038, 2052 ............................................ 8

*Major v. Maguire*, 224 N.J. 1, 6 (2016) ..................................................................... 9

*McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003 ................................................................. 12

*Meyer v. Nebraska*, 262 U.S. 390, 400 (1923)............................................................................ 8,10

*Montgomery v. Louisiana*, 577 U.S. 190, 205 (2016)................................................................. 10

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 18-19 (2023)............................................. 11

*Parham v. J.R.*, 442 U.S. 584, 602 (1979) ................................................................................. 7,9

*Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37,

45 (1983) ..................................................................................................................................... 11

*Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925) ................................................................ 7

*Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) .................................................................... 8

*Troxel v. Granville*, 530 U.S. 57, (2000) (plurality) .................................................................. 8,9,11

*Wash. v. Glucksberg*, 521 U.S. 702, 720-721 (1997)................................................................. 10,11

*Wisconsin v. Yoder*, 406 U.S. 205, 232-33 (1972) ..................................................................... 8

**Statutes**

*U.S. Cont. Art. 6,C2*……………………………………………………………........…………….10

**PRELIMINARY STATEMENT**

The plaintiff, John Doe ("Mr. Doe"), submits this supplemental brief following the Case Status Conference held on January 31, 2024. Mr. Doe submits this in order to accomplish the following:

(1) Provide the Court with new facts that have occurred since the filing of the Verified Complaint and application for an Order to Show Cause which demonstrate the emergent nature of this matter and the irreparable harm that is being caused;

(2) To further expand on the law supporting the existence of fundamental parental rights which are being abused by defendants by their acts; and

(3) To clarify the standard of review.

**STATEMENT OF FACTS**

It is important to highlight prior facts so that they may be placed in context with new facts that have arisen since this action was filed. Such facts demonstrate the irreparable harm being caused by defendants' actions, as well as the violations of Mr. Doe's fundamental rights.

- Jane is a minor child who has a documented diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD") and Unspecified Mental Disorder ("UMD");

- Jane endured the childhood trauma of the death of her mother;

- Jane has been under the care of a therapist for depression, anxiety, and gender confusion since April 21, 2022;

- Mr. Doe, Jane's widowed father, and mental health professionals have agreed to take a cautious approach to Jane's gender confusion given her underlying trauma and

1

psychiatric co-morbidities. (VC¶¶ 1-2)[1];

- As a freshman at DVRHS, Jane participated in an extracurricular club known as Students Advocating for Equality ("SAFE"), which exists to "promote open discussion and awareness about modern cultures and topics surrounding intersectionality while aiming to make positive contributions to our community and school." (VC ¶9);

- Miranda is the staff advisor of SAFE and is neither a state licensed medical doctor nor psychologist. (VC ¶10);

- Jane attended a SAFE meeting and expressed to defendant Miranda that she would like to undergo a social transition from female to male in school. Miranda immediately affirmed Jane's expressed identity and began to facilitate Jane's social transition. (VC ¶11);

- Miranda did not ask Jane about her mental health history, her history of trauma, or whether Jane was currently under the care of a mental health professional, but rather asked Jane if she would like to change her name and pronouns and be known only as a male at school, to which Jane agreed (VC ¶¶12-13);

- Thereafter, Miranda sent a communication to the entire staff of DVRHS **other than two teachers who had contact with members of Mr. Doe's household**, who were deliberately excluded so that Mr. Doe would not learn of the social transition of his daughter (VC ¶¶14-15);

- In such communication, Miranda informed staff of Jane's name change and advised

---

[1] "VC" refers to the Verified Complaint; "Berutti Dec." refers to the Declaration of Ronald A. Berutti, dated January 5, 2024; "Doe Dec" refers to the plaintiff's Declaration, dated February 2, 2024.

2

- that all such staff was required thereafter to utilize the alternate male name by which Jane desired to be called (VC ¶¶14-15);

- **Staff were also informed that Mr. Doe was not to be informed about Jane's social transition** (VC ¶¶14-15);

- Thereafter, and before Mr. Doe eventually learned of the social transition of his daughter at DVRHS, **when communicating with Mr. Doe about his daughter, the school always uses Jane's given female name, which was done for the purpose of deliberately concealing Jane's social transition at DVRHS from Mr. Doe** (VC ¶16);

- In December 2024, months after the commencement of Jane's purposely secretive social transition at DVRHS, Mr. Doe learned of Jane's social transition at school when another parent called Jane by a boy's name in his presence. After Mr. Doe inquired of the parent why the parent was calling Jane by a boy's name, the parent explained to Mr. Doe that Jane was being called by such name at school since she was being socially transitioned (VC ¶17);

- Upon learning that Jane had been provided with a separate identity at school and that DVRHS and its staff was intentionally hiding such fact from him, and due to his daughter's distress at living a concealed double life, Mr. Doe placed Jane on home instruction until he could share Jane's personal and therapeutic history with McKinney, Ashley, and the Board (VC ¶18);

- On December 8, 2023, Mr. Doe met with DVRHS administration and Miranda, who indicated that she was not aware of Jane's ADHD and UMD diagnoses or her past trauma when she facilitated Jane's social transition (VC ¶19);

3

- Miranda also advised that she was unaware that Jane was under the care of a therapist at Mr. Doe's parental direction and with his consent (VC ¶19);

- **Mr. Doe informed the Board Defendants that he and Jane's therapist were not in agreement with Jane's social transition and expressly denied his consent to the continuance of Jane's social transition at school,** but was advised that Jane would continue being socially transitioned, such that the Board Defendants specifically and deliberately determined to interfere with protected aspects of Mr. Doe's parent-child relationship (VC ¶¶20-21);

- Following the meeting, a Cease and Desist letter was served on the Board Defendants, which asserted, among other things, that Mr. Doe's parental rights were being violated (VC ¶22, Ex. C);

- Thereafter on December 8, 2023, a letter was forwarded to the Board Defendants which confirmed the critical events of the meeting that had occurred, reiterated that a Cease and Desist was served, and renewed the demand that the Board Defendants cease and desist from socially transitioning Jane **against Mr. Doe's parental judgment as to Jane's best interests** (VC ¶23, Ex. D);

- On December 22, 2023, the Board Defendants responded by advising that Jane would be approved for home instruction, but "that the District will continue to abide by federal and state law as well as the Department of Education guidance regarding transgender students to ensure that the District is not discriminating against a student based on gender identity or expression." (VC¶24, Ex. E);

- Consequently, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child

4

relationship and expressed deliberate indifference to Mr. Doe's fundamental parental rights and further interfered with such constitutional and statutory rights by establishing a policy that only way that Jane could physically return to the classroom is if Mr. Doe chose to waive his constitutional and statutory rights and to abide by the Board Defendants' violations thereof, based on the Board Defendants' interpretation of law and public policy (VC ¶25);

- On January 2, 2024, counsel for the Board Defendants further noted in an email to Mr. Doe's attorney that the school district had a goal to implement "home instruction" for Jane in a public library, but that "to ensure there is no misunderstanding," **Mr. Doe should "know that during home instruction the teachers will comply with district policy, NJDOE guidance, and federal and state laws regarding (Jane's) name preference."** (VC ¶26; Berutti Dec. Ex. A);

- Thus, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship, expressed deliberate indifference to Mr. Doe's fundamental parental rights, and further interfered with such constitutional and statutory rights by establishing a policy that made it impossible for Jane to receive a public education unless Mr. Doe yielded his constitutional and statutory parental rights (VC ¶27);

- During the period prior to Mr. Doe learning of Jane's social transition at school in which she was leading a secret double life from her family, Jane would shut herself in her room , was disengaged from the family, and was noticeably depressed (Doe Cert. ¶6);

- Since being home and out of school, Jane became a changed person who is more

5

engaged with her family, has stopped shutting herself in her room and being secretive, and has become much more visibly happy (*Id.*);

- On January 3, 2024, DVRHS affirmed that it would continue socially transitioning Jane in the "at home" educational settings it was offering, which was either at a public library or on a 1:1 basis after school (Doe Cert. ¶3)

- On January 8, 2024, DVRHS was provided a letter from Jane's pediatric group requesting home instruction for Jane due to mental health concerns (Doe Cert. ¶5);

- On January 18, 2024, DVRHS attorneys responded with an offer of 1:1 instruction for Jane after school, which did not address the district's ongoing violation of Mr. Doe's parental rights or the medical best interests of Jane, and which threatened Jane with truancy if she did not comply (Doe Cert. ¶7);

- That same day, Mr. Doe's attorneys responded, noting that Jane did not need to be protected from her fellow students, but rather, from staff which was unyielding in its insistence that Mr. Doe's parental rights would be ignored in favor of continuing with Jane's social transition (Doe Cert. ¶8);

- On January 20, 2024, Mr. Doe received a visit from two Division of Child Protection and Permanency workers at his home for a well check on Jane, with DVRHS apparently contacting them. Mr. Doe explained the situation and the workers appeared satisfied that Jane was well taken care of, and understood the fact the Mr. Doe was involved in litigation with DVRHS (Doe Cert. ¶9);

- On January 25, 2024, DVRHS's attorney corresponded to Mr. Doe's attorneys advising that it was offensive that DVRHS staff and administrators were asserted to be the problem for Jane, and demanding further evidence that Jane needed to be

- receiving at home instruction (Doe Cert. ¶10);

- On February 2, 2024, defense counsel was provided with a copy of a new letter from Jane's pediatrics group requesting at home instruction due to anxiety and depression which is exacerbated by the emotional stress and strain of her educational setting at DVRHS. (Doe Cert. ¶11)

## LEGAL ARGUMENT

### POINT I

**DEFENDANTS HAVE AND CONTINUE TO VIOLATE FUNDAMENTAL CONSTITUTIONAL RIGHTS WHICH CONTINUES TO CAUSE IRREPARABLE INJURY TO MR. DOE.**

The rights claimed by Mr. Doe are not controversial and are fundamental under the United States Constitution. The arguments made by defendants during this Court's conference call are specious and do not support their opposition to injunctive relief.

"Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children." *Parham v. J.R.*, 442 U.S. 584, 602 (1979). "Our cases have consistently followed that course; our constitutional system long ago rejected any notion that a child is 'the mere creature of the State' and, on the contrary, asserted that parents generally 'have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.'" *Id.* (*quoting Pierce* v. *Society of Sisters*, 268 U.S. 510, 535 (1925)). It is well-settled that the constitutional foundation of parental rights are premised in the established notion that parents "possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Parham v. J.R.*, 442 U.S. 584, 602, (1979). Further, natural bonds of affection "lead parents to act in the best interests of their children." *Id.* That minors lack the natural maturity, experience, and capacity for judgment renders

7

them, as a matter of law, generally unable to *"make sound judgments concerning many decisions,* **including their [own] medical care**.*" Id.* (emphasis added)

In *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944), the Supreme Court held that "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." In that vein, in *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923), the Supreme Court held that parents have the right "to teach and ... to engage … so to instruct their children ..." In *Mahanoy Area School Dist. V. B.L.*, 141 S.Ct. 2038, 2052 (Alito, J., concurring), Justice Alito further expounded that "inferred parental consent" provides schools with only "a degree of authority ... commensurate with the task that the parents ask the school to perform." Parental primacy was reinforced by the United States Supreme Court in *Wisconsin v. Yoder*, 406 U.S. 205, 232-33 (1972), wherein the Supreme Court held that when parents make decisions concerning the upbringing of their children, their right to do so "established beyond debate as an enduring American tradition." When it comes to a decision on "whether to expose their child[] to certain . . . ideas," the parents, not the government," should be the ones to choose." *In re Custody of Smith*, 969 P.2d 21 (Wa. 1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, (2000) (plurality). Thus, in *Troxel*, a plurality of the Supreme Court held that "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Troxel*, *supra, 530* U.S. at 65-66. Moreover, the "parents' right to direct their children's upbringing is a right *against* state interference with family matters." *Hodgson v. Minn.*, 497 U.S. 417, 471(1990)(emphasis in original).

The Third Circuit Court of Appeals also has weighed in as to parental primacy, which may only yield to a compelling state interest: "It is not educators, but parents who have primary rights

in the upbringing of children. **School officials have only a secondary responsibility and must respect these rights.**" *Gruenke v. Siep*, 225 F.3d 290, 295 (3d Cir. 2000). The Third Circuit has also "recognized a cognizable liberty interest in preserving the life and physical safety of a minor child. . . a right that logically extends from a parent's recognized liberty interest in the custody of his children and the maintenance and integrity of the family." *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003) (quotation omitted and cleaned up). "[A] state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Croft v. Westmoreland Cnty., Ch. & Youth. Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997). Further, the New Jersey Supreme Court has weighed in the supremacy of parental rights as well, in a case concerning grandparent visitation, noting that "[a]bsent a showing that the child would suffer harm if deprived of contact with his or her grandparents, the State cannot constitutionally infringe on parental autonomy." *Major v. Maguire*, 224 N.J. 1, 6 (2016).

"The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Parham, supra,* 442 U.S. at 602. While "[p]arental authority is not limitless," *Hodgson supra*, 497 U.S. at 471, "[s]imply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Parham*, *supra*, 442 U.S. at 603. Indeed, in *Troxell*, *supra*, 530 U.S. at 68, the Supreme Court reversed a decision that failed to presume a mother's parental fitness and affection for her child. Simply put, "the constitutional rights of children cannot be equated with those of adults." *Bellotti v. Baird*, 443 U.S. 622, 634 (1979), *overruled on other grounds, Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

9

As such, the Constitution has always protected parental rights, and the State has always been precluded from abrogating them in the absence of a finding of parental unfitness, which always is presumed *not* to be the case.

## POINT II

**A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE APPROPRIATE.**

The decision to enjoin defendants here should be an easy one. Consider that in *Meyer*, *supra*, 262 U.S. 390, the question was whether the parents had a right to determine whether their child would be able to learn German in school, which violated a Nebraska state statute. The Supreme Court held in favor of the parents exercising their fundamental right to direct the education of their children. Here, the issue is much bigger; it is not about what language will be taught to the minor child, but rather, whether a girl can transition to being a boy in deliberate and purposeful secrecy from her father. Such gross violation of parental rights not only is being conducted by DVRHS, but it is being performed under the auspices of State statutes and policies which the Attorney General and Acting Commissioner of Education have actively sought to enforce in state courts, and to promulgate for all state schools to follow.

This Court asserted during the parties' conference call that Mr. Doe is seeking to alter the status quo with his application for temporary restraining order and preliminary injunction. Such status quo violates Mr. Doe's fundamental constitutional parental rights. However, pursuant to *U.S. Const.* Art. 6, Cl. 2, the Supremacy Clause, "a State may not deny a controlling right asserted under the Constitution." *Montgomery v. Louisiana*, 577 U.S. 190, 205 (2016).

Parental rights are thus fundamental rights requiring the State to bear the burden of a strict scrutiny analysis. In *Wash. v. Glucksberg*, 521 U.S. 702, 720-721 (1997) (quotations and citations omitted), the Supreme Court wrote that the Due Process Clause "specially protects those

fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition ... and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Further, the Court noted that "the Fourteenth Amendment forbids the government to infringe ... fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (emphasis in original)(quotations and citations omitted). Justice Thomas has specified that the parent's fundamental right to the "care, custody and control" of a child is subject to strict scrutiny analysis. *Troxel*, *supra*, 530 U.S. at 80 (Thomas, J., concurring).

In order to meet their burden as to satisfaction of strict scrutiny, the state must "prove that the law is narrowly tailored   achieve a compelling governmental interest." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 18-19 (2023). Further, even if there is a compelling governmental interest involved which may justify violating fundamental parental rights--there is not--the State must also prove that it has done so in a manner "narrowly tailored to serve a compelling governmental interest. *See, e.g.*, *Perry Education Ass'n* v. *Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983) (under strict scrutiny, a restriction on speech is constitutional only if it is narrowly tailored to serve a compelling governmental interest).

Here, Mr. Doe has specifically advised DVRHS that it must cease and desist from violating his fundamental parental rights. It refused. DVRHS leaned on State law and policy for such position. Indeed, the State Attorney General has litigated against parental rights and in favor of enforcement of such laws and policies, including that of the Department of Education, which compel secrecy as to social transitioning of minors. Compounding such egregious violations of fundamental rights is that DVRHS purposely hid its social transition of Jane from Mr. Doe by (1) purposefully not advising the two teachers in the school who had a relationship with the Doe family

11

so that they would not advise Mr. Doe what was happening with his daughter; and (2) always referring to his daughter by her given name when discussing her with Mr. Doe, while at all other times referring to Jane by a chosen boy's name. Now DVRHS insists that even though this litigation has been commenced following its refusal to adhere to Mr. Doe's cease and desist demand, it will continue to compel Jane to attend school in public places where DVRHS shall continue to socially transition Jane.[2]

No identifiable state interest exists in light of the mandates of the Supreme Court and the Third Circuit Court of Appeals that the State must yield to parental rights. There can be no presumption that a parent will not act in his child's best interest such that secrecy must be maintained related to social transitioning. Moreover, even if such an interest did exist--it does not --the secreting of Jane's once-stated desire to be a boy, including by not advising two teachers who are socially involved with the Doe family, is not narrowly tailored to such interest, since parents must be provided with the information necessary for them to help guide their own children. At the very least, Mr. Doe should have been consulted so that he could decide what was in Jane's best interests.

Typically, the movant must bear the burden in seeking an injunction. However, in cases involving the deprivation of fundamental rights, the Supreme Court has, in some instances at least, shifted the burden. In *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006), the Supreme Court rejected the government's argument that "although it would bear the burden of demonstrating a compelling interest as part of its affirmative defense at trial on the

---

[2] Counsel for DVRHS argued profusely that the individual defendants must be dismissed on grounds of sovereign immunity since there is not a well-established constitutional principle involved. However, the fundamental nature of parental rights is established in the roots of our Constitution, as noted in the above-cited case law. Moreover, the individuals cannot claim ignorance since they were specifically advised of the Supreme Court precedent which contradicted their actions, yet they have insisted that going forward that they will continue violating Mr. Doe's rights, including the right to the care, custody and nurture of Jane.

merits, the [plaintiff] should have borne the burden of disproving the asserted compelling interests at the hearing on the preliminary injunction." Instead, the Supreme Court affirmed the grant of a preliminary injunction to a plaintiff where the *government* failed to prove the existence of a compelling interest. A similar determination previously had been upheld by the Supreme Court in *Ashcroft v. ACLU*, 542 U.S. 656 (2004).

While both *Gonzales* and *Ashcroft* involved First Amendment issues, the larger point is that in cases where fundamental rights are in issue, even at the preliminary injunction stage, it is the State's burden to demonstrate that it has satisfied the strict scrutiny requirements of there being a compelling governmental interest which is narrowly tailored to such interest. As noted above, defendants cannot demonstrate the existence of a compelling governmental interest at all here, and if they could (they cannot), their actions have not been narrow tailored to such objective. In other words, by violating Mr. Doe's parental rights without comporting with strict scrutiny, Mr. Doe is entitled to injunctive relief.

Similarly, the Third Circuit has noted that the denial of preliminary injunctive relief will cause irreparable harm where a likely violation of constitutional rights occurs. *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997). The violation of constitutional rights is facially apparent here, and DVRHS has promised that it shall continue to so violate Mr. Doe's rights. Thus, regardless that the application may be seeking to alter the status quo, where, as here, the status quo constitutes an ongoing deprivation of fundamental rights, the status quo must be altered by granting injunctive relief.

There is no harm to defendants if injunctive relief is granted since they have no compelling governmental interest in violating parental rights. This is true not only for DVRHS, but also for the State Attorney General and the Acting Commissioner of Education. Finally, the public interest

favors the plaintiff since the adherence to fundamental constitutional rights is always in the greatest public interest.

## CONCLUSION

Based on the foregoing, and on the Verified Complaint and moving papers, a temporary restraining order and preliminary injunction must be granted in favor of the plaintiff, Mr. Doe, so as to prevent continuing harm to his fundamental constitutional parental rights.

Respectfully submitted,

**MURRAY-NOLAN BERUTTI LLC**

*Attorneys for the plaintiff, John Doe*

By: */s/ Ronald A. Berutti*
      Ronald A. Berutti

Dated: February 2, 2024