**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, KEVIN DEHMER, in his official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>　　　　　　Defendants. | Civil No. 3:24-CV-00107 (GC) (JBD)<br><br><br>**AMENDED**<br>**VERIFIED COMPLAINT**<br>**AND JURY DEMAND** |

The plaintiff John Doe, said name being fictitious, by his attorneys Murray-Nolan Berutti LLC, with knowledge as to his own acts, and on information and belief as to all others, alleges as follows:

## OVERVIEW

1. This matter arises out of the actions taken by staff members at Delaware Valley Regional High School ("DVRHS"), under the auspices of the Delaware Valley Regional High School Board of Education ("Board"), the Attorney General of New Jersey ("AG"), and the New Jersey Department of Education ("NJDOE"), to socially transition Jane Doe ("Jane"), a minor child, from female to male, while purposely keeping such information secret from her father, the plaintiff Mr. Doe, her father, in violation of his constitutional and statutory rights.

2. Since finding out months after the fact, Mr. Doe has repeatedly expressed his objections to such acts, has informed DVRHS, the Board, Ashley Miranda, and Scott McKinney

1

that such social transitioning was interfering with medical and therapeutic care under which his daughter was treating, and has demanded that such social transitioning stop both per his own demand.

3. The Board has advised that it will continue socially transitioning Mr. Doe's daughter regardless of his demands, and has now threatened to commence truancy proceedings if his daughter does not attend school in a manner designated by the Board which would include continued social transitioning of his daughter, despite his daughter's therapist providing the opinion that such social transitioning was causing depression and anxiety in Mr. Doe's daughter and otherwise was interfering with the therapy that pre-existed the daughter's social transitioning in school. All such social transitioning in school was undertaken by unlicensed individuals who had no knowledge of his daughter's medical diagnoses and history or trauma, or of how to treat the same professionally.

4. Defendants' actions constitute deliberate interference with Mr. Doe's fundamental constitutional right to direct the upbringing of his child, which is a catch-all for well-established fundamental parental rights, well-described as being that "the custodial parent has a constitutional right to determine, without undue interference by the state, how best to raise, nurture, and educate the child." *Troxel v. Granville*, 530 U.S. 57, 95 (2000) (Kennedy, J., dissenting). The parental right stems from the liberty protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Such rights are long-established in United States Supreme Court cases including, without limitation, *Troxel, supra*, 530 U.S. 57 (plurality) (rights of care, custody, and nurture); *Meyer* v. *Nebraska,* 262 U.S. 390, 399 (1923) (right to direct a child's education); *Pierce* v. *Society of Sisters,* 268 U.S. 510, 534-535 (1925) (direct the upbringing and education of a child); and *Wisconsin* v. *Yoder,* 406 U.S. 205, 232-233 (1972) (right to direct child's religious upbringing) (collectively, the "Parent's Rights Cases").

2

5.      Mr. Doe does not seek to create a new substantive due process right, but rather seeks to affirm his rights under the existing Parent's Rights Cases. Contrarily, defendants seek to honor major life choices of minor children related to their education, mental, and physical health without the parents' fully informed consent, while also attempting to keep such choices secret from parents, as in this case, which violates the long-recognized constitutional principle that custodial parents "possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Parham v. J.R.*, 442 U.S. 584, 602, (1979).

6.      Moreover, defendants would continue promulgating and promoting laws and policies which have a substantive basis which cannot survive scrutiny in comparison to Mr. Doe's fundamental constitutional parental rights. Specifically, the State's interest in enforcing laws and policies providing for social transitioning of minor children without parents' knowledge or consent is that transgender children must be protected against discrimination by their parents, which is a constitutional *non sequitur*, since the Constitution presumes that parents are fit and have the best interests of their children at heart.  *See Parham, supra,* 442 U.S.  at 602 (natural bonds of affection lead to the presumption that parents have a child's best interests at heart); *Bellotti v. Baird*, 443 U.S. 622, 634 (1979), overruled on other grounds, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (reversing a finding which failed to presume parental fitness).

7.      Defendants' actions and the laws and policies upon which they are purportedly based also violate Mr. Doe's rights to be the primary person responsible for his child's education, in violation of federal public policy for all school districts receiving federal funds, as set forth in 20 U.S.C. §3401(3), and also violate Mr. Doe's parental rights as guaranteed by the New Jersey Constitution including, without limitation, his right to have his child receive a thorough and efficient free education.

8.      Finally, to the extent that Fourteenth Amendment substantive due process does not

protect a broad sweep of parent's rights which provide Mr. Doe protection in this situation, it is appropriate to revisit Fourteenth Amendment Privileges and Immunities Clause and to overturn or modify long-standing precedent which would deprive citizens, such as Mr. Doe, the right to challenge state restrictions to the privileges and immunities of national citizenship, including the parents' rights including the care, custody, and control of their children to the exclusion of state officials' wishes to see such children raised otherwise to meet the state's contrary social goals.

9.      Thus, Mr. Doe seeks a Declaratory Judgment and other relief seeking remedies for defendants' acts and public policies that are unconstitutional, an injunction prohibiting such interference with his constitutional and statutory rights and against the enforcement of contrary laws and public policies, and an award of monetary damages against the Board, the Superintendent, and individual employees of the school district who have violated his fundamental rights.

## THE PARTIES

10.     John Doe ("Mr. Doe") is a loving and caring father of minor child Jane Doe ("Jane"), who is a student at DVRHS, which is a regional high school located at 19 Senator Stout Road, Frenchtown, New Jersey.

11.     Defendant Scott McKinney ("McKinney") is an individual residing at 233 Short Hills Drive, Bridgewater, New Jersey, is the Superintendent of DVRHS, and as such is the chief executive of the school district. He is named individually and in his official capacity.

12.     Defendant Ashley Miranda ("Miranda") is an individual residing at 406 Saddle Ct. Flemington, New Jersey 08822. She is named individually and in her official capacity.

13.     The Board is duly organized and formed pursuant to the laws of the State of New Jersey with respect to the establishment of school districts and school boards and receives federal funding.

14.     Matthew J. Platkin is the Attorney General of the State of New Jersey and is named

only in his official capacity.

15. Defendant Kevin Dehmer is Acting Commissioner of the NJDOE and is named only in his official capacity.

16. John Roes 1-10 is a fictitious name for Board members and/or employees who aided in the violations of Mr. Doe's rights as set forth herein.

17. All defendants are state actors.

<u>JURISDICTION AND VENUE</u>

18. This action is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, such that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

19. Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

20. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) since defendants reside in the District, and the events and omissions complained of occurred in the District.

<u>FACTS COMMON TO ALL COUNTS</u>

21. Jane is a minor child who has a documented diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD") and Unspecified Mental Disorder ("UMD").

22. Jane, who endured the childhood trauma of the death of her mother, has been under the care of a therapist for depression, anxiety, and gender confusion since April 21, 2022. Mr. Doe and mental health professionals have agreed to take a cautious approach to Jane's gender confusion given her underlying trauma and psychiatric comorbidities.

23. The Board has a policy titled "5756 - Transgender Students," ("Board Policy 5756") a true copy of which is attached to the Verified Complaint as **Exhibit A** and is incorporated herein by reference, which provides, in part:

> The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court-

5

ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression.

24.     The NJDOE published guidance to New Jersey public schools encourages them to take a "student-centered approach" to students who believe themselves to be transgender, which declares, "school district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun use, and parental communications." A true copy of such guidance is attached to the Verified Complaint a as **Exhibit B** and is incorporated herein by reference.

25.     Upon information and belief, the AG is actively litigating the legal position that although such policy is merely guidance, school districts must follow it since to do otherwise would violate the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.*, which provides certain anti-discrimination provisions with respect to gender identity.

26.     When a student's name and pronouns are changed by a school so that the student can live as the opposite sex while at school and/or elsewhere, the school is initiating a social transition. Social transition is a psychotherapeutic intervention and is not a neutral act. Cass, H., *Independent review of gender identity services for children and young people: Interim report* (2022).

27.     Gender dysphoria is considered a serious mental-health condition that requires professional help. "Since it is impossible to definitively delineate the contribution of various factors contributing to gender identity development for any given young person, a comprehensive clinical approach is important and necessary" *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8,* WPATH, International J. Trans. Health 2022, Vol. 23, No. S1-S258 (2022) ("WPATH").

28.     The Board, McKinney, Miranda, and John Roes were not and remain unequipped

to determine whether Jane is suffering from gender dysphoria and did not even attempt to make any assessment about her mental health prior to socially transitioning her.

29.     Studies show that a large percentage of children who transition are autistic and/or obsessive compulsive, and that children with psychiatric conditions and/or who are neuro-diverse children are more likely to commit suicide than those with gender dysphoria, such that the mistaken belief that a child has gender dysphoria as opposed to psychiatric conditions may be dangerous to the child. *https://statsforgender.org/autism/*

30.     Indeed, at least one study has found that a significant majority of children with gender dysphoria have at least one mental health or neurodevelopmental issue. *https://statsforgender.org/comorbidity/*

31.     In a comprehensive survey of numerous studies released this week by the American College of Pediatricians, found as follows regarding mental health problems among transgender adolescents:

> Adolescents who have a gender identity not congruent with their biological sex have an increased incidence of mental health issues, including depression and suicidal ideation. Both before and after "gender affirming therapy" (GAT), adolescents who have gender identity incongruence are at higher risk for psychopathology than their peers who identify with their biological sex. Previous adverse childhood experiences may play a major role in that psychopathology and needs to be explored in helping these patients.  There are no long-term studies demonstrating benefits nor studies evaluating risks associated with the medical and surgical interventions provided to these adolescents. There is no long-term evidence that mental health concerns are decreased or alleviated after "gender affirming therapy." Many individuals who have been treated with "GAT" later regret those interventions and seek to align their gender identity with their sex. Because of the risks of social, medical, and surgical interventions, many European countries are now cautioning against these interventions while encouraging mental health therapy.

32.     Parents must be permitted to seek a mental health evaluation prior to any psychological intervention. Mental health providers "should provide guidance to parents/caregivers and supports to a child when a social gender transition is being considered" so

7

that the parents can succeed in "making informed decisions about the advisability and/or parameters of a social transition for their child." WPATH at S78

33.     As a freshman at DVRHS, Jane participated in an extracurricular club known as Students Advocating for Equality ("SAFE"), which purportedly exists or claims to exist to "promote open discussion and awareness about modern cultures and topics surrounding intersectionality while aiming to make positive contributions to our community and school."

34.     Miranda is the staff advisor of SAFE and is neither a state licensed medical doctor nor psychologist.

35.     Jane attended a SAFE meeting and expressed to defendant Miranda that she would like to undergo a social transition from female to male in school. Miranda immediately affirmed Jane's expressed identity and began to facilitate Jane's social transition.

36.     Given Jane's psychological disorders and history of trauma, she was not capable of making the important choice to socially transition without the full knowledge and consent of her father who has guided her and has obtained appropriate medical and therapeutic treatment for years prior to Jane's expressed desire to socially transition.

37.     Miranda did not ask Jane about her mental health history, her history of trauma, or whether Jane was currently under the care of a mental health professional.

38.     Contrarily, Miranda asked Jane if she would like to change her name and pronouns and be known only as a male at school, to which Jane agreed.

39.     Miranda advised Jane that she would send a communication to the entire staff of DVRHS other than two teachers who Jane asked not be advised. Such a communication was, in fact, made to all staff. However, contrary to Miranda's promise to Jane that the two specified teachers would not be contacted, Miranda breached her promise to Jane by advising at least one of those teachers, thus deceiving Jane.

8

40.   In such communication, Miranda informed staff of Jane's name change and advised that all such staff were required thereafter to use the alternate male name by which Jane desired to be called. Staff were also informed that Mr. Doe was not to be informed of Jane's social transition.

41.   Thereafter, when communicating with Mr. Doe about his daughter, and before Mr. Doe eventually learned of the social transition of his daughter at DVRHS, the school always uses Jane's given female name, which was done for the purpose of concealing Jane's social transition at DVRHS, thus demonstrating a knowing interference with Mr. Doe's rights.

42.   In December 2023, months after it commenced, Mr. Doe learned of Jane's social transition at school when another parent called Jane by a boy's name in his presence. Only after Mr. Doe inquired of the parent why the parent was calling Jane by a boy's name, the parent explained to Mr. Doe that Jane was being called by such name at school since she was being socially transitioned.

43.   Such method of learning that his daughter was being socially transitioned at school without his knowledge caused Mr. Doe grievous mental anguish, suffering, and emotional distress which is ongoing.

44.   Upon learning that Jane had been provided with a separate identity at school and that DVRHS and its staff was intentionally concealing such fact from him, and due to his daughter's distress at living a second life, Mr. Doe placed Jane on home instruction until he could share Jane's personal and therapeutic history with McKinney, Ashley, and the Board (the "Board Defendants").

45.   On December 8, 2023, Mr. Doe met with DVRHS administration as well as Miranda, who indicated that she was not aware of Jane's ADHD and UMD diagnoses or her past trauma when she facilitated Jane's social transition. Miranda also advised that she was unaware

that Jane was under the care of a therapist at Mr. Doe's parental direction and with his consent.

46.    Mr. Doe informed the District that he and Jane's therapist were not in agreement with Jane's social transition and expressly denied his consent to the continuance of Jane's social transition at school.

47.    The District advised that it would continue to have Jane called by a male name until such time as Jane indicated otherwise, such that it specifically and deliberately insisted on interfering directly with protected aspects of Mr. Doe's parent-child relationship.

48.    Following the meeting, a Cease and Desist letter was served on the Board Defendants. The Cease and Desist letter asserted, among other things, that Mr. Doe's parental rights were being violated. A true copy of the Cease and Desist letter is attached to the Verified Complaint as **Exhibit C**, and is incorporated herein by reference.

49.    Thereafter on December 8, 2023, a letter was forwarded by Mr. Doe's attorneys which confirmed the critical events of the meeting that had occurred, reiterated that a Cease and Desist was served, and renewed the demand that the Board Defendants cease and desist from socially transitioning Jane against Mr. Doe's parental judgment as to Jane's best interests. A true copy of such letter is attached to the Verified Complaint as **Exhibit D** and is incorporated herein by reference.

50.    On December 22, 2023, the Board Defendants responded via legal counsel, who advised that Jane was approved for home instruction, but "that the District will continue to abide by federal and state law as well as the Department of Education guidance regarding transgender students to ensure that the District is not discriminating against a student based on gender identity or expression." A true copy of such letter is attached to the Verified Complaint as **Exhibit E** and is incorporated herein by reference.

51.    Consequently, the Board Defendants again specifically and deliberately interfered

with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship and expressed deliberate indifference to Mr. Doe's fundamental rights and further interfered with such constitutional and statutory rights by establishing a policy that the only way Jane could return to the classroom is if Mr. Doe chose to waive his constitutional and statutory parental rights and to abide by the Board Defendants' violations thereof, based on the Board Defendants' interpretation of law and public policy, as to Policy 5756's guidance.

52.     On January 2, 2024, counsel for the Board Defendants further noted in an email to Mr. Doe's attorney that the school district had a goal to implement "home instruction" for Jane in a public library, but that "to ensure there is no misunderstanding," Mr. Doe should "know that during home instruction the teachers will comply with district policy, NJDOE guidance, and federal and state laws regarding A.H.'s name preference."

53.     Consequently, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship, expressed deliberate indifference to Mr. Doe's fundamental rights, and further interfered with such constitutional and statutory rights by establishing a policy that made it impossible for Jane to receive a public education unless Mr. Doe yielded his constitutional and statutory parental rights.

54.     At all times since removing Jane from school, Mr. Doe was acting in what he believed was his minor daughter's best interests, which act was undertaken on advice of Jane's healthcare providers, and was undertaken in the good faith belief that defendants' actions were and continue to violate Mr. Doe's constitutional and statutory rights.

55.     There is no fundamental constitutional right for Jane to socially transition, and the Board Defendants have no compelling or other government interest in requiring the social transition of Jane to proceed. Moreover, even if such government interest did exist, which it does not, the Board Defendants' actions are not narrowly tailored to achieve such interest.

56.     The AG and NJDOE have no compelling government interest in promulgating and enforcing laws and public policies that interfere with parents' fundamental constitutional and federal statutory rights, as is the case with Mr. Doe, and even if such compelling government interest did exist, which it does not, the AG and NJDOE's actions are not narrowly tailored to achieve such interest, and the purported interest of protecting transgender minors from discrimination by their parents is a legal non-sequitur which cannot withstand constitutional scrutiny.

57.     Mr. Doe has no other viable alternative other than to send Jane to DVRHS. In light of the willful and deliberate violations to his rights that have occurred, and the promise of continued violations of the same rights based on the purported basis of Board Policy 5756, NJDOE guidance, and federal and state laws which alleged to require as much, Mr. Doe hereby seeks the immediate protection of his parental rights.

58.     Such rights also include Mr. Doe's parental right for Jane to receive "maintenance and support for a thorough and efficient system of free public school instruction," in keeping with N.J. Cont. Art. 8 §1.

59.     Further, given the District's intransigent insistence that even during what purportedly is "home instruction" it will deliberately violate Mr. Doe's rights, Mr. Doe seeks appointment of an independent monitor to ensure that defendants do not interfere with his rights upon Jane's return to school.

60.     Since filing the Verified Complaint, defendants have threatened to have Jane deemed truant after being pulled from school due to her therapist and doctor determining that continuing in the school which insists on socially transitioning Jane was causing significant depression and anxiety in Jane that was damaging to her health.

61.     Defendants, or others at their direction, further contacted the State's child protective

services to have agents visit the Doe household out of concern that Mr. Doe was mistreating Jane. The visit was fruitless as Jane's mental health and well-being is improving since being pulled from DVRHS, yet the threat of truancy remains.

## **FIRST COUNT**
### **(Declaratory Judgment 28 U.S.C. § 2201)**

62.     Mr. Doe repeats and reasserts each and every allegation above as is fully set forth herein at length.

63.     An actual controversy exists among the parties hereto within the jurisdiction of this Court as to their rights and responsibilities which is appropriate for a declaration of the rights and other legal relations among and between them with respect to the matters set forth above.

64.     "It is cardinal with … [the United States Supreme Court] that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Troxel v. Granville*, 530 U.S. at 65-66 (2000) (plurality).

65.     Mr. Doe has the fundamental constitutional right to determine, without undue interference by the state, how best to raise, nurture, and educate the child.

66.     The rights to "to teach and the right of parents to engage … so to instruct their children … are within the liberty of the [Fourteenth] Amendment." *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Troxel*, *supra,* 530 U.S. at 77 (Thomas, J., concurring).

67.     The United States Supreme Court has thus "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66

68.     Accordingly, "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69

69.     There is a "presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69

70.     The United States Supreme Court's "decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977) (plurality).

71.     There is no fundamental right of minor children under the United States Constitution to socially transition without their parents' knowledge or consent.

72.     The NJDOE's Policy 5756 violates Mr. Doe's fundamental constitutional rights under the Fourteenth Amendment's Due Process Clause, without limitation, since it promotes the substitution of the judgment of school districts, school administrators, and school staff members for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health, should social transitioning lead to the child's desire to progress with medical transitioning, and, thus, is void and unenforceable.

73.     To the extent that the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, or other state law is intended to preclude parental knowledge and consent of social transitioning of their minor children in schools, it violates fundamental constitutional parental rights under the Fourteenth Amendment's Due Process Clause, since it substitutes the judgment of public officials for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health should social transitioning lead to the child's desire to progress with medical transitioning and, thus, is void and unenforceable.

74.     The NJDOE Policy 5756 and Board Policy 5756 violate fundamental constitutional parental rights since they substitute the judgment of public officials for that of parents with respect to important aspects of their children's education, including related to issues concerning mental

health, welfare, and physical health, should social transitioning lead to the child's desire to progress with medical transitioning, and, thus, are void and unenforceable.

75.    To the extent that any other federal or state laws or policies on which defendants, or some of them, purport to rely in further proceeding with Jane's social transition, such laws and/or policies are void and unenforceable by reason of their violating the Fourteenth Amendment's Due Process Clause.

76.    There is no compelling governmental interest in the State, the Board Defendants, or anyone operating under the Board's authority to socially transition a minor child without the fully informed consent of the child's parents.

77.    The Board Defendants have shown an outward contempt of Mr. Doe's parental rights and have promised to compel Jane's continued social transition despite Mr. Doe's demands to the contrary such that his constitutional and statutory parental rights are knowingly and contumaciously being impaired, such that independent monitoring of the District's practices as related the violation of Mr. Doe's rights must be required.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.    Declaring that so long as he is a fit parent, which is presumed, Mr. Doe has a fundamental right pursuant to the Fourteenth Amendment's Due Process Clause to direct the upbringing of his child including, without limitation, with respect to all issues related to his child's mental health, welfare, and physical health, without interference by defendants in the absence of a compelling governmental interest which is narrowly tailored to achieve such interest;

B.    Declaring that there is no compelling governmental interest in any of the defendants, all of whom and which are state actors, to socially transitioning a child without the fully informed consent of the child's parents or legal guardians;

C.      Declaring the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, to be unconstitutional and void under the Fourteenth Amendment's Due Process Clause to the extent that it is would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

D.      Declaring the NJDOE's Policy 5756 and Board Policy 5756 to be unconstitutional and void under the Fourteenth Amendment's Due Process Clause since they deprive parents of fully informed knowledge and consent with respect to aspects of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

E.      Declaring that there is no fundamental constitutional right for a minor to socially transition;

F.      Deeming Mr. Doe to have complied with law in keeping Jane Doe out of school, per medical advice at least while testing the legality and constitutionality of the actions which are the subject of this matter.

G.      Deeming Jane Doe not to be truant;

H.      Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

I.      Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with

respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

J.      Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

K.      Providing temporary restraints and preliminary injunctive relief as needed;

L.      Compelling the Board to provide mainstream classroom instruction to Jane;

M.      Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole expense, upon Jane's return to school;

N.      Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs;

O.      Awarding such other and further relief as may be equitable and just.

## SECOND COUNT
### (42 U.S.C. § 1983 – Due Process/Parental Rights)

78.     Mr. Doe repeats and reasserts each and every allegation above as is fully set forth herein at length.

79.     The Board Defendants have knowingly and contumaciously committed and continue to commit a constitutional tort by socially transitioning Mr. Doe's minor daughter without parental notification or consent so as to frustrate his right to direct the upbringing of his child including, without limitation, issues related to his child's mental health, welfare, and physical health, without interference by the state in violation of Mr. Doe's fundamental liberty interests as set forth above, in violation of the Fourteenth Amendment's Due Process clause.

80.     There is no compelling, significant, or other reasonable governmental interest in the Board Defendants' socially transitioning Jane in violation of Mr. Doe's fundamental

constitutional parental rights as aforesaid, and their acts in such regard otherwise are arbitrary, capricious, and/or irrational.

81.     Indeed, defendants have asserted that they have an interest in protecting transgender children against discrimination by their parents, which is not a recognized form of actionable discrimination any place in the United States.

82.     Defendants' actions are purportedly based on reliance on federal and state law and policy which compels such actions all of which such laws and policies including, without limitation, N.J.S.A. 10:5-1 *et seq.*, and the NJDOE's Policy 5756, enforcement, and promulgation of which by state actors violates the federal constitutional and statutory rights of parents as aforesaid, such that they violate the Supremacy Clause of the Constitution.

83.     By their actions, defendants have deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution, *to wit,* the Fourteenth Amendment of the Constitution, and are causing severe and permanent damages, including, without limitation, emotional distress, economic damages, physical harm, and consequential damages.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.     Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B.     Punitive Damages against the Board Defendants and John Roes 1-10 only;

C.     Consequential Damages against the Board Defendants and John Roes 1-10 only;

D.     Permanently restraining and enjoining the Board Defendants, and anyone acting under their authority, from socially transitioning the plaintiff's daughter or otherwise interfering with his parental rights in violation of the Fourteenth Amendment's Due Process Clause;

E.     Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state

law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular in violation of the 14th Amendment's Due Process Clause;

F.      Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular in violation of the Fourteenth Amendment's Due Process Clause;

G.      Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent in violation of the Fourteenth Amendment's Due Process Clause;

H.      Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole cost and expense, upon Jane's return to school;

I.      Deeming Mr. Doe to have complied with law in keeping Jane Doe out of school, per medical advice at least while testing the legality and constitutionality of the actions which are the subject of this matter.

J.      Deeming Jane Doe not to be truant;

K.      Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

L.      Awarding interest as allowed by law;

M.      Awarding such other and further relief as may be equitable and just.

## THIRD COUNT
### (Violation of N.J.S.A. 10:6-2 *et seq.*)

84.   Mr. Doe repeats and reasserts each and every allegation above as if fully set forth herein at length.

85.   Defendants, by their conduct, have acted under color of law so as to interfere and/or attempt to interfere by means of  express or implied threats, intimidation, and coercion with the exercise and enjoyment by Mr. Doe of his due process rights, privileges, and/or immunities secured by the Constitution or laws of the United States, and the New Jersey Constitution as aforesaid, including, without limitation, the right to parent a minor child who is receiving a thorough and efficient education, and the failure to provide Mr. Doe the required due process to protect his substantive parent's rights, such that they have caused Mr. Doe damage in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 *et seq.*

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants as follows:

A.   Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B.   Punitive Damages against the Board Defendants and John Roes 1-10 only;

C.   Consequential Damages against the Board Defendants and John Roes 1-10 only;

D.   Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular in violation of the New Jersey Constitution;

E.   Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with

Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular in violation of the New Jersey Constitution;

F.      Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent in violation of the New Jersey Constitution;

G.      Appointing an independent monitor to protect Mr. Doe's parental rights, at the sole expense of the school district, upon his daughter's return to school;

H.      Deeming Mr. Doe to have complied with law in keeping Jane Doe out of school, per medical advice at least while testing the legality and constitutionality of the actions which are the subject of this matter.

I.      Deeming Jane Doe not to be truant;

J.      Awarding the plaintiff all costs of suit, including reasonable legal fees and costs, per statute;

K.      Awarding interest as allowed by law;

L.      Awarding such other and further relief as may be equitable and just.

## FOURTH COUNT
### (42 U.S.C. § 1983—Supremacy Clause)

86.     Mr. Doe repeats and reasserts each and every allegation above as if fully set forth herein at length.

87.     Art. VI, cl. 2 of the United States Constitution is better known as the "Supremacy Clause," and reads as follows:

This Constitution, and the Laws of the United States which shall be made in

pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding.

88.     20 USCS § 3401 *et seq.* establishes the United States Department of Education, and the substantive mandates therein are the supreme law of the land with respect to all school districts within the nation which receive federal funding.

89.     DVRHS receives federal funding and, thus, is subject to the provisions of 20 USCS § 3401 *et seq.*

90.     20 *U.S.C.* §3401(3) provides, in pertinent part, that "parents have the primary responsibility for the education of their children, and States, localities, and private institutions have the primary responsibility for supporting that parental role."

91.     The substantive command of 20 *U.S.C.* §3401(3) is the supreme law of the land.

92.     While 20 USCS § 3401 *et seq.* does not create any enforcement mechanism such that those aggrieved by state actors that fail to comply are left with no legislative remedy.

93.     "To say that the Supremacy Clause does not confer a right of action is not to diminish the significant role that courts play in assuring the supremacy of federal law." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

94.     The United States Supreme Court has "long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 326 (2015).

95.     Similarly, a court may not hold a civil defendant liable under state law for conduct federal law requires. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

96.     The NJDOE's guidance violates 20 *U.S.C.* §3401(3), since the state's school districts receive federal funding, the guidance removes parents from having primary responsibility

for the education of their children, and the guidance places the primary responsibility for the education of children as to social transitioning with state and localities that do not necessarily support the parental role, but rather interfere with the parental role, as in Mr. Doe's case.

97.     To the extent that the NJLAD is intended to preclude parental knowledge and consent of social transitioning of their minor children, it is contrary to and cannot be harmonized with the responsibilities of school districts in the state to support parents' educational upbringing of their minor children per 20 *U.S.C.* §3401(3) and, thus, is unconstitutional as violating the Supremacy Clause, *U.S. Const.* Art. VI, Cl. 2, such that it void and unenforceable.

98.     The District's Policy 5756 is unconstitutional as violating the Supremacy Clause, *U.S. Const.* Art. VI, Cl. 2, since the district receives federal funding and is thus required to comply with 20 *U.S.C.* §3401(3), which it is violating.

99.     To the extent that any other federal or state laws or policies on which defendants, or some of them, purport to rely in further proceeding with Jane's social transition, such laws and/or policies are void and unenforceable by reason of their violating 20 *U.S.C.* §3401(3), in whole or in part, for the reasons set forth above.

100.    There is no compelling, important, or rational state interest in protecting transgender children against discrimination by their parents, or otherwise, such that minor children may be socially transitioned without the fully informed consent of the child's parents.

101.    The Board Defendants have shown an outward contempt of Mr. Doe's parental rights and have promised to compel Jane's continued social transition despite Mr. Doe's demands to the contrary such that his constitutional and statutory parental rights are knowingly and contumaciously being impaired, such that independent monitoring of the District's practices as related the violation of Mr. Doe's rights must be required.

102.     The AG may not enforce laws, and the NJBOE may not enforce or promulgate policies, and the Board, McKinney, Miranda, and John Roes may not enforce or comply with state laws, policies, regulations, or rules which violate 20 *U.S.C.* §3401(3).

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants as follows:

A.     Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B.     Punitive Damages against the Board Defendants and John Roes 1-10 only;

C.     Consequential Damages against the Board Defendants and John Roes 1-10 only;

D.     Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq*. or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular in violation of 20 *U.S.C.* §3401(3);

E.     Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular in violation of 20 *U.S.C.* §3401(3);

F.     Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent in violation of 20 *U.S.C.* §3401(3);

G.      Appointing an independent monitor to protect Mr. Doe's parental rights, at the sole expense of the school district, upon his daughter's return to school;

H.      Deeming Mr. Doe to have complied with law in keeping Jane Doe out of school, per medical advice at least while testing the legality and constitutionality of the actions which are the subject of this matter.

I.      Deeming Jane Doe not to be truant;

J.      Awarding the plaintiff all costs of suit, including reasonable legal fees and costs, per statute;

K.      Awarding interest as allowed by law;

L.      Awarding such other and further relief as may be equitable and just.

## **FIFTH COUNT**
### **(42 U.S.C. § 1983—Privileges and Immunities)**

103.    Mr. Doe repeats and reasserts each and every allegation above as if fully set forth herein at length.

104.    Section 1 of the Fourteenth Amendment reads:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

105.    Mr. Doe was born in the United States, is subject to its jurisdiction and, thus, is a citizen of the United States and of New Jersey, the state in which he resides.

106.    Mr. Doe is the natural parent of Jane Doe.

107.    The Parent's Cases and their progeny reflect the long-standing privilege of American life and citizenship that parents have the right to the dominion and control of their children with which the state may not interfere in order to carry out any one or more agendas that

conflict with the parent's rights, most particularly with respect to the physical and emotional well-being of the minor child.

108.    More specifically, and in the case *sub judice*, defendants may not interfere with the right of Mr. Doe to be fully informed of his minor daughter's desire to be treated like a boy at school and to deny permission of the school to do so, since such actions by defendants violate the privilege of parentage which is protected by the Privileges and Immunities Clause of the Constitution.

109.    Parent's rights are broad and require that the state fully inform parents of important information which may relate to the physical and mental well-being of such parent's minor children when such minor children are in the care, custody, and control of the state per compulsory educational requirements, and to receive the parent's fully informed consent before acting on the information related to the minor child's physical and/or mental well-being.

110.    While unenumerated in the Constitution, such privileges and immunities have been determined by the United States Supreme Court to be foundational to the preservation of Western Civilization itself and, thus, predate the Constitution, which is based in whole or in part on the philosophical underpinnings of Western Civilization. *Parham v. J.F.*, 442 U.S. 584, 602 (1979).

111.    Such privileges and immunities are natural rights of parentage that are reserved to the people through the Ninth Amendment of the Constitution, which thus are privileges and immunities of United States citizenship that are protected by the Fourteenth Amendment.

112.    Jane Doe was in the custody, care, and control of the state while attending DVRHS, and her desire to be treated as a boy, contrary to her biological sex, was something which could affect her physical and mental well-being, such that defendants were required to fully inform Mr. Doe of the same.

113. Only after providing Mr. Doe with full disclosure and information about his daughter's desire to be treated as other than as her biological sex at school would defendants be permitted to carry out such request of Jane while she is a minor, but then, only if Mr. Doe provided his specific fully informed consent for defendants to so act, in keeping with his privileges of United States citizenship.

114. To the extent that the state has promulgated laws and/or policies which would abridge a parent's rights by permitting acts related to the mental health and well-being of the parent's minor child, such as those of DVRHS in socially transitioning Jane in secret from Mr. Doe, without the parent's fully informed consent, such laws and/or policies violate the Privileges and Immunities Clause.

115. Defendants' policies as aforesaid related to not fully informing, not obtaining consent, and of secreting Jane's social transition desire at school violated Mr. Doe's rights under the Privileges and Immunities Clause.

116. To the extent that *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872), and its progeny would deprive the Courts of an enforcement mechanism to protect Mr. Doe's rights under the Privileges and Immunities Clause of the Fourteenth Amendment, such case or cases should be expanded, abrogated, narrowly construed, confined to their own facts, and/or overruled, since without such authority as intended by the drafters of the Fourteenth Amendment, courts applying the Constitution are powerless to curtail and to place guardrails on state actors to prevent them from intruding on the privileges and immunities of citizenship as were intended to be protected by the Fourteenth Amendment.

117. By virtue of defendants having violated Mr. Doe's parents' rights, they have violated the Privileges and Immunities clause of the Fourteenth Amendment and have thus caused Mr. Doe grievous damages.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.     Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B.     Punitive Damages against the Board Defendants and John Roes 1-10 only;

C.     Consequential Damages against the Board Defendants and John Roes 1-10 only;

D.     Permanently restraining and enjoining the Board Defendants, and anyone acting under their authority, from socially transitioning the plaintiff's daughter or otherwise interfering with his parental rights to receive fully informed consent as to issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

E.     Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.*, or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

F.     Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

G.     Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

H.      Deeming Mr. Doe to have complied with law in keeping Jane Doe out of school per medical advice at least while testing the legality and constitutionality of the actions which are the subject of this matter.

I.      Deeming Jane Doe not to be truant;

J.      Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole cost and expense, upon Jane's return to school;

K.      Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

L.      Awarding interest as allowed by law;

M.      Awarding such other and further relief as may be equitable and just.

## JURY DEMAND

The plaintiff demands trial by jury on all Counts so triable.

**MURRAY-NOLAN BERUTTI LLC**
Attorneys for Defendants/Counterclaimants/Third Party Plaintiffs.

*s/ Ronald A. Berutti*
_____
Ronald A. Berutti

Dated: March 15, 2024

## VERIFICATION UNDER OATH

John Doe of full age, being duly sworn upon his or her oath according to law deposes and says:

1. I am the plaintiff in this matter.

2. I have read the Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

_____
John Doe

Dated: March 15, 2024