# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>                    Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>                    Defendants. | Civil Action No. 3:24-CV-107 (GC)(JBD) |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF
## JOHN DOE'S MOTION FOR PRELIMINARY INJUNCTION

                                                MURRAY-NOLAN BERUTTI LLC
                                                136 Central Avenue, 2nd Floor
                                                Clark, New Jersey 07066
                                                908-588-2111
                                                ron@murray-nolanberutti.com
                                                Attorneys for Plaintiff John Doe

On the Brief:
Ronald A. Berutti - 023361992

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................... 2

LEGAL ARGUMENT ..................................................................................... 6

    I.    The Transgender Statute Requires Parental Notice .................... 6
    II.   *Anspach* Conflicts with Supreme Court Precedent ..................... 8
    III.  20 U.S.C. § 3401 Compels an Injunction ................................. 12
    IV.  Mr. Doe has Standing to Seek Full Information about
          Jane's Transition ....................................................................... 13
    V.   Mr. Doe has Satisfied the Criteria for an Injunction ................. 13

CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**                                                                                       **PAGE(S)**

*Anspach v. City of Philadelphia Dept. of Health*, 503 F. 3d 256
(3d Cir. 2007) .............................................................................................. 2, 9

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) .............. 12

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020) ......................................... 6

*FBI v. Fikre*, 144 S. Ct. 771, 777 (2024) ............................................................. 13

*Hamilton v. Leavy*, 322 F.3d 776, 786-787 (3d Cir. 2003) .................................... 9

*In re Civ. Commitment of W.W.*, 245 N.J. 438, 449 (2021) ................................... 7

*In re Atty General's "Directive on Exit Polling: Media &
Non-Partisan Pub. Interest Groups"*, 200 N.J. 283, 297-298 (2009) ................. 11

*Loving v. Virginia*, 388 U.S. 1, 12 (1967) .......................................................... 10

*Parham v. J.R.*, 442 U.S. 584, 602, (1979) ........................................................ 11

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ............................................... 10

*Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) .......................................... 10

*Public Interest Research Group v. Magnesium Elektron*,
123 F.3d 111, 116 (3d Cir. 1997) ..................................................................... 8, 9

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) ........................ 14

*Troxel v. Granville*, 530 U.S. 57, 68 (2000) .............................................. 9, 10 11

*Wash. v. Glucksberg*, 521 U.S. 702, 705 (1997) .................................................. 9

*W.S. v. Hildreth*, 252 N.J. 506, 518-19 (2023) ..................................................... 7

## **STATUTES & REGULATIONS**

*American Rescue Plan Act of 2021* ............................................................................... 12

*N.J.A.C.* 6A:7-1.1 ..................................................................................................... 1, 6

*N.J.A.C.* 6A:7-1.1 to 6A:7-8 ............................................................................................ 8

*N.J.A.C.* 6A:8-3.1 ........................................................................................................... 11

*N.J.A.C.* 6A:13-2.1 ......................................................................................................... 12

*N.J.S.A.* 10:5-1 ................................................................................................................. 1

*N.J.S.A.* 10:5-4 ................................................................................................................. 8

*N.J.S.A.* 18A:36-41 ................................................................................................. 1, 6, 7

20 U.S.C. § 3401 ................................................................................................... 2, 12, 14

## PRELIMINARY STATEMENT

Defendants seek to avoid the key questions presented by changing the subject. They do not meaningfully address the key issue: their actions seek to prevent potential discrimination by a parent against his child, which is a legal *non sequitur*. Instead, they claim that Mr. Doe is seeking to control school curriculum. However, the school policy is not curriculum at all and never was approved as such. Rather, as noted, it is a policy designed to prevent parents from putatively discriminating against their children.

Further, although the State lengthily attempts to support its policy by examining the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-1 *et seq.*, and also relies on *N.J.S.A.* 18A:36-41 for support, careful examination of the latter statute reveals that the regulations promulgated thereunder, *N.J.A.C.* 6A:7-1.1 *et seq.* completely ignore the specific call of the statutory scheme requiring that "[t]he guidelines shall include information on organizations or other resources available to students **and parents** that provide support to transgender individuals." *N.J.S.A.* 18A:36-41(c). Thus, the operative statute provides that parents are to play a critical role with respect to the question of preventing transgender discrimination against their children and are not to be cut out of the conversation. When read in context with the NJLAD, it is certain that there never was an intent to employ the

NJLAD against parents, as is occurring here. Rather, as argued by Mr. Doe, the statutory scheme protects parents' rights and in no way limits them.

Further, defendants essentially ignore that *Anspach v. City of Philadelphia Dept. of Health*, 503 F. 3d 256 (3d Cir. 2007), which this Court relied on in denying a temporary restraining order, is at best of dubious precedential value in light of more recent Supreme Court decisions. Thus, sticking with the "tried and true," defendants essentially ignore the issue hoping that this Court will revert to its prior decision without considering more recent Supreme Court precedent.

Moreover, defendants seek to have this Court enter an identical ruling regarding the supremacy of 20 U.S.C. § 3401 without consideration of the updated case law and statutory information provided in this motion. However, such updated legal arguments reflect that an injunction is appropriate in light of the Supremacy Clause, and that no consideration at all must be given to the "levels of scrutiny" that apply when analyzing 14th Amendment questions.

Since defendants have chosen to avoid the key issues, it is respectfully asserted that this Court should examine Mr. Doe's arguments in a new light. If so, Mr. Doe asserts, it will be apparent that he has satisfied the requirements for obtaining a preliminary injunction in favor of his parental rights.

## STATEMENT OF FACTS

The facts are more fully set forth in the moving brief. However, a few

additional facts have surfaced which bear consideration.

Mr. Doe has submitted his own Declaration and a Declaration of Debra Pirozolli. Ms. Pirozolli has been Jane's therapist since April 17, 2022, and has decades of experience treating young people who have experienced sexual and gender confusion. Ms. Pirozolli notes that in order for a minor to attend therapy, the minor must have parental consent.[1] Thus, Jane began therapy with Ms. Pirozolli with Mr. Doe's consent. Ms. Pirozolli notes that Jane presented with a history which included the death of her biological mother at a young age, the trauma of which always stayed with her and affected her emotionally and psychologically. Jane also suffers with Asperger's Syndrome, although she is high functioning. Such underlying issues contributed to Jane's development of gender confusion.

Ms. Pirozzoli also asserts, among other things, that young people with underlying mental health issues often develop sexual disorientation and/or gender confusion, and that when a child has gender confusion, it is imperative that his or her family is involved in the therapy so that trust develops with those who love and care the most for the child. Children need help to better understand their emotions and feelings in a holistic way, as opposed to just examining one symptom of a larger problem and affirming it. **It is extremely unhealthy for a child to hide behind an adult under any circumstance, much less one which involves potentially**

---

[1] *See* N.J.A.C. 13:42-8.6(c).

**permanent and irreparable damage to mental health and wellness in the case of a child with underlying psychological conditions and trauma who is suffering with gender confusion. Such actions often lead to actual gender dysphoria and to further psychological and emotional trauma.** Ms. Pirozzoli asserts that children need to know that the path beginning with social transition often leads to physical transitioning, which usually has irreversible physical, psychological, and emotional results.

During the fall of 2023, Jane began exhibiting greater confusion, less motivation, situational depression, and feelings of isolation. Such symptomology correlated with the School Defendants socially transitioning Jane without Mr. Doe's involvement, which caused Jane tremendous setbacks as she began leading a double life--one at home and another at school--which spilled over into her therapy since she became secretive with Ms. Pirozolli about the emotional and psychological issues she was experiencing. Without honesty and openness, the therapeutic treatment of a patient is greatly harmed, according to Ms. Pirozolli.

Ms. Pirozolli asserts that when a child is undermined by an adult and then that adult turns out to have caused problems for the minor, the child oftentimes will develop trust issues where no adult can be trusted in that child's eyes. Thus, by socially transitioning Jane without Mr. Doe's knowledge or consent, defendants caused a breach of the trust that Jane had with her father, therefore undermining Mr.

4

Doe's relationship with Jane. Further, by Miranda telling Jane that two teachers would not be advised of Jane's social transition and then notifying those teachers, Miranda breached Jane's trust, which could have potentially negative lifelong consequences in Jane's relationships, and which demonstrates just how toxic the school's actions were in terms of the example Jane has of whether adults can be trusted.

Ms. Pirozzoli has no doubt at all that Mr. Doe loves and cares tremendously about Jane and that by undermining Mr. Doe, when the School Defendants secretly agreed to socially transition Jane, such actions had demonstrably negative effects on Jane's mental and emotional health. However, since Mr. Doe has kept Jane out of school and Ms. Pirozolli has been able to address what happened with her in school with the social transitioning, Jane has come around to being in a much better emotional state. As such, Ms. Pirozzoli highly recommends against Jane returning to the school unless until such trust issues can be alleviated so that her therapy and related medical treatment is no longer undermined, and so that Mr. Doe can be the adult decision-maker in her life with respect to any feelings of gender confusion Jane continues to have.

Likewise, Mr. Doe has submitted a Declaration to which he attaches a letter from Lori Ioriatti, CPNP PMHS, who treats Jane at Hunterdon Pediatric Associates. Ms. Ioriatti asserts that Jane continues to suffer with anxiety and depression which

5

significantly increased with social transitioning by the School Defendants such that Jane's emotional stress and strain was increased. Ms. Ioriatti asserts that in her professional opinion, it is in Jane's best interests to continue with home instruction until this matter is resolved.

## LEGAL ARGUMENT

### I. The Transgender Statute Requires Parental Notice.

Putting aside the question of parents' rights, which ultimately controls the questions presented herein, it is necessary to respond to the Attorney General and the Commissioner of Education ("State Defendants"), who assert that the NJLAD compels that parents not be advised of their minor child's social transition if the child says so. All statutes and regulations support a contrary determination.

*N.J.S.A.* 18A:36-41(c) and *N.J.A.C.* 6A:7-1.1 *et seq.* is the statute and associated regulations concerning protections for transgender students in schools. When considered in the context of required norms of statutory construction, it is clear that the statute requires parental notification and that the regulations must follow suit, which has not occurred, making the regulations unenforceable to the extent that they require secrecy from parents on demand of the minor child.

"When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737

(2020). "The best evidence of [statutory] intent is the statutory language, read in accordance with its ordinary meaning and significance and . . . in context with related provisions so as to give sense to the legislation as a whole." *W.S. v. Hildreth*, 252 N.J. 506, 518-19 (2023) (quotations omitted). "Statutes must be read in their entirety." *In re Civ. Commitment of W.W.*, 245 N.J. 438, 449 (2021). "Pursuant to traditional rules of statutory construction, each part or section should be construed in connection with every other part or section to provide a harmonious whole." *Hildreth, supra*, 252 N.J. at 519 (quotation omitted). Courts "must presume that every word in a statute has meaning and is not mere surplusage, and therefore we must give those words effect and not render them a nullity." *In re Atty General's "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Groups"*, 200 N.J. 283, 297-298 (2009)

> *N.J.S.A.* 18A:36-41 provides, in pertinent part, as follows:
>
> **a.** The Commissioner of Education shall develop and distribute to school districts guidelines concerning transgender students. The purposes of the guidelines shall be to provide direction for schools in addressing common issues concerning the needs of transgender students, and to assist schools in establishing policies and procedures that ensure a supportive and nondiscriminatory environment for transgender students.
>
> \*\*\*
>
> **c. The guidelines shall include information on organizations or other resources available to students <u>and parents</u> that provide support to transgender individuals.** (Emphasis added)

Rather than providing that a minor child's social transition is to be kept secret from parents, the statute specifically provides that parents **must** be informed of information that will give them resources to support their transgender children. Related guidelines must comport with the statute.

7

However, the regulations do not comport with the statute. The word "parent" is nonexistent in *N.J.A.C.* 6A:7-1.1to 6A:7-8, which are all of the associated regulations. Parents are cut out of the equation not because of a statutory command, but rather because of a policy preference that does not comport with the statute. This Court may not render such statutory language a nullity as the State Defendants simply assume that this Court will do, contrary to principles of statutory construction. The inclusion of "parents" in the statute is not superfluous language and must be viewed as an intended statutory command which may not be nullified by the State Defendants' contrary policy preferences which are reflected in the regulations and their arguments.

Similarly, regarding transgenderism, the pertinent provision of the NJLAD, *N.J.S.A.* 10:5-4, only provides that discrimination based on "gender identity or expression" in places of public accommodation constitutes discrimination. Discrimination against a child by a parent is an unheard-of concept yet is at the center of the entire controversy *sub judice*. Since the transgender statute specifically requires parental notice of resources to support their children, read together, it is certain that the NJLAD does not require hiding such information from parents.

**II.    *Anspach* Conflicts with Supreme Court Precedent.**

Defendants continue insisting that *Anspach*'s determination that only decisions which compel or preclude specific conduct is the subject of parents' rights. Such determination by this Court when denying the temporary restraining order cannot stand since Supreme Court precedent requires a different analysis.

"The law of the case doctrine does not limit a federal court's power [to modify prior decisions]; rather, it directs its exercise of discretion." *Public Interest Research Group v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir.

8

1997). "Reconsideration of a previously decided issue may ... be appropriate in certain circumstances including when the record contains new evidence." *Hamilton v. Leavy*, 322 F.3d 776, 786-787 (3d Cir. 2003). The Third Circuit has noted that three circumstances where prior decided issues are appropriate for modification include "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Public Interest Research Group, supra*, 123 F.3d at 116-117.

Defendants urge that this Court maintain its prior ruling that constitutional parents' rights are not implicated unless "the state was either requiring or prohibiting some activity" by parents, per *Anspach*. (Opinion p. 13). Such result would create manifest injustice. Further, new evidence supports a different result.

A substantive-due-process analysis requires (1) the Court to protect "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition;" and (2) a careful description of the asserted fundamental liberty interest." *Wash. v. Glucksberg*, 521 U.S. 702, 705 (1997). Our Supreme Court has repeatedly held that parents' rights are deeply rooted in this Nation's history and tradition related to core parenting functions concerning a minor's well-being because "there is a presumption that fit parents act in the best interests of their children." *Troxel v. Granville*, 530 U.S. 57, 68 (2000). **The question of whether the government is requiring or prohibiting activity is not part of the equation.** Thus,

9

as noted previously, although, for instance, a fundamental right to marry exists per *Loving v. Virginia*, 388 U.S. 1, 12 (1967), our Nation's history and traditions still permit parents to prevent their minor children from marrying--thus demonstrating the supremacy of parental rights over a core fundamental right. Unlike marriage, there is no fundamental right to social transition. Plainly if parents' rights extend to the right to preclude a minor from partaking in a core fundamental right like marriage, it extends to precluding a child from socially transitioning to another gender, which is not a fundamental right. "It is cardinal ... that the custody, care and nurture of the child reside first in the parents ..." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). "[I]t is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter." *Ibid.*

"*Pierce* v. *Society of Sisters,* 268 U.S. 510 (1925), holds that parents have a fundamental constitutional right to rear their children, **including the right to determine who shall educate and socialize them.**" *Troxel* 530 U.S. at 80 (Thomas, J., concurring) (emphasis added). Thus, concurring with the majority that there exists a recognized "fundamental right of parents to direct the upbringing of their children," Justice Thomas avowed that he "would apply strict scrutiny to infringements of fundamental rights." *Ibid.*

Part and parcel of socialization is the gender of the child. A boy can belong to a men's organization. A girl can belong to a woman's organization. It is for the

10

parents to make such choice. It is not for the state to affirm the *child's* choice without the parent's consent, which is not required by *Troxel*. Likewise, *Parham v. J.R.,* 442 U.S. 584, 602, (1979), recognized that minors' lack the natural maturity, experience, and capacity for judgment renders them, as a matter of law, generally unable to "make sound judgments concerning many decisions, **including their [own] medical care**." *Id.*

Here, the State interfered with Mr. Doe's parental rights by socializing Jane as a boy. The State also interfered with Mr. Doe's parental right to direct Jane's healthcare. As new evidence provides, Jane's healthcare providers chosen by Mr. Doe assert that Jane was damaged by defendants' actions. In short, contrary to the formulaic *Anspach* holding, the Supreme Court has recognized fundamental parental rights to exist over their minor children related to core issues of family and the child's well-being, regardless of whether "the state was either requiring or prohibiting some activity." Thus, this Court's holding should be altered to reflect that Mr. Doe's parental rights over his daughter's core upbringing and health has been violated.

The School Defendants' argument that Mr. Doe seeks to control curriculum is specious. School districts must follow particular guidelines for establishing curriculum. It is a process open to the public and includes several requirements for the curriculum to pass muster under State law. *See N.J.A.C.* 6A:8-3.1; *N.J.A.C.*

11

6A:13-2.1. District Policy 5756 was not promulgated as curriculum, but only as a policy. DVRHS has not attempted to demonstrate how the Policy actually is curriculum, because it cannot do so--it is not curriculum. Nor is it about the school "determin[ing] the kind of education" being provided, (DVRHS Br., p. 16), since it is not education at all, but is only suggested policy.

Applying strict scrutiny, as Justice Thomas asserts to be appropriate, there is no compelling state interest in socially transitioning a child so that discrimination by a parent will not occur. This is not a question of parents wanting to control curriculum, it is about a parent wanting to control the upbringing of his child, which is constitutionally protected and which inherently is not discriminatory in any way.

### III.   20 U.S.C. § 3401 Compels an Injunction.

As noted in the moving brief, 20 U.S.C. § 3401 provides the legal support for the receipt of federal funds by DVRHS pursuant to the *American Rescue Plan Act of 2021*. (Pl. Brf. p. 14) The funds are thus directly tied to the language of 20 U.S.C. § 3401(3) on which Mr. Doe relies: "parents have the primary responsibility for the education of their children, and the States, localities, and private institutions have the primary responsibility for supporting that parental role." Defendants violate such rights with their policies and procedures. Thus, under the circumstances, "the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 326 (2015).

### IV. Mr. Doe has Standing to Seek Full Information About Jane's Transition.

The School Defendants assert that Mr. Doe does not have standing to pursue his "right to know" argument. (DVRHS Br. p. 24) They assert that since Mr. Doe knows that Jane is being socially transitioned, he already knows about the social transition so that there is no "real and immediate threat" of again suffering violation of his constitutional rights.

Beyond the fact that Mr. Doe does have another child in DVRHS, which has guaranteed that it will not respect Mr. Doe's rights such that this same scenario may well reoccur, DVRHS insists that it will continue to socially transition Jane. Certainly Mr. Doe has a right and interest to know what that will entail in the future. Further, the School Defendants' argument sounds more in mootness since they argue that 'the cat is out of the bag so that the right is extinguished.' "To show that a case is truly moot, **a defendant must prove** no reasonable expectation remains that it will return to [its] old ways." *FBI v. Fikre*, 144 S. Ct. 771, 777 (2024). Plainly that is not the case here.

### V. Mr. Doe has Satisfied the Criteria for an Injunction.

Mr. Doe has satisfied the four criteria for a preliminary injunction, namely that (1) there is a reasonable probability of eventual success in the litigation; (2) that Mr. Doe is being irreparably injured if relief is not granted; (3) the possibility of harm to other interested persons from the grant or denial of the injunction exists with

respect to other parents whose children are being subject to the State Defendants' misinterpretation of the LAD; and (4) the public interest weighs in favor of Mr. Doe. *See Reilly v. City of Harrisburg,* 858 F.3d 173, 176 (3d Cir. 2017).

A. *Probability of Success:* Mr. Doe has demonstrated that he has fundamental parental rights regarding the core functions of parenting, including directing Jane's upbringing, Jane's socialization, and Jane's healthcare. Moreover, defendants are not yielding to 20 U.S.C. § 3401(3), that provides: "parents have the primary responsibility for the education of their children, and the States, localities, and private institutions have the primary responsibility for supporting that parental role." Thus, Mr. Doe is also likely to succeed in obtaining a Supremacy Clause injunction.

B. *Irreparable Injury:* Mr. Doe's fundamental constitutional rights have and continue to be violated by defendants. Such injury is irreparable since money damages can never replace a constitutional right.

C. *The Possibility of Harm to Others Exists:* As noted in the Amended Complaint, the State Defendants continue litigating against school districts that assert they are not required to follow Policy 5756. Instead, the State Defendants and the School Defendants contend that the law requires secrecy from parents where directed to do so by children. Thus, others certainly are and will continue being harmed;

14

D. *The Public Interest Favors Mr. Doe*: Defendants have no interest at all in preventing "discrimination" by a parent against his child. Enforcement of fundamental rights always is in the public interest.

## CONCLUSION

Based on the foregoing, and on the papers heretofore filed and those filed herewith, Mr. Doe is entitled to a preliminary injunction.

Respectfully submitted,
**MURRAY-NOLAN BERUTTI LLC**
*Attorneys for the plaintiff, John Doe*

By: *s/Ronald A. Berutti*
       Ronald A. Berutti

Dated: April 29, 2024