UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>Defendants. | Civil Action No. 3:24-cv-107 GC-JBD<br><br>**REPLY DECLARATION OF DEBRA PIROZZOLI, MS, LCPC, CTC, CMPC, ACMFT** |

DEBRA PIROZZOLI, MS, LCPC, CTC, CMPC, ACMFT, of full age, hereby declares as follows under penalty of perjury:

1. I am a Licensed Clinical Professional Counsellor and have been the treating therapist for Jane Doe since April 17, 2021. I am fully familiar with the facts set forth below. I make this Reply Declaration in support of the plaintiff John Doe's Motion for Preliminary Injunction.

2. I received a Master of Science in Christian Counselling from Cairn University in 2005 after having received a Bachelor of Arts with Honors in Psychology Communication from the College of St. Elizabeth in 2003. I now have my own practice known as the Family & Individual Counselling Center in Hunterdon County, New Jersey.

3. In my over twenty (20) years of experience as a therapist, I have had the opportunity to treat many young people who have experienced sexual and gender confusion.

4. In order for a minor to attend therapy, the minor must have parental consent. Jane began therapy with me with the consent of her father, John Doe.

5. Jane had a history which included the death of her biological mother at a young age, the trauma of which always stayed with her and affected her emotionally and psychologically. Jane also suffers with Asperger's Syndrome, although she is high functioning. Such underlying issues contributed to Jane's development of gender confusion.

6. Many young people with underlying mental health issues develop sexual disorientation and/or gender confusion. When a child has gender confusion, it is imperative that his or her family is involved in the therapy so that trust develops with those who love and care the most for the child, and so the therapist can work with the child to help the child better understand his or her emotions and feelings in a holistic way, as opposed to just examining one symptom of a larger problem and affirming it.

7. It is extremely unhealthy for a child to hide behind an adult under any circumstance, much less one which involves potentially permanent and irreparable damage to mental health and wellness in the case of a child with underlying psychological conditions and trauma who is suffering with gender confusion. Such actions often lead to actual gender dysphoria and to further psychological and emotional trauma.

8. Children do not have the cognitive ability to make important decisions about how they will live their lives as adults so that when they wish to socially transition, it is imperative to the child's mental and emotional well-being that such decisions are made with the guidance of trusted adults who love and care for them, and not by individuals who are transient in their lives

and who do not know of the child's mental health history, which is what I understand happened here with the defendant school district and certain of its staff members.

9. Those who simply "affirm" the child's gender "feelings" without ensuring that the child has all the tools available to understand the potential long-term impact of transition, while having no understanding of the child's emotional and psychological conditions are, in my view, child abusers who are potentially doing grave long-term harm to the child.

10. Children need to know that the path beginning with social transition often leads to physical transitioning. Physical transitioning usually results in irreversible physical, psychological, and emotional results. Those who go through physical transition when young, as their brains become fully mature, or if their experience turns out to be bad, often wish to detransition. Unfortunately, after years of puberty blockers and sometimes surgeries, the ability truly to detransition and to be the person one was at birth is usually impossible; the physical and emotional scars become permanent and the ability to have families and the types of relationships and intimacy that such individuals wish for becomes extremely difficult and, in many instances, impossible.

11. During the fall of 2023, Jane began presenting to me as exhibiting greater confusion, lacking in motivation, demonstrating situational depression, and feeling isolated. I did not know it at the time, but such symptomology correlated with what I have learned was the school "socially transitioning" Jane without her father's involvement.

12. The actions of the school district and its staff in taking such actions undermined Jane's true psychological wellbeing and the important therapy in which she had been involved since April 2021, and caused her tremendous setbacks as Jane began leading a double life--one at home and another at school--which spilled over into her therapy since she because secretive with

me about the emotional and psychological issues she was experiencing. Without honesty and openness, the therapeutic treatment of a patient is greatly harmed.

13. Jane is a child. When a child is undermined by an adult and then that adult turns out to have caused problems for the minor, children oftentimes will develop trust issues where no adult can be trusted in that child's eyes. Thus, by socially transitioning Jane without her father's knowledge or consent, the defendants caused a breach of the trust that Jane had with her father, therefore undermining John's relationship with Jane.

14. Further, I understand now that Jane was told by defendant Ashley Miranda that two teachers would not be told of the social transition, but that Miranda now asserts that she did tell those teachers of the social transition. Once again, what this demonstrates is that the defendants' actions caused a breach of trust with Jane that could have potentially negative lifelong consequences in her relationships. The fact that Miranda now is openly disputing Jane's understanding of their discussions in such regard demonstrates just how toxic the school's actions were in terms of the example Jane has of whether adults can be trusted.

15. Children need to learn to respect and trust the adults in their lives, first and foremost among whom are their parents, assuming that the parents love their children.

16. I have no doubt at all that Mr. Doe loves and cares tremendously about Jane. That he was undermined by the defendants' actions when defendants secretly agreed to socially transition Jane, such actions had demonstrably negative effects on Jane's mental and emotional health.

17. Since Mr. Doe has kept Jane out of school and we have been able to address what happened with her in school with the social transition, Jane has come around to being in a much better emotional state. She no longer demonstrates the isolation and depression she had in fall

2023. However, Jane is fearful of going back to school because of her lack of trust in how her situation will be handled. I highly recommend against her returning to the school unless and until such trust issues can be alleviated so that her therapy and related medical treatment is no longer undermined, and so that her father can be the adult decision-maker in her life with respect to any feelings of gender confusions she continues to have. In other words, if the school insists on continuing to socially transition Jane without Mr. Doe's consent, Jane should not return to school as it will further damage her.

18. Mr. Doe has been a very concerned and supportive parent of his daughter the entire time that I have treated Jane, and I have no doubt that he only has Jane's best interests in mind.

19. To the contrary, it appears to me that the defendants are concerned only with a political outcome that does not take into account the whole person that is Jane or the long-term damage they have done due to undermining Jane's therapeutic and medical treatment, while also breaching her trust.

Debra Pirozzoli

Dated: April 24, 2024