# MURRAY-NOLAN BERUTTI LLC
## *Attorneys at Law*

**Partners**
Gwyneth K. Murray-Nolan (NJ, NY, DC)
Ronald A. Berutti (NJ, NY, KY)

**Associates**
Rebecca R. Petersen (NJ)
Nicholas P. Nachtergaele (NJ)

Reply to: Ron@MNBlawfirm.com

May 23, 2024

**Via eCourts**
Honorable J. Brendan Day, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

>   **Doe v. Delaware Valley High School Board of Ed. et als.**
>   **Civ. No. 3:24-cv-107 (GC)(JBD)**
>   **Our File No. 01195**

Dear Judge Day,

As Your Honor is aware, this firm represents the plaintiff, Mr. Doe, herein. We are writing jointly with defendants seeking to resolve a discovery dispute related to subpoenas served arising from Your Honor's Discovery Order of May 14, 2024 (the "Order"), a copy of which is attached hereto as **Exhibit A**. The Order arose from a status conference held on May 8, 2024 (the "Status Conference").

### (i) The Request.

Mr. Doe asks that third party subpoenas served on Debra Pirozolli and Family & Individual Counselling Center ("Ms. Pirozolli) **(Exhibit B)**, and Lori Ioriatti, CPNP, PMHS, Hunterdon Health and Hunterdon Pediatric Associates ("Nurse Ioriatti") **(Exhibit C)**, respectively, be quashed and modified to provide that defendants may only seek medical records in keeping with the Order.

### (ii) The Response.

The Request follows a period of negotiation wherein the parties attempted to negotiate, but the compromise fell apart, the details of which are set forth in the parties' respective positions below. In the absence of a compromise, Mr. Doe takes the position that the Order governs and only permits the DVRHS Defendants to seek medical records.

**(iii) efforts to resolve the dispute.**

Multiple emails and proposals were passed between the parties via email.

**(iv) the position of the complaining party.**

Your Honor will recall that this matter concerns Mr. Doe's parental rights allegedly being violated when his minor daughter was socially transitioned in school without his knowledge. Such social transitioning was purposely kept secret from him. **The DVRHS Defendants did not ask the minor whether she was in therapy or if she was receiving medical treatment related to the issues at hand--she was--but regardless moved forward with social transitioning.**

In the parties' conference call with Your Honor as related to discovery (a separate FERPA Order was also issue and is not of concern herein), **Mr. Doe noted that all of the requests for discovery were a "red herring" since the question for the preliminary injunction proceeding is not whether or what type of treatment his daughter, "Jane" received, but rather, that Mr. Doe was never informed that Jane was being socially transitioned, and that such acts interfered with Mr. Doe's parental rights to direct Jane's medical care, among other things.** Despite this, in the Status Conference, Mr. Doe agreed that although they had not sought such information prior to beginning the social transition of Jane, defendants could subpoena medical records of her Nurse Iorotti and Ms. Pirozolli. Further, during the call, the State Defendants pointed out that they were unable to locate Ms. Pirozolli's licenses described in her Declaration. As Mr. Doe noted, Ms. Pirozolli's licenses are also really irrelevant to the issues since Mr. Doe understood her to be licensed and had her provide therapy to Jane. Mr. Doe's belief is all that truly is relevant regarding the actual treatment of Jane. Also relevant is that the DVRHS Defendants interfered with such therapy by socially transitioning Jane without giving any regard at all to whether Jane was in therapy. Regardless, during the Status Conference it was agreed that such information could be subpoenaed by the DVRHS Defendant. Thus, Your Honor directed the DVRHS Defendants to submit a proposed Order memorializing the permitted discovery that they wished to receive.

Thereafter, the DVRHS Defendants circulated a proposed form of Order to all counsel, who exchanged comments. Neither the DVRHS Defendants nor the State Defendants sought to include the right to request information about Ms. Pirozzoli or Nurse Ioratti's licensure. The DVRHS Defendants then submitted the agreed Order to Your Honor who made slight modifications and signed the Order, that makes no provision for any defendant to subpoena information related to professional licensure of Jane's providers. Thus, by their decisive act not to include such language in the proposed Order despite knowing that they had the right to do so, defendants waived such right.[1]

---

[1] "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation omitted); *Montemuro v. Jim Thorpe Area Sch. Dist.*, 2024 U.S. App. LEXIS 10553, *13 (3d Cir.); *See also West Jersey Title & Guaranty Co. v. Industrial Trust Co.*, 27 N.J. 144, 152 (1958)(quotations omitted) ("Waiver" is the intentional relinquishment of a known right. It is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option

Regardless, and in good faith, after receiving the Order I was able to clarify the licensure issue and explained the same to counsel in an email. **(Exhibit D)** The Pirozolli Declaration that I drafted inadvertently provided that she is a "Licensed Clinical *Professional* Counsellor" instead of being a "Licensed Clinical *Pastoral* Counsellor." Following the call with Your Honor, I pieced together the events leading up to the submission of such Declaration. A phone message had been left for me by Ms. Pirozolli asking me to make one additional change to her Declaration after it had been executed, since she missed it when reviewing the document prior to signature. The requested change was changing the wording from "Professional" to "Pastoral." However, in my haste to submit papers, I inadvertently failed to make such non-substantive change and filed the Declaration with the incorrect license designation, meaning that the "Licensed Clinical Professional Counsellor" designation was a scrivener's error.[2] Since it was a non-substantive change, I did not file a corrected Declaration.

Following entry of the Order, the DVRHS Defendants served the two subpoenas. Both subpoenas were, in Mr. Doe's view, overbroad and sought information outside the scope of the Order. Not only did they seek information regarding the providers' licensure which was beyond the scope of the Orders, but the DVRHS Defendants sought highly intrusive communications which were never raised during the phone conference with Your Honor. More specifically, in the subpoena to Ms. Pirozolli, the DVRHS Defendants are seeking all drafts of the Declaration that I prepared for Ms. Pirozzoli to review, all of my emails with Ms. Pirozolli, and all of my texts with her. This office has asserted such document demands to be Attorney Work Product[3] which is outside the scope of the Order, and which is not discoverable in any event. The DVRHS Defendants plainly did not raise the issue of seeking such information with the Court in the Status Conference or in the proposed Order because they know they are not entitled to it. Instead, they were slipped into the subpoena. Such demands are work product since they seek to learn my thoughts and my methods in preparing a Declaration on my client's behalf.

What seems clear is that the DVRHS Defendants, who were made aware during the Status Conference that we would oppose depositions, are hoping now to be able to argue that the only other way to obtain the information they are seeking from Ms. Pirozolli is to depose her (since I am claiming my drafts and communications to be work product). Thus, the subpoena of such work product is a transparent sham to try forcing depositions where they are not necessary. The DVRHS Defendants wish to turn this case into one about the substantive treatment that Jane was receiving, which is irrelevant, in order to shift attention away from the central issue regarding the medical

---

have demanded and insisted on. It is requisite to waiver of a legal right that there be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part...")

[2] *See Foman v. Davis,* 371 U.S. 178, 181-182 (1962) (quotations omitted) (Noting that the *Federal Rules of Civil Procedure* seek to reach questions on the merits such that they "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.")

[3] *See, generally, In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 663-64 (3d Cir. 2003).

providers--which is that the DVRHS Defendants *never asked* if Jane was receiving treatment before socially transitioning Jane without her father's knowledge or approval, and contrary to the medical care that he, as the parent, believed to be in Jane's best interests.

Similarly, in their subpoena of Nurse Ioratti, whose letter supporting that Jane should be kept out of school pending the outcome of this matter was attached to Mr. Doe's Reply Declaration, the DVRHS Defendants requested copies of all of Nurse Ioratti's licenses as well as all "drafts" of the subject letter that ultimately was attached to the Doe Declaration. Such demand for drafts likewise is a transparent attempt to create a basis to take depositions which (1) will be designed to change the focus of the issues that matter to the preliminary injunction; and (2) which will further delay this matter as the school year runs down. Nurse Ioratti's drafts of the subject letter if there are any) are not medical records, but rather are drafts of a letter submitted to the Court.

The Attorney General and Department of Education ("State Defendants") did not engage in substantive resolution efforts since the subpoenas were served by the DVRHS Defendants with knowledge of the Status Conference and purportedly in keeping with the proposed Order they circulated which ultimately was signed by this Court (with minor, non-substantive adjustments made).

In attempting to resolve the issues by communication in keeping with the parties' good faith obligations to meet and confer, Mr. Doe advised that he was willing to compromise just to make this matter progress rapidly in light of its emergent nature. Such compromise would permit defendants to obtain only medical records and professional license information. However, the DVRHS Defendants continue insisting that they are entitled to request copies of Ms. Pirozzoli's "Licensed Clinical Professional Counsellor" license--which they know not to exist--and all copies of the subject letter from the pediatric practice. (**Exhibit E**) Such continued demands are precursors to the depositions that the DVRHS Defendants with to take. (**Exhibit F**).

Mr. Doe believes that the DVRHS Defendants are playing a game of "gotcha" with such requests. Because of my scrivener's error, they know that Ms. Pirozolli is not a Licensed Clinical Professional Counsellor, yet they insist that she provide a license that she does not have. Moreover, their insistence on receiving Nurse Ioratti's draft letters is outside the scope of the Order. Both such demands are harassing. Thus, since the DVRHS Defendants are unwilling to compromise the demands that Mr. Doe believes fall outside the scope of good faith arising from the Status Conference, Mr. Doe seeks intervention simply to limit the subpoenas to the four corners of the Order, which is limited to the production and receipt of medical records.

As a final compromise effort, I offered to provide counsel with a screen shot of a text communication I had with Ms. Pirozzoli which would show that she had asked me to change the Declaration's wording and that I had already filed in exchange for agreement that such exchange did not waive the Work Product Doctrine and that their request for the "Certified" nurse credentials be dropped. (**Exhibit I**) However, I received no response. **We are willing to provide Your Honor with all communications between Mr. Pirozzoli and me for *in camera* review if necessary. However, we absolutely are unwilling to waive the Work Product Doctrine protections afforded to us.**

Honorable J. Brendan Day, U.S.M.J.　　　　　　　　　　　　　　　　　　　May 23, 2024
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 5

In light of the time sensitivity of these issues, with the school year ticking away, we respectfully request that Your Honor address these issues with alacrity.

### (v) the position of the responding party (DVRHS Defendants)

We served our subpoenas **(Exhibits B and C)** via personal service on May 17, 2024, just as the Court's order requires. On Monday, May 20, 2024, plaintiff's counsel objected to the scope, specifically, as to those requests for communications between plaintiff's firm and the medical providers, including drafts of the certification from Ms. Pirrozzoli. Plaintiff's counsel asserted a work product privilege over his communications with these medical providers.

We don't agree with plaintiff's objection to the scope—Jane Doe's "medical records," if they are properly maintained in the ordinary course of business, will include everything related to her, including communications with third parties related to her care and treatment.

Nonetheless, we considered the objection, and to move this matter along, agreed to serve a revised subpoena eliminating the disputed requests. However, we reminded plaintiff's counsel that he had represented to this Court during the May 15, 2024, conference that Ms. Pirrozzoli and Nurse Ioratti were *not* retained experts and, thus, we didn't see a basis for asserting a privilege. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663-64 (3d Cir. 2003), concerned non-testifying consultants. Neither Nurse Ioratti nor Ms. Pirrozzoli are non-testifying consultants—indeed, plaintiff has expressly provided testimonial evidence from them, making this abundantly clear. Accordingly, while we agreed to reduce the scope of the subpoena without prejudice, we asked plaintiff's counsel to supply a privilege log.

For reasons unknown, plaintiff's counsel refused to provide a privilege log. Instead, plaintiff's counsel claimed that making such a demand was at odds with trying to reach a compromise. He then proposed the following:

1. Re-serve the subpoenas with a modified Exhibit A that is limited to medical records and credentials, together with a letter providing that the prior subpoena is withdrawn.

2. The subpoenas must be served no later than tomorrow before Noon so that there are no more delays.

3. No other qualifications to the withdrawal shall be made and you can reserve your right to attempt to obtain such information in the future with permission of the Court.

We actually agreed to these terms. We then re-circulated the request for documents that simply deleted the disputed requests. Plaintiff's counsel then raised a new objection—this time complaining that we sought information from Ms. Pirrozzoli about her claim that she was a "Licensed Clinical Social Worker" and drafts of the letter from Nurse Ioratti. We pushed back, pointing out that the parties had just agreed that we could seek information relating to "credential[ing]" and this would fall within that. If Ms. Pirrozzoli doesn't have such information,

Honorable J. Brendan Day, U.S.M.J.  May 23, 2024
Page 6

she can simply state as much. The issue of whether and how Ms. Pirrozzoli is licensed is important because (1) based on the services she appears to provide, she is likely required to be licensed as a counselor with the state, (2) we need information sufficient to determine if she should be licensed or if she qualifies for any exemption, and (3) the facts of her license and credentials bear upon the credibility and weight the court will give to the opinions she submitted to the court here. We have our doubts about the veracity of the so-called "scrivener's error"—when the information about Ms. Pirrozzoli's credentials was raised by DAG Lynch at the March 15th conference, plaintiff's counsel expressed surprise and didn't mention anything about a voicemail or mistake.[4]

Similarly, the letter submitted by Ms. Ioratti is a medical record. If there are drafts of it, we believe they are more than fairly encompassed within the subpoena's scope. Our refusal to concede on this issue led to the filing of this letter. A copy of the e-mail exchanges are attached as **Exhibit G and H.**

We reiterate that the reason for seeking discovery is to provide this Court with a substantial record and the opportunity to make factual findings to decide plaintiff's preliminary injunction application, which we expect him to appeal if decided against him. Those factual findings will depend, in large part, on the providers' qualifications, their bias, any inconsistent statements made to this Court, and the substance of any treatment they provided Jane Doe.

Respectfully yours,

**MURRAY-NOLAN BERUTTI LLC**

*Ronald A. Berutti*

By:_____
Ronald A. Berutti

RAB
cc:   All Counsel of Record – Via eCourts

---

[4] The State Defendants fully support the requests DVRHS made in the two subpoenas.