# EXHIBIT B



**Anderson & Shah, LLC**
Attorneys at Law

ROSHAN D. SHAH | Managing Partner
rshah@andersonshahlaw.com
P: 732-398-6544 | F: 732-576-0027

May 16, 2024

**VIA PERSONAL SERVICE**
Debra Pirozzoli, MS, LCPC, CTC, CMPC, ACMFT
Family & Individual Counseling Center
8 Main St, Ste. 4
Flemington, NJ 08822

   Re: **Doe v. Delaware Valley Reg'l High School Bd. of Ed., et al.**
      **Civil Action No. 24-107 (GC-JBD)**

Dear Ms. Pirozzoli:

This Firm represents Defendants Delaware Valley Regional High School, Ashley Miranda, and Scott McKinney. You are hereby being served with a Subpoena *Duces Tecum* for the production of certain documents.

If you have any questions, please contact me. Thank you.


Very truly yours,

*/s/Roshan Shah*

ROSHAN D. SHAH, ESQ.
For the Firm

Enclosure

c: Matthew J. Lynch, Esq. (*via regular mail*)
  Ronald A. Berutti, Esq. (*via regular mail*)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| Jane Doe ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 24-107 (GC-JBD) |
| Delaware Valley Regional High School Board of Education, et al. ) ) | |
| *Defendant* ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Debra Pirozzoli and Family & Individual Counseling Center
8 Main Street, Suite No. 4, Flemington, NJ, 08822

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Anderson & Shah LLC<br>1040 Broad Street, Suite 304<br>Shrewsbury, NJ 07702 | Date and Time:<br>05/31/2024 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/17/2024

*CLERK OF COURT*

OR

_____     /s/ Roshan D. Shah, Esq.
*Signature of Clerk or Deputy Clerk*       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant Delaware Valley Reg. H.S. Bd. of Educ., A. Miranda, and S. McKinney, who issues or requests this subpoena, are:
Roshan D. Shah, Esq., 1040 Broad St., Ste. 304, Shrewsbury, NJ 07702, rshah@andersonshahlaw.com, 732-398-6545

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 24-107 (GC-JBD)

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS

1. "Document" shall mean the original and any copy, regardless of origin or location, of any book, pamphlet, periodical, letter, memorandum, telegram, report, records, study, handwritten note, working paper, chart, photograph, index, tape, data sheet or data processing card or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, to which you have or had access.

2. "You" shall mean Debra Pirozzoli, MS, LCPC, CTC, CMPC, ACMFT and Family & Individual Counseling Center collectively.

3. "Certification" refers to the certification submitted by Debra Pirozzoli, dated April 24, 2024, in this matter and which is attached as Exhibit B.

4. "A.H." refers to the student involved in this litigation and the subject of the Certification.

## INSTRUCTIONS

1. Documents to be produced include, without limitation, any responsive Document that was or is prepared, kept, or maintained in the ordinary course of business or for personal use by the drafter, custodian, or recipient.

2. A Request for any Document shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document, in addition to the Document itself.

3. A Request for any Document shall be deemed to include a request for all drafts or mark-ups thereof; revisions, modifications, and amendments thereto; and non-identical copies thereof.

## REQUESTS FOR DOCUMENTS

1. A copy of all professional licenses held by Debra Pirozzoli which support or relate to her statement in paragraph 1 of the Certification that she is a "Licensed Clinical Professional Counsellor."

2. A copy of any professional licenses issued to Debra Pirozzoli by the State of New Jersey.

3. A copy of any professional licenses issued to Debra Pirozzoli by any state.

3. Your entire file/chart, including any and all papers, documents, progress notes, physician notes, therapist notes, files, medical records, prescriptions, diagnostic assessments, treatment plans, regarding A.H.

4. Copies of all communications, including e-mails and text messages, with members of the law firm of Murray-Nolan Berutti, LLC.

5. Copies of all communications, including e-mails and text messages, with A.H.'s parent.

6. A copy of all drafts of the Certification.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 3:24-cv-107 GC-JBD<br><br>**REPLY DECLARATION OF<br>DEBRA PIROZZOLI,<br>MS, LCPC, CTC, CMPC, ACMFT** |

DEBRA PIROZZOLI, MS, LCPC, CTC, CMPC, ACMFT, of full age, hereby declares as follows under penalty of perjury:

1. I am a Licensed Clinical Professional Counsellor and have been the treating therapist for Jane Doe since April 17, 2021. I am fully familiar with the facts set forth below. I make this Reply Declaration in support of the plaintiff John Doe's Motion for Preliminary Injunction.

2. I received a Master of Science in Christian Counselling from Cairn University in 2005 after having received a Bachelor of Arts with Honors in Psychology Communication from the College of St. Elizabeth in 2003. I now have my own practice known as the Family & Individual Counselling Center in Hunterdon County, New Jersey.



3. In my over twenty (20) years of experience as a therapist, I have had the opportunity to treat many young people who have experienced sexual and gender confusion.

4. In order for a minor to attend therapy, the minor must have parental consent. Jane began therapy with me with the consent of her father, John Doe.

5. Jane had a history which included the death of her biological mother at a young age, the trauma of which always stayed with her and affected her emotionally and psychologically. Jane also suffers with Asperger's Syndrome, although she is high functioning. Such underlying issues contributed to Jane's development of gender confusion.

6. Many young people with underlying mental health issues develop sexual disorientation and/or gender confusion. When a child has gender confusion, it is imperative that his or her family is involved in the therapy so that trust develops with those who love and care the most for the child, and so the therapist can work with the child to help the child better understand his or her emotions and feelings in a holistic way, as opposed to just examining one symptom of a larger problem and affirming it.

7. It is extremely unhealthy for a child to hide behind an adult under any circumstance, much less one which involves potentially permanent and irreparable damage to mental health and wellness in the case of a child with underlying psychological conditions and trauma who is suffering with gender confusion. Such actions often lead to actual gender dysphoria and to further psychological and emotional trauma.

8. Children do not have the cognitive ability to make important decisions about how they will live their lives as adults so that when they wish to socially transition, it is imperative to the child's mental and emotional well-being that such decisions are made with the guidance of trusted adults who love and care for them, and not by individuals who are transient in their lives

and who do not know of the child's mental health history, which is what I understand happened here with the defendant school district and certain of its staff members.

9. Those who simply "affirm" the child's gender "feelings" without ensuring that the child has all the tools available to understand the potential long-term impact of transition, while having no understanding of the child's emotional and psychological conditions are, in my view, child abusers who are potentially doing grave long-term harm to the child.

10. Children need to know that the path beginning with social transition often leads to physical transitioning. Physical transitioning usually results in irreversible physical, psychological, and emotional results. Those who go through physical transition when young, as their brains become fully mature, or if their experience turns out to be bad, often wish to detransition. Unfortunately, after years of puberty blockers and sometimes surgeries, the ability truly to detransition and to be the person one was at birth is usually impossible; the physical and emotional scars become permanent and the ability to have families and the types of relationships and intimacy that such individuals wish for becomes extremely difficult and, in many instances, impossible.

11. During the fall of 2023, Jane began presenting to me as exhibiting greater confusion, lacking in motivation, demonstrating situational depression, and feeling isolated. I did not know it at the time, but such symptomology correlated with what I have learned was the school "socially transitioning" Jane without her father's involvement.

12. The actions of the school district and its staff in taking such actions undermined Jane's true psychological wellbeing and the important therapy in which she had been involved since April 2021, and caused her tremendous setbacks as Jane began leading a double life--one at home and another at school--which spilled over into her therapy since she because secretive with

me about the emotional and psychological issues she was experiencing. Without honesty and openness, the therapeutic treatment of a patient is greatly harmed.

13. Jane is a child. When a child is undermined by an adult and then that adult turns out to have caused problems for the minor, children oftentimes will develop trust issues where no adult can be trusted in that child's eyes. Thus, by socially transitioning Jane without her father's knowledge or consent, the defendants caused a breach of the trust that Jane had with her father, therefore undermining John's relationship with Jane.

14. Further, I understand now that Jane was told by defendant Ashley Miranda that two teachers would not be told of the social transition, but that Miranda now asserts that she did tell those teachers of the social transition. Once again, what this demonstrates is that the defendants' actions caused a breach of trust with Jane that could have potentially negative lifelong consequences in her relationships. The fact that Miranda now is openly disputing Jane's understanding of their discussions in such regard demonstrates just how toxic the school's actions were in terms of the example Jane has of whether adults can be trusted.

15. Children need to learn to respect and trust the adults in their lives, first and foremost among whom are their parents, assuming that the parents love their children.

16. I have no doubt at all that Mr. Doe loves and cares tremendously about Jane. That he was undermined by the defendants' actions when defendants secretly agreed to socially transition Jane, such actions had demonstrably negative effects on Jane's mental and emotional health.

17. Since Mr. Doe has kept Jane out of school and we have been able to address what happened with her in school with the social transition, Jane has come around to being in a much better emotional state. She no longer demonstrates the isolation and depression she had in fall

2023. However, Jane is fearful of going back to school because of her lack of trust in how her situation will be handled. I highly recommend against her returning to the school unless and until such trust issues can be alleviated so that her therapy and related medical treatment is no longer undermined, and so that her father can be the adult decision-maker in her life with respect to any feelings of gender confusions she continues to have. In other words, if the school insists on continuing to socially transition Jane without Mr. Doe's consent, Jane should not return to school as it will further damage her.

18. Mr. Doe has been a very concerned and supportive parent of his daughter the entire time that I have treated Jane, and I have no doubt that he only has Jane's best interests in mind.

19. To the contrary, it appears to me that the defendants are concerned only with a political outcome that does not take into account the whole person that is Jane or the long-term damage they have done due to undermining Jane's therapeutic and medical treatment, while also breaching her trust.

Debra Pirozzoli

Dated: April 24, 2024