UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| JANE DOE (said name being fictitious),<br><br>Plaintiff(s),<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, et al.,<br><br>Defendant(s). | Hon. Georgette Castner, U.S.D.J.<br><br>Civil Action No. 24-107 (GC-JBD)<br><br><u>CIVIL ACTION</u> |

**BOARD DEFENDANTS' OPPOSITION BRIEF IN RESPONSE TO PLAINTIFF JOHN DOE'S SECOND APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

ROSHAN D. SHAH, ESQ.
VALENTINA RECCHIA, ESQ.
**ANDERSON & SHAH LLC**
1040 Broad Street, Suite 304
Shrewsbury, NJ 07702
Tel: 732-398-6545
Fax: 732-576-0027
*Attorneys for Defendants Delaware Valley Regional High School Board of Education, Scott McKinney, and Ashley Miranda*

Of Counsel and On the Brief:
Roshan D. Shah, Esq.

On the Brief:
Valentina Recchia, Esq.

# **TABLE OF CONTENTS**

*Pages(s)*

PROCEDURAL AND FACTUAL BACKGROUND ..................................................1

    A. The Parties..........................................................................................................1

    B. Jane's Expression Of Gender Identity And Board Policy 5756 ................................1

    C. Doe's Demand That The Board Disregard Jane's Gender Identity And His Refusal To Allow Her To Attend School ..................................................................3

ARGUMENT .................................................................................................................. 6

POINT I

DOE LACKS STANDING TO PURSUE CLAIMS ON BEHALF OF JANE AND, INDEED, THERE'S AN IRRECONCILABLE CONFLICT IN THEIR POSITIONS ........... 6

POINT II

DOE IS NOT ENTITLED TO A TRO BECAUSE HE CANNOT MEET THE HIGH STANDARD REQUIRED FOR SUCH EXTRAORDINARY RELIEF ................................ 8

    A. Doe Still Does Not Enjoy Any Likelihood Of Success On The Merits ................... 8

    B. Doe's Refusal To Allow Jane To Be Educated, Not The Board's Action, Is Causing Harm To Jane ........................................................................................ 10

    C. The Balance Of Equities Weigh Against Issuing An Injunction............................. 11

    D. The Public Interest Does Not Weigh In Favor Of An Injunction ..........................12

CONCLUSION ...............................................................................................................13

## PROCEDURAL AND FACTUAL BACKGROUND

A.   The Parties.

John Doe is the father of Jane, a minor child and student who attends Delaware Valley Regional High School (DVRHS). *Am. Compl.*, ¶ 10. Jane suffers from Attention-Deficit/Hyperactivity Disorder ("ADHD") and Unspecified Mental Disorder ("UMD"). *Id.* at ¶ 21. While born a biological female, Jane identifies as a male, something the Amended Complaint labels as "gender confusion" and attributes to the trauma associated with the death of her mother. *Id.* at ¶ 22.

Defendant Delaware Valley High School Regional Board of Education (the "Board") is a public entity that oversees DVRHS. *Id.* at ¶ 13. Defendant Scott McKinney is the Superintendent. *Id.* at ¶ 11. Defendant Ashley Miranda is the high school counselor and staff advisor of Students Advocating for Equality ("SAFE"), an extracurricular club Jane participated in at school. *Declaration of Ashley Miranda ("Miranda Decl.")* ¶ 3.

Doe has also named as defendants Attorney General Matthew Platkin and Acting Commissioner of the New Jersey Department of Education, Kevin Dehmer, but only in their official capacities. *Am. Compl.* at ¶¶ 14-15. These official capacity claims are construed as suits against the entity, the State of New Jersey. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

B.   Jane's Expression Of Gender Identity And Board Policy 5756.

Jane is a freshman at DVRHS. *See Id.* at ¶ 33. As part of her extracurricular activities, Jane joined SAFE, a student advocacy group that "promote[s] open discussion and awareness about modern cultures and topics surrounding intersectionality while aiming to make positive contributions to our community and school." *Id.* Miranda is the

1

faculty advisor to SAFE. *Id.* at ¶ 34. During a SAFE meeting, Jane expressed that she identified as a male and would like to "socially transition"—meaning be referred to by her identified gender. *Id.* at ¶ 35.

At no time did Miranda encourage or coerce Jane to identify as a different gender than her birth gender. *Miranda Decl.*, ¶ 18. As Miranda explains in her declaration, if Jane had expressed today that she identified as a female, then Miranda would immediately respect that decision and begin referring to her with her female name and pronouns. *Id.* at ¶ 19.

Jane's desire to socially transition to her identified gender implicated Board Policy 5756, which states:

> The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression. [*Am. Compl.* at ¶ 23].

As is self-evident, the policy is only implicated when the *student* "assert[s]" a gender identity and seeks to "have his or gender identity recognized" by the district. *Id.* The policy does not permit school staff or teachers to lie to parents. *Declaration of Scott McKinney ("McKinney Decl.")*, ¶ 7. Rather, it merely states that there is no "affirmative duty" to notify a parent of the student's gender identity or expression. *Am. Compl.*, ¶ 23. The purpose of the policy is to foster an inclusive and harassment-free atmosphere for all students, including transgender students. *McKinney Decl.*, ¶ 8.

The policy is consistent with guidance received from the New Jersey Dep't of Education ("NJDOE"), which "encourages [districts] to take a 'student-centered approach' to students who believe themselves to be transgender," and "declares, 'school district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun use, and parental communications.'" *Id.* at ¶ 15 (citing N.J. Dep't of Ed., Transgender Student Guidance for School Districts (Sept. 27, 2018)).

  C. Doe's Demand That The Board Disregard Jane's Gender Identity And His Refusal To Allow Her To Attend School.

Doe claims he only discovered Jane's gender identity when another parent called Jane using her chosen male name. *Am. Compl.* at ¶ 42. When Doe questioned the parent, the parent allegedly told him it was because Jane "was being called by such name at school" due to her social transition. *Id.*

Doe then removed Jane from school and confronted the Board Defendants, sharing Jane's "personal and therapeutic history" with them. *Id.* Miranda said she was not aware of Jane's ADHD and UMD diagnoses. *Id.* at ¶ 45. Doe stated that neither he, nor Jane's therapist, agreed with Jane's gender identity and her desire to socially transition to male. *Id.* at ¶ 46. Consistent with Board Policy 5756, and NJDOE's guidance, McKinney and Miranda respectfully explained that they would continue to refer to Jane by her expressed gender identity. *Id.* at ¶ 47.

Doe has kept Jane out of school since November 2023. *See Second Declaration of Scott McKinney ("Second McKinney Decl.")*, ¶ 7. In this State, "[c]hildren must go to school through age sixteen." *Joye v. Hunterdon Central Regional High School Board of Education*, 176 N.J. 568, 641 (2003).

3

Like every other district, and consistent with state law, the Board requires students to meet certain attendance requirements. *Second McKinney Decl.*, ¶ 5; *see also Board Policy 5200: Attendance*, attached as Exhibit A to Second McKinney Decl. Indeed, New Jersey takes school attendance so seriously that it enacted legislation requiring school officials to report truant students, *see* N.J.S.A. § 18A:38-25, and even authorizes attendance officers to arrest truants, *see* N.J.S.A. § 18A:38-29. A student who accrues 10 or more unexcused absences is truant. N.J.A.C. § 6A:16-7.6

N.J.A.C. § 6A:16-7.6 requires school districts to adopt and implement policies pertaining to attendance. DVRHS adopted Board Policy 5200 in response. *See Board Policy 5200*, attached as Exhibit A to Second McKinney Decl. Under Board Policy 5200, a student who accrues 9 or more unexcused absences may be denied course credit or even dropped from the course altogether. *See Board Policy 5200*, *6, Exhibit A, Second McKinney Decl. If a student receives home instruction, "[n]o absences shall be recorded for the student" so long as the "hours of instruction are not less than required" by the applicable regulations. *Id.* at **1-2.

Consistent with Board policies, the Board offered Doe multiple paths by which to ensure Jane met her attendance requirements. On December 22, 2023, the Board approved home instruction for Jane pending approval by the school physician. *Second McKinney Decl.*, ¶ 9. The Board then endeavored to secure teachers who would provide home instruction at the local public library. *Id.* at ¶ 15. On January 4, 2024, Doe refused to permit home instruction after being informed the teachers would honor whatever name and pronoun Jane asked them to use. *Id.* at ¶ 16.

On January 18, 2024, the Board offered the school library as a potential location for "home instruction." *Id.* at ¶ 17. Doe once again refused. *Id.* at ¶ 18.

4

On February 9, 2024, the Board also offered an online platform, Educere, by which Jane could meet her educational requirements. *Id.* at ¶ 21. Educere provides *online curriculum* for students in K-12. *Id.* at ¶ 22. This option was also refused by Doe. *Id.* at ¶ 23.

As the school year came to a close, the Board was notified that Jane would not attend school to take her final exams. *Id.* at ¶ 24. In other words, and contrary to Doe's motion, the Board **has not** precluded Jane from coming to school to take her final exams. *Id.* at ¶ 25. Jane is welcome to attend school at any time. *Id.* at ¶ 26. However, final exams are administered by a teacher or proctor. *Id.* at ¶ 27. They cannot be sent home and taken in the comfort of one's home without supervision. *Id.* at ¶ 28. As indicated above, the Board has offered to provide instruction at public places, including a library. *Id.* at ¶ 15. That offer remains available as it pertains to final exams. *Id.* at ¶ 29.

On May 30, 2024, the Board sent Doe a letter stating what's obvious under both State law and Board policy: Jane's non-attendance at school has jeopardized her ability to be promoted to 10th grade and complete requirements necessary to graduate high school. *See Letter from Scott McKinney, dated May 30, 2024*, attached as Exhibit A to John Doe's Declaration ("Doe Declaration"). Once again, the Board offered Jane a pathway, through Educere, that would allow her to meet the necessary requirements for promotion to 10th grade without having to set foot in the school. *Id.*

Doe has evidently refused this offer and, instead, filed an application for a temporary restraining order that seeks to restrain and enjoin the Board from: "preventing Jane Doe (said name being fictitious) from taking her final exams"; "taking any action to interfere with Jane Doe's ability to complete her school year remotely pending the outcome of this matter"; and "taking any actions which would preclude Jane Doe from

5

advancing to her sophomore year[.]" The Board now responds.

## ARGUMENT

### POINT I

### DOE LACKS STANDING TO PURSUE CLAIMS ON BEHALF OF JANE AND, INDEED, THERE'S AN IRRECONCILABLE CONFLICT IN THEIR POSITIONS.

"Article III standing is essential to federal subject matter jurisdiction and is thus 'a threshold issue that must be addressed before considering issues of prudential standing.'" *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016)(citing *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 n.16 (3d Cir. 2004)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992))(alteration in original).

Critically here, a parent's claims "resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing." *Howard v. Chester Cnty. Office of Juvenile Prob. & Parole*, 365 F. Supp. 3d 562, 571 (E.D. Pa. 2019)(citations and quotations omitted)(dismissing parent's claim that defendants violated the Eighth Amendment and caused his minor son to, among other things, "miss his senior prom"); *Delbridge v. Whitaker*, 2010 WL 1904456, at *3 (D.N.J. May 10, 2010)("[i]njuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing").

Here, Doe brings this application claiming an entitlement to provisional relief under Count III of his Amended Comp. *See Pl.'s Mvg. Br.*, \*2. That claim asserts a violation of Article VIII, § 4, ¶ 1 of the New Jersey State Constitution. *Am. Comp.*, Count III. That constitutional provision "directs [that] '[t]he Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all children in this State between the ages of five and eighteen years.'" *Abbott v. Burke ("Abbott XXI")*, 206 N.J. 332, 384 (2011)(citing N.J. CONST., art. VIII, § 4). Significantly, the New Jersey Supreme Court has construed this state constitutional provision as creating a "constitutional right" for "schoolchildren" to receive a thorough and efficient education. *Id*. at 383; see also *Abbott v. Burke ("Abbott XX")*, 199 N.J. 140, 178 (2009)("The New Jersey Constitution mandates the **children** of this State are entitled to a 'thorough and efficient education'" (citing N.J. Const. art. VIII, § 4)(emphasis added)).

Claims under the Thorough and Efficient Education Clause are brought on *behalf of* school children by their guardians. *Abbott v. Burke ("Abbott I")*, 100 N.J. 269, 277 (1985)("[p]laintiffs are children attending public schools in Camden, East Orange, Irvington, and Jersey City"). But that's not what's happening here. The only party to this case is Doe. Jane remains a non-party, a point that Doe has conceded throughout this litigation. As such any claim concerning Jane's thorough and efficient education remains outside this Court's subject matter jurisdiction. Doe fails to cite any case that recognizes a parent's individual right under the Thorough and Efficient Education Clause. For this reason alone, Doe's application should be denied.

POINT II

DOE IS NOT ENTITLED TO A TRO BECAUSE HE CANNOT MEET THE HIGH STANDARD REQUIRED FOR SUCH EXTRAORDINARY RELIEF.

The issuance of temporary restraints is "'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)(citing *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)). To obtain such relief, the movant must first show: (1) a reasonable likelihood of success on the merits; and (2) irreparable injury in the absence of preliminary relief. *Delaware River Port Auth.*, 501 F.2d at 919-20. If the movant makes this "gateway" showing, *Reilly*, 858 F.3d at 179, then the court must consider the following two factors: (3) "the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Delaware River Port Auth.*, 501 F.2d at 920.

The movant must "'make a clear showing that [the] four factors, *taken together*, warrant relief[.]'" *Reilly*, 858 F.3d at 178 (citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 6–7 (D.C. Cir. 2016))(emphasis in original)). Here, Doe has wholly failed to make the requisite showing on any factor.

    A.    <u>Doe Does Not Enjoy Any Likelihood Of Success On The Merits.</u>

Satisfying the first factor requires the movant to "demonstrate that it can win on the merits[.]" *Reilly*, 858 F.3d at 179. This requires, at this preliminary stage, a showing "significantly better than negligible but not necessarily more likely than not" that plaintiff will prevail on the merits." *Id.*; *see also Delaware River Port Auth.*, 501 F.2d at 920 (movant must demonstrate a "reasonable probability of eventual success in the

8

litigation").

As explained above, Doe's claim rests on the Thorough and Efficient Clause. *See Pl.'s Mvg. Br.*, *4. A "[t]horough and efficient education has been held to require equal educational opportunity for all children[.]" *Abbott XX*, 199 N.J. at 178-79. The New Jersey Supreme Court has interpreted this Clause to mean that the State "must develop a funding formula that would provide all children, including disadvantaged children in poorer urban districts, with an equal educational opportunity . . . ." *Id.* at 144. The Court has further opined that the funding must be tied to "a set of educational program standards." *Id.*

No New Jersey court has ever interpreted the Thorough and Efficient Clause to require school districts to dispense with attendance requirements. Indeed, New Jersey's public school attendance policies reinforce the Thorough and Efficient Clause, as they ensure that school students are receiving instruction from qualified teachers.

Doe's argument rests on a mistaken assumption that, because medical providers—and we, once again, are exploring the actual qualifications and treatment notes of these so-called providers through document subpoenas—stated Jane could remain out of school, it somehow means she is exempt from instruction *altogether*. *Pl.'s Mvg. Br.*, **4-5. That's not the case. When a student provides medical documentation that excuses their absence from being physically present in the school, that simply means the student is to receive "home instruction." *See Board Policy 5200*, *5, Exhibit A, Second McKinney Decl. Home instruction *does not* mean a student downloads homework assignments and completes them. *Second McKinney Decl.*, ¶¶ 10-14. Rather, it involves receiving actual instruction from a qualified instructor. *Id.* at ¶ 10. Unfortunately for Jane, Doe has steadfastly resisted the Board's efforts to provide home instruction to Jane.

Thus, there's no basis to assert, as Doe does, that the Board is refusing to acknowledge medical evidence excusing Jane's physical presence. Her physical presence isn't at issue—it's her failure to access home instruction, which the Board has repeatedly made available. The culprit for that failure is Doe. The Court should reject his attempt to benefit from that ill-conceived decision.

### B. Doe's Refusal To Allow Jane To Be Educated, Not The Board's Action, Is Causing Harm To Jane.

To satisfy the second factor necessary for a TRO or preliminary injunctive relief, plaintiff must show an irreparable injury. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). This factor requires showing that the injury "cannot be redressed by a legal or an equitable remedy following a trial." *Id.* (internal quotations and citations omitted). The injunctive relief "must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989). The harm "cannot be remote or speculative; it must be poised to occur before the District Court can hold a trial on the merits." *Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021)(citing B*P Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263-64 (3d Cir. 2000)).

Here, there's no irreparable harm to Doe. He's not at-risk of being left behind in the ninth grade. Nor is he at-risk of not graduating high school. These are all the impacts that may befall Jane—a non-party—if Doe refuses to allow her to receive school, including home instruction via an online portal (Educere).

Nonetheless, to the extent the Court is inclined to consider Jane's potential harm, Doe's claim of irreparable harm still fails. As is expressly stated in the letter from Mr. McKinney of May 30, 2024, Jane has available to her multiple options for completing her

10

coursework, including Educere, an online portal. *See Letter from Scott McKinney, dated May 30, 2024*, Exhibit A to Doe Decl. If she completes that coursework, she'll receive credit. *Second McKinney Decl.*, ¶ 31.

To the extent Jane contends the *Board* is precluding her from taking final exams and will suffer harm as a result, she couldn't be more incorrect. If Jane wants to attend school and take her final exams like everyone else, she is welcome to do so. *Id.* at ¶ 26. If she wants to meet a proctor at the local library and take the exam there, that will work just fine also. *Id.* at ¶ 29. What she can't do, though, is what no other student can do: receive the final examination at home and take it outside the presence of a teacher or proctor. There's nothing unconstitutional about imposing basic testing requirements. And any so-called "irreparable harm" flows from Doe's choice, not Board action. "If the harm complained of is self-inflicted, it does not qualify as irreparable." *Fellheimer Eichen Braverman Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995). Thus, Doe can't meet the second factor.

C. The Balance Of Equities Weighs Against Issuing An Injunction.

The third factor examines whether the balance of equities weighs in favor of granting the injunction. *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 167 (3d Cir. 1999). The balance of equities do not weigh in favor of Doe.

The Board, as an educational institution, is complying with New Jersey law concerning school attendance. If Doe refuses to send Jane to school, and also refuses all attempts to provide her home instruction, then the Board is left with no choice. There's no basis to treat Jane differently than any other student.

The sheer fact that Doe disagrees with Board Policy 5756 concerning transgender students—which this Court has already found doesn't traverse any constitutional rights,

11

*see Order and Opinion dated February 21, 2024*, *1, ECF No. 38—has led him to voluntarily make certain choices about Jane's schooling in this case. The Board shouldn't be penalized for Doe's ill-conceived decisions. And he shouldn't be rewarded with an injunction for ignoring state truancy laws. *See* N.J.S.A. § 18A-38-25. Thus, the third factor weighs against Doe.

D. <u>The Public Interest Does Not Weigh In Favor Of An Injunction.</u>

"Among the more nebulous concepts of equitable relief is the public interest factor of injunction analysis." *McCahon v. Pennsylvania Turnpike Commission*, 491 F. Supp. 2d 522, 528 (M.D. Pa. 2007). "This factor requires the court to look beyond the parties' respective interests and to gauge the injunction's potential effects on the community as a whole." *Id*. In particular, the court "must also consider the hardship to any interested third parties." *LCN Enterprises, Inc. v. City of Asbury Park*, 197 F. Supp. 2d 141, 153 (D.N.J. 2002)(citing *Oburn v. Shapp,* 521 F.2d 142, 152 (3d Cir.1975)).

Here, Doe can't meet this factor either. Doe has made a voluntary choice to remove Jane from school and refuse her the option of home instruction, including Educere, an online platform. Rewarding him with an injunction now because Jane will suffer the natural consequences from Doe's actions only encourages similar behavior from others. For example, a parent upset about the history curriculum could hold their student out of school and refuse all home instruction until the board changed its curriculum. Another parent upset about transgender students using bathrooms consistent with their gender identity could do the same. This would effectively grant parents the right to commandeer the schools—a right which doesn't exist. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005)(recognizing that in "certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the

12

school environment"). The public interest is not served by removing from school districts the ability to enforce the most basic of educational requirements—attendance, which can be satisfied with home instruction or even an online portal.

## CONCLUSION

Because Doe cannot make the requisite showing, the Court should deny his application for a temporary restraining order.

Dated: June 13, 2024

Respectfully submitted,

**ANDERSON & SHAH, LLC**
**ATTORNEYS AT LAW**
*Attorneys for Defendants Delaware Valley Regional High School Bd. of Ed., Scott McKinney, and Ashley Miranda*

By: */s/ Valentina Recchia*
    Valentina Recchia, Esq.

13