UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN DOE (said name being fictitious) | : | HON. Georgette Castner, U.S.D.J. |
| Plaintiff, | : | HON. J. Brendan Day, U.S.M.J. |
| | : | |
| v. | : | Civil Action No.: 24-00107 |
| | : | |
| DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, et al | : | |
| Defendants. | : | |

---

BRIEF OF DEFENDANTS, MATTHEW J. PLATKIN AND ANGELICA ALLEN-McMILLAN, IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

---

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex, P.O. Box 080
Trenton, New Jersey 08625
(609) 376-3100
Attorney for Defendants, Matthew J. Platkin and Angelica Allen-McMillan

Matthew Lynch
Viviana Hanley
Justine Longa
Meghan Musso
Deputy Attorneys General

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS ......................................................3

ARGUMENT ...........................................................................................................11

    I.    PLAINTIFF'S SUBMISSIONS ON REPLY PROVIDE NO
        BASIS TO ALTER THE COURT'S DENIAL OF INJUNCTIVE
        RELIEF ...........................................................................................13

    II.   A PRELIMINARY INJUNCTION COULD NOT ISSUE
        WITHOUT THIS COURT FIRST ASSURING THAT THIS CASE
        IS NOT MOOT ...............................................................................19

CONCLUSION .......................................................................................................21

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                                  **Page(s)**

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) ..................................................................... 14, 15, 19

*FBI v. Fikre*,
  601 U.S. 234 (2024) .................................................................................... 19, 20, 21

*Guerra v. Consol. Rail Corp.*,
  936 F.3d 124 (3d Cir. 2019) ................................................................................... 19

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) .................................................................................. 21

*United States v. Sanchez-Gomez*,
  584 U.S. 381 (2018) ................................................................................................ 20

**Statutes**

N.J. Stat. Ann. § 45:8B-39 .......................................................................................... 6

**Regulations**

N.J. Admin. Code §§ 13:34-11.2 to 11.4 .................................................................... 6

## PRELIMINARY STATEMENT

State Defendants submit this brief to address the factual developments in this matter that postdate State Defendants' brief in opposition to Plaintiff's application for a preliminary injunction. As part of his reply supporting a preliminary injunction, Plaintiff submitted a letter from his child's nurse practitioner and a declaration from a purported counselor. Plaintiff has relied on these documents to claim it is the opinion of medical professionals that the challenged state policies[1] were harming the child, and that the child must be kept out of school until the District ceased following an approach based on those state policies. Defendants, in turn, obtained documents and deposed those two individuals to elucidate these claims. That limited discovery has only confirmed that there is no basis for preliminary relief.

*First*, discovery has confirmed that the nurse practitioner's letter and putative counselor's declaration cannot be used to support any claims of irreparable harm or on the merits, and this Court should disregard them entirely. Although Plaintiff

---

[1] Plaintiff challenges the New Jersey Department of Education's Transgender Student Guidance for School Districts (Guidance), as well as certain anticipated enforcement of the New Jersey Law Against Discrimination (NJLAD). *See, e.g.*, ECF 40 at ¶¶ 72-73. When it is unnecessary to distinguish between them, State Defendants refer to both together as "the challenged state policies." They are, however, different in material respects. *See, e.g.*, ECF 45 at 49-50 n.17 (explaining that, because the Guidance is unenforceable, Plaintiff lacks standing to challenge it).

State Defendants note that any ECF citation with a page number refers to the blue stamped page number at the top of the document.

claimed the nurse practitioner's letter establishes that his child was mentally or emotionally harmed by the school's respect of the child's affirmatively expressed gender identity, the letter provides no probative evidence because—as discovery revealed—its assertions are based only on the *father's* views that he directly dictated to the nurse practitioner over the phone. Moreover, the nurse practitioner's letter is contradicted by the only information about gender that the child actually provided to the nurse practitioner firsthand: that the child in fact felt "very comfortable" using a male name and pronouns at school. And the putative counselor's declaration is not credible in the least because she lacks the training, education, experience, or licensure that would qualify her to opine on the child's mental health specifically, or on health care for transgender adolescents generally. Neither supports Plaintiff's claims.

*Second*, to the degree that these submissions do provide competent sources of evidence, they raise a second problem: whether this federal controversy remains live. Plaintiff insists that the school's respect of the child's affirmatively expressed male gender identity has distressed the child, and the putative counselor has testified that the child no longer identifies as male. But if it is in fact true that the child no longer desires to be addressed with a male name and pronouns at school, then there is no need for litigation at all—under the District's own policy, there would be no basis

to continue addressing the child in such a manner. Rather than a basis for emergency practice, it would be a basis to find the case moot, as no court order would be needed.

In short, this limited discovery confirms preliminary injunctive relief remains improper. Rather than bolster Plaintiff's arguments for likelihood of success on the merits or for the equities weighing in favor of interim relief, the new evidence fails to ground his opposition to the challenged policies in any professional medical opinion. Thus, notwithstanding Plaintiff's last minute evidentiary submissions, this Court should deny Plaintiff's application for a preliminary injunction.

## SUPPLEMENTAL STATEMENT OF FACTS

For reasons of economy, State Defendants adopt and incorporate by reference the Statement of Facts section in their preliminary injunction opposition brief, *see* ECF 45, which they supplement as follows.

On April 19, 2024, Defendants filed their respective briefs in opposition to Plaintiff's application for a preliminary injunction. ECF 45; ECF 46. When Plaintiff filed his reply brief on April 29, he attached two declarations and a letter. ECF 49. Plaintiff had not sought consent to introduce new evidentiary submissions at this stage, and he previously had disclaimed any need for further factual development after filing his Amended Complaint and had resisted District Defendants' request for limited discovery at the preliminary-injunction stage. *See* ECF 41 (Plaintiff's counsel stating that "the Amended Complaint's allegations are verified and it either

provides the basis for a preliminary injunction or it does not"). The supplemental documentation attached to Plaintiff's reply brief consisted of a letter from a nurse practitioner, Lori Ioriatti, ECF 49-3, a declaration from the child's putative counselor, Debra Pirozzoli, ECF 49-1, and a declaration from Plaintiff himself, ECF 49-2. Each document is dated April 24, 2024. *See* ECF 49-1; ECF 49-2; ECF 49-3.

The letter from Ioriatti states:

> The above referenced patient continues to have difficult [sic] with Anxiety and depression which significantly increased with social transitioning in the school setting increasing emotional stress and strain. At this time based on my evaluation and continue [sic] counseling it is in [the child's] best interested [sic] continue home instruction setting [sic] until this is resolved.

ECF 49-3 at 2.

The declaration from Pirozzoli states that she is a "Licensed Clinical Professional Counsellor" who has been providing therapy to Plaintiff's child (hereinafter "the child") since 2021. ECF 49-1 ¶ 1. Pirozzoli asserts that the child has been experiencing "gender confusion." *Id.* ¶ 5. She opines that "[c]hildren do not have the cognitive ability" to decide "to socially transition" without "the guidance of trusted adults," *id.* ¶ 8, and that individuals who affirm a child's affirmatively expressed gender identity without inquiring into the child's mental health are "child abusers who are potentially doing grave long-term harm to the child," *id.* ¶ 9. Pirozzoli further opines that "[t]he actions of the school district"

4

challenged in this case "undermined [the child's] psychological wellbeing," resulting in "demonstrably negative effects on [the child's] mental and emotional health." *Id.* ¶¶ 12, 16. She "highly recommend[s] against [the child] returning to the school" unless "[the child's] father can be the adult decision-maker … with respect to any feelings of gender confusions [the child] continues to have." *Id.* ¶ 17.

For his part, Plaintiff submitted a declaration averring that he has "been relying on the advice of Hunterdon Pediatric Associates [Ioriatti's employer] and my [child's] therapist in keeping [my child] out of school while the issue of [my child's] being socially transitioned at school is pending," and that "the school's actions are adversely affecting my [child's] mental and emotional health." ECF 49-2 ¶ 3. And his reply brief relied on these three additional submissions in his reply brief to claim that his child's "healthcare providers … assert that [the child] was damaged by defendants' actions," and thus to argue that his "parental rights over his [child's] core upbringing and health has been violated." ECF 49 at 15; *see also id.* at 6-10.

In response to Plaintiff's reliance on new materials in his reply, the District Defendants requested a conference to discuss the need for limited discovery to test the assertions therein. ECF 51. This Court held a status conference on May 8, 2024, and issued an order on May 14, 2024 ("Discovery Order") permitting the service of subpoenas on Pirozzoli and Ioriatti to obtain the child's medical/treatment records. ECF 55. On May 29, 2024, this Court clarified that the subpoenas may also seek any

and all licensing/certification/credential information for Pirozzoli and Ioriatti. ECF 57. This Court subsequently authorized the depositions of Pirozzoli and Ioriatti, ECF 70, but denied a deposition of the child without prejudice. ECF 76.

Pirozzoli was deposed on August 16, 2024. *See* Lynch Decl. Ex. A (Pirozzoli Dep. Tr.). The following facts came to light from her testimony and the records she provided in response to the subpoena. Pirozzoli is not licensed by the State to provide professional counseling or any form of mental health care. Ex. A (Tr. at 12:12-18). Instead, she only holds a certificate from the private National Christian Counselors Association for "pastoral counsel[ing]," *Id.* at exhibit D-8, and is recognized by the National Conservative Christian Church, Inc., as an "Ordained Minister of Pastoral Care." *Id.* at exhibit D-9; *Id.* at 9:24-10:3; *contrast* N.J. Stat. Ann. § 45:8B-39 (requiring State license to engage in professional counseling within New Jersey); N.J. Admin. Code §§ 13:34-11.2 to 11.4 (detailing stringent requirements to obtain a State license as a professional counselor). When asked about the basis for her prior statements about children's capacity to identity their own gender, and about the purported harm that flows from affirming a child's own affirmatively expressed gender identity, Pirozzoli could not cite any scientific, medical, or evidence-based support for those statements. Ex. A (Tr. at 53:2-9, 54:22-25, 57:21-25, 62:7-10). Pirozzoli testified that it was her understanding that the child no longer wishes to use male pronouns or a male name at school. *Id.* at 63:20-25.

6

Nurse practitioner Lori Ioriatti was deposed on August 23, 2024. *See* Lynch Decl. Ex. B (Ioriatti Dep. Tr.). The following facts came to light from her deposition and the medical records provided by her employer, Hunterdon Pediatric Associates, in response to the subpoena. Ioriatti holds a state license as a registered nurse, holds state certifications as an Advance Practice Nurse and in Primary Mental Health, and is the primary care provider for the child. *Id.* at 8:4-9, 9:11-20, 21:14-15. Ioriatti does not have any expertise in caring for transgender children. *Id.* at 11:14-21, 13:2-13, 15:7-10. The only mental health concern that Ioriatti has ever provided the child with care for is anxiety. *Id.* at 21:19-22.

On November 28, 2023, the child came to Hunterdon Pediatric Associates because of a cough and was treated by Ioriatti. *Id.* at exhibit I-8. The child was "crying throughout the visit" and there was a lot of "tension" in the room. *Id.* at 40:11-24. Ioriatti learned that the child, who was about to turn 15 years old, had been using a male name and pronouns at school, and that Plaintiff had "just found out." *Id.* at exhibit I-8; 67:18-69:1. Plaintiff expressed his belief that the child was "cognitively not mature enough" to make that decision and should be pulled from school. *Id.* at exhibit I-8; 42:18-43:4, 45:14-21. The child reported feeling "very comfortable using male pronouns and a male name" and felt "upset about the situation." *Id.* at exhibit I-8; 40:1-6, 44:13-16, 74:6-12.

Ioriatti clarified that she herself did not conclude that the child was insufficiently mature to identify the child's own gender, nor that the child should no longer attend school; she simply took note of Plaintiff's beliefs on these points. *Id.* at 42:18-43:15, 45:22-46:1. Ioriatti also did not conclude, and has never concluded, that the child has experienced "gender confusion" or "gender dysphoria." *Id.* at 52:4-14, 75:21-23. Although Ioriatti "discussed counseling" for the child with Plaintiff at this visit, Ioriatti made no referral after Plaintiff informed her that the child "was already in counseling." *Id.* at 45:5-8. Ioriatti did not know the name of the putative counselor and had never spoken with them. *Id.* at 50:13-22.

On December 9, 2023, Ioriatti provided a letter to the school requesting that the child's absences be excused and that the child be provided home instruction "as we continue to work with [the child] regarding mental health concerns." *Id.* at exhibit I-9; 46:5-49:17, 52:15-54:14. On January 4, 2024, Ioriatti provided a similar letter to the school, stating that the child "continues to have to be seen for mental health concerns," and making the same request that the child's absences be excused and that home instruction be provided. *Id.* at exhibit I-10; 54:20-57:21; ECF 24-3 at 3. Again, on February 1, 2024, Ioriatti provided a similar letter making the same requests, this time noting that the child "has been diagnosed with Anxiety/Depression," that the child's "symptoms are reported to be exacerbated due to emotional stress and strain in the educational setting," and that the child is "under

8

the care of a counselor." *Id.* at exhibit I-11; 57:25-58:19, 70:16-71:10; ECF 24-8 at 3.

Despite providing these three letters to the school at the beginning of December, January, and February, respectively, Ioriatti never saw or spoke with the child at all during this three-month period. *Id.* at 53:15-21, 54:4-14, 56:5-25, 58:11-14. Nor did Ioriatti communicate with any other health care provider that had treated the child. *Id.* at 50:13-22. Instead, she provided these letters to the school merely because Plaintiff had called her and requested them, and she based their contents purely on information provided by Plaintiff. *Id.* at 57:1-21, 58:15-19, 70:5-71:10. As Ioriatti put it: "[t]he father called and said that [the child] missed a lot of school and they needed the doctor's note to say that [the child] was having difficulty with mental health and needed to be provided home instruction." *Id.* at 70:5-15; *see id.* at 46:5-49:17, 52:15-54:16 (confirming same as to the December 9, 2023 letter, and clarifying that the phrase "mental health concerns" referred to the child's anxiety); 54:20-57:21 (confirming same as to the January 4, 2024 letter, and clarifying that the phrase "as we continue to work with her" was based on Plaintiff's representation that the child was treating with a "psychologist"); 57:25-58:19, 70:16-71:10 (same for February 1, 2024 letter).

On February 27, 2024, Plaintiff brought the child to Hunterdon Pediatric Associates for another office visit, the first since Plaintiff had withdrawn the child

from school three months prior. *Id.* at exhibit I-15; 77:11-79:5. The child told Ioriatti that "home instruction" was "going well" and reported feeling "less anxious when [the child] is not in the school building." *Id.* Ioriatti noted that the child was "receiving counseling." *Id.*

That same day, Ioriatti wrote a letter to the school that was essentially identical to the letter that she had provided on February 1, 2024. *Id.* at exhibit I-12. This letter again asserted that the child's anxiety and depression was "exacerbated due to emotional stress and strain in the educational setting"—even though the child had not been in school since December 1, 2023, *id.* at exhibit I-12; 58:20-59:1—and "continu[ed] to request home instructions [sic]." *Id.* at exhibit I-12; 59:11-24. On March 28, 2024, Ioriatti provided an essentially identical letter. *Id.* at exhibit I-13; 60:23-61:18. Ioriatti's assertions in these letters that the child's anxiety and depression were "exacerbated" in school were "all based on information [Ioriatti] received from" *Id.* at 59:21-60:19, 61:6-13.

On April 24, 2024, Ioriatti again provided a similar letter to the school but this time with slightly different language, now asserting that the child's anxiety and depression had "significantly increased *with social transitioning* in the school setting" and adding that it was "in [the child's] best interested [sic] to continue home instruction setting [sic] until this is resolved." *Id.* at exhibit I-14; 61:22-62:5; ECF 49-3 at 2. Ioriatti provided this letter because Plaintiff called and requested it, Ex. B

(Tr. at 62:15-17, 71:18-21), and she based its contents entirely on information she receieved from Plaintiff over the phone, *id.* at 62:6-8, 71:11-17, 73:10-24. At that time, Ioriatti had not seen or spoken with the child in two months, and the child had not been in school for five months. *Id.* at 62:9-12, 73:25-74:3. And Ioriatti had not discussed the topic of gender with the child since November 28, 2023, when the child had reported feeling "very comfortable using male pronouns and a male name." *Id.* at exhibit I-8; 44:13-16. Ioriatti did not recall the child ever saying anything to her that contradicted the child's report on November 28th. *Id.* at 74:6-19.

In response to these factual developments, State Defendants now supplement their opposition to Plaintiff's motion for a preliminary injunction. *See* ECF 45; ECF 79.

## ARGUMENT

In their opposition brief, State Defendants explained why this Court should deny Plaintiff's application for a preliminary injunction just as it properly denied Plaintiff's application for a TRO. *See* ECF 45. State Defendants explained that 20 U.S.C. § 3401 confers no enforceable federal right, *id.* at 23-26; that Plaintiff has no substantive due process right to force a school to disregard his child's affirmatively expressed gender identity, *id.* at 27-35; and that even if any right of Plaintiff's were implicated, a school policy of respecting a student's affirmatively expressed gender identity would survive any level of scrutiny because it is narrowly tailored to the

State's compelling interest in protecting the safety and wellbeing of their students at school, *id.* at 35-42. State Defendants also explained that because Plaintiff already knows that his child has expressed a male gender identity at school, he lacks standing to seek an injunction compelling schools to notify parents when a student expresses a different gender identity at school, nor does he have a substantive due process right entitling him to this relief. *Id.* at 42-45. For all these reasons, Plaintiff's claims lack merit. State Defendants added that a preliminary injunction is improper because the equities overwhelmingly favor maintenance of the status quo. *Id.* at 45-49.

The subsequent and limited discovery has underscored two important points. *First*, discovery has sharply undermined Plaintiff's claims that the District's decision to respect the child's affirmatively expressed gender had mentally and emotionally harmed his child, and that Plaintiff had withdrawn his child from school based on medical advice. *See, e.g.* ECF 49 at 9-10; ECF 49-2 ¶ 3. Although Plaintiff attached to his reply brief a declaration from his child's putative counselor, ECF 49-1, and a letter from his child's nurse practitioner, ECF 49-3, discovery has made clear that the putative counselor is unqualified and the letter from the nurse practitioner is based purely on Plaintiff's opinion rather than necessary first-hand assessments of the child. In short, Plaintiff's efforts to recast his personal opinion as that of medical professionals falls flat. The exhibits attached to Plaintiff's reply therefore fail to

bolster Plaintiff's claim that irreparable harm will follow if preliminary relief is denied.

*Second*, if Plaintiff and his witnesses *were* credited, it would give rise to an independent ground to deny a preliminary injunction: lack of jurisdiction for want of a live controversy. The State Defendants and the District Defendants simply wish to respect the child's affirmatively expressed gender identity, and none of the challenged policies requires any more. Some statements made by Plaintiff and his witnesses suggest that the child may no longer wish to use a male name and pronouns at school. If that is so, then this case is moot, for the child's and Plaintiff's views would be aligned, and the school would address the child with a female name and pronouns.

## I.   PLAINTIFF'S SUBMISSIONS ON REPLY PROVIDE NO BASIS TO ALTER THE COURT'S DENIAL OF INJUNCTIVE RELIEF.

As this Court properly found in denying Plaintiff's request for a TRO, Plaintiff has failed to establish his entitlement to preliminary injunctive relief because he has neither shown that his legal claims are likely to succeed, *see* ECF 37 at 9-25, nor that irreparable harm will result in the absence of preliminary injunctive relief, *see* ECF 37 at 25-26. Nothing in the amended complaint or Plaintiff's renewed application for a preliminary injunction has shown otherwise, as State Defendants explained in their opposition brief, *see generally* ECF 45. Nor does Plaintiff's reply or the documents attached thereto move the needle. Although Plaintiff claims that

those documents show that medical professionals are of the opinion that Defendants' conduct has harmed his child, *see* ECF 49 at 15; ECF 49-2 ¶ 3, they do no such thing. Pirozzoli is not a medical professional at all, and Ioriatti's letter is based on nothing other than Plaintiff's opinions that were dictated to her over the phone. Neither document provides any basis for this Court to stray from its prior reasoned denial of injunctive relief.

Preliminarily, binding Third Circuit precedent post-dating the submission of State Defendants' opposition brief, ECF 45, underscores the demanding standard for establishing an entitlement to such relief—and how far Plaintiff is from satisfying that stringent standard. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024) (*DSSA*). As the Third Circuit made plain, "a preliminary injunction is an extraordinary remedy that should be granted only in limited circumstances"—that is, when "the plaintiff's right is clear, his impending injury is great, and only an injunction can avert that injury." *Id.* at 200 (quotation omitted) (cleaned up); *see also id.* at 206 ("We trust district courts to reserve this drastic remedy for drastic circumstances."). The critical inquiry is whether failing to grant a preliminary injunction would leave the court "unable to decide the case or give … meaningful relief," *id.* at 205—*i.e.*, whether "failing to grant interim relief would … moot th[e] case," *id.* at 203. Absent such a concern about "[c]ase preservation," *id.* at 201, neither a likelihood of success on the merits

nor a risk of irreparable harm automatically requires a preliminary injunction, *id.* at 200, 202. Further, the Third Circuit made clear that, outside of the First Amendment context, there is no presumption that constitutional harm is irreparable. *Id.* at 203.

*DSSA* only further confirms this Court's prior recognition that Plaintiff had failed to establish his entitlement to interim relief. Plaintiff cannot show that preliminary relief is necessary to preserve this Court's ability to grant meaningful relief because he seeks a departure from, rather than maintenance of, the pre-litigation status quo—as the challenged policies are each years-old. *See id.* at 200 (explaining purpose of preliminary injunction is "primarily to keep things as they were," "to preserve the status quo during the pendency of litigation" (quotation omitted)); *see also* ECF 45 at 13-17 (State Defendants describing how NJLAD has protected against transgender discrimination since 2006 and the challenged Department guidance was issued in 2018); ECF 45 at 49 (State Defendants explaining harm that would flow from alteration of this status quo). And there is no reason to think that allowing the challenged policies to remain in effect during the pendency of this litigation will somehow moot Plaintiff's challenge.

Moreover, Plaintiff has failed to show irreparable harm will follow absent a preliminary injunction (an independent basis to deny the motion, *see DSSA*, 108 F.4th at 204). This was true at the TRO stage, as this Court soundly determined. *See* ECF 37 at 25-26. It was true when Plaintiff amended his complaint and renewed his

application for a preliminary injunction, as State Defendants already explained. *See* ECF 45 at 46-48. And it remains true now, notwithstanding Plaintiff's attempt in his reply brief to claim that medical professionals believe that the challenged policies have mentally and emotionally harmed his child.

Start with the declaration from Pirozzoli. ECF 49-1. Although Plaintiff attempts to cast Pirozzoli's opinions as those of a mental health professional and to use them to claim that he has withdrawn his child from school on the basis of medical advice, Pirozzoli is not a mental health professional and is not qualified by education, training, or experience to give medical advice or opine on proper care for transgender students. Contrary to the sworn statements in her declaration, ECF 49-1 ¶¶ 1, 3, Pirozzoli testified in her deposition that she is not a State-licensed counselor , Ex. A (Tr. at 12:12-18),[2] that she is not qualified to diagnose mental health conditions, *id.* at 13:19, 15:3-8, 23:13-14, 33:17-23, and that the child is in fact the first transgender person to whom she has provided (unlicensed) counseling services. *Id.* at 29:15-20, 30:1-6, 62:11-20).

---

[2] State Defendants note that Plaintiff's counsel sought to correct and clarify Pirozzoli's declaration about one month after it was filed by pointing out that she is a "Licensed Clinical *Pastoral* Counselor," (referring to her license from the private National Christian Counselors Association, *see* Ex. A at exhibit D-3), rather than a "Licensed Clinical *Professional* Counselor." ECF 56 at 3. Counsel ascribed this mistake in Pirozzoli's declaration to being a "scrivener's error." *Id.*

And in addition to lacking the qualifications and experience to justify the bold statements in her declaration, Pirozzoli also fails to back up those statements with any citations or sources, much less reference to any scientific or medical evidence. *See* ECF 49-1. Nor was she able to provide any scientific or medical support for those statements during her deposition testimony. Ex. A (Tr. at 53:2-9, 54:22-25, 57:21-25, 62:7-10). In short, discovery has revealed that Pirozzoli is not qualified to provide a professional opinion about the mental health of the child or how to support and care for transgender adolescents generally. This Court should thus disregard her declaration as wholly unreliable.

Ioriatti's April 24, 2024 letter, ECF 49-3, fares no better. While Plaintiff cites this letter to support his claim that a nurse practitioner agrees his child must be kept home from school based on her assessment that the school's decision to respect the students' gender identity was harming the child, ECF 49-2 ¶ 3; *see also* ECF 63-1 ¶¶ 8-9, the sworn testimony from Ioriatti's deposition contradicts this narrative. Ioriatti testified that she wrote the April 24th letter, as well as each of the letters she provided to the school, because Plaintiff called her, requested the letter, and told her what to include in it. *Supra* at 8-12. In other words, discovery has disproven the claim that Plaintiff kept his child home from school because Ioriatti advised him to based on a medical opinion derived from examining or consulting with his child. Rather, Ioriatti has repeatedly told the school that the child needs home instruction

merely because Plaintiff himself has called her office and asked her to make that request—and even though she had not met with the student for months before sending most letters.

Further, Ioriatti disclaimed having ever personally concluded that the child was suffering from gender confusion or gender dysphoria, that the child was insufficiently mature to identify the child's own gender, or that the child should not attend school unless the school ceased respecting the child's affirmatively expressed gender identity. Ex. B. (Tr. at 42:18-43:15, 45:22-46:1, 52:4-14, 75:21-23). To the contrary, Ioriatti identified only one personal interaction with the child in which the child's gender was discussed, and Ioriatti noted that the child then reported feeling "very comfortable using male pronouns and a male name." *Id.* at 40:1-6, 44:13-16, 74:6-12. Accordingly, this Court should discredit Ioriatti's April 24, 2024 letter as nothing more than Plaintiff's opinion provided in the form of a medical note—an opinion contradicted by the only conversation that Ioriatti personally had with the child concerning gender identity.

In sum, the documents that Plaintiff submitted with his reply fail to credibly substantiate his assertions that the challenged policies have harmed his child—let alone that they continue to cause irreparable harm. That leaves Plaintiff's unadorned assertion that his "fundamental constitutional rights have and continue to be violated by defendants" and that this violation amounts to irreparable injury. ECF 49 at 18.

This claim fails on the merits, *see* ECF 45 at 27-45, but even if it did not, a bare constitutional violation without more does not establish the sort of irreparable harm necessary to justify preliminary injunctive relief. *See DSSA*, 108 F.4th at 203. And the limited discovery to date shows Plaintiff has offered nothing further.

## II.   A PRELIMINARY INJUNCTION COULD NOT ISSUE WITHOUT THIS COURT FIRST ASSURING THAT THIS CASE IS NOT MOOT.

Alternatively, the limited discovery permitted by the Court here has exposed the possibility that this case may be moot because Pirozzoli has testified that the child no longer desires to be treated as a boy, Ex. A (Tr. at 63:20-25). If that is in fact the case, the District would readily respect the child's wishes, *see* ECF 1-1 at 2; ECF 62-1 ¶¶ 17-19, 37; ECF 62-2 ¶¶ 6, 9-10, and there would no longer be any live controversy. Thus, if the Court finds that the child no longer desires to be treated as a boy at school, or is even uncertain on this point, it should deny a preliminary injunction because Plaintiff's ultimate likelihood of success in this litigation would be far from "clear" given the mootness concern. *See DSSA*, 108 F.4th at 200.

This Court has a duty to determine whether it has Article III jurisdiction. *See Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019). "The limited authority vested in federal courts to decide cases and controversies means that they may no[t] … pronounce on past actions that do not have any 'continuing effect' in the world." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quotation omitted). This limit "ensures that the Federal Judiciary confines itself to its constitutionally limited role

of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018) (quotation omitted). Accordingly, if "events in the world overtake those in the courtroom" and give the complaining party "all the relief he might have won in" the case, then the complaining party lacks a stake in the outcome of the litigation, and "a federal court must dismiss the case as moot." *Fikre*, 601 U.S. at 240.

If the child no longer wishes to be addressed at school with a male name and pronouns, then Plaintiff will have all the relief he seeks without any need for a court order. Plaintiff seeks an injunction permanently restraining the Attorney General from enforcing the NJLAD, and the Acting Commissioner of the Department from "providing guidance to school districts," to the extent either would result in a school "social[ly] transitioning" a student absent informed consent from the student's parent or legal guardian. ECF 40 ¶¶ 77(H)- (I), 83(E)-(F), 85(D)-(E), 102(D)-(E), 117(E)-(F). But such an injunction would have no personal impact on Plaintiff if his child no longer affirmatively desires to be treated as a boy by school officials. All along, Plaintiff has objected to the school using a male name and pronouns to address his child. *See, e.g.*, ECF 40 at 42, 46. But as the school made clear, it has only done so at the child's request, ECF 62-1 ¶¶ 7-18, and it would immediately cease to do so if the child requested as much, ECF 62-1 ¶ 19.

Sworn statements from Plaintiff and Pirozzoli introduce uncertainty regarding the student's gender identity. Most directly, Pirozzoli testified in her deposition that the child has revealed to her that the child no longer wishes to use a male name or pronouns at school. Ex. B (Tr. at 63:20-25). And Plaintiff has repeatedly asserted that the school's use of a male name and pronouns with the child has caused the child to experience both mental and emotional distress, *see, e.g.*, ECF 40 ¶ 60; ECF 49-2 ¶ 3. It is difficult to reconcile Plaintiff's assertions with his child's continuing identification as a boy and affirmative request to use a male name and pronouns. Accordingly, if the Court is inclined to credit these statements, then the Court should deny a preliminary injunction based on the attendant mootness concern.[3] For if the child does not wish to be addressed as a boy, there is no controversy for this Court to resolve. *See Fikre*, 601 U.S. at 240.

## CONCLUSION

This Court should deny the motion for a preliminary injunction.

_____

[3] In addition to Pirozzoli's direct statement that the child no longer wishes to be addressed as a boy and of Plaintiff's claim that addressing the child as a boy has distressed the child, a hearing or limited jurisdictional discovery may be necessary moving forward to gain clarity on whether the child still wishes to be addressed as a boy at school or whether this case should be dismissed as moot. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations" on a motion to dismiss) (internal citation and quotation marks omitted).

Respectfully Submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:   /s/ Matthew Lynch
Matthew Lynch
Deputy Attorney General

Date: August 30, 2024