# Attachment 1

**To Plaintiff's Letter Brief**

## APPEAL NO. 24-3278
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

CHRISTIN HEAPS,
*Plaintiff-Appellant,*

v.

DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION;
et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:24-cv-00107

## AFFIDAVIT OF CHRISTIN HEAPS

STATE OF NEW JERSEY )
        ) ss:
COUNTY OF HUNTERDON)

CHRISTIN HEAPS, being duly sworn, upon my oath deposes and says:

1. I am the plaintiff-appellant in this matter.

2. My daughter and I have long resided in and continue to reside in the Delaware Valley school district.

3. Until a fire destroyed our home on January 24, 2025, we resided at ███████████████ Pittstown, New Jersey 08867. We lost nearly all of our possessions in the fire. Several of our family's pets died in the fire. When the fire broke out, my daughter and I were at home with my long-term partner, Nan Marie Hasson, who required medical

attention for smoke inhalation. Soon after the fire, we began staying with others while looking for housing.

4. We later found a rental house for our family that also had enough property for our surviving animals. This house is located at ███ ████████████, Stockton, New Jersey 08559. I began to live there with Ms. Hasson and my daughter on April 1, 2025. Attached as Exhibit A to this Affidavit is a current Residential Lease Agreement identifying me and Ms. Hasson as tenants on this property. Attached as Exhibit B to this Affidavit are documents dated within the past three months showing that the electricity, propane, and internet at this property are registered in my name and paid by me.

5. In June 2025, Ms. Hasson purchased a property in Florida. Eventually, I intend to relocate my family to Florida. But I do not intend to do that during this school year.

6. For now, I am currently renting and residing at the Stockton property with my daughter and Ms. Hasson, and I intend to continue doing so.

7. Since Ms. Hasson purchased the Florida property, I have made multiple trips to Florida to look for work.

8. While school was out this summer, my family took a vacation to Florida. During this trip, we stayed at the Florida property. The social-media posts Delaware Valley's counsel filed with the Court on September 4, 2025, were related to that vacation.

2

9. Ms. Hasson and my daughter returned to the Stockton property at the end of that vacation, over a week before the school year was set to begin. Attached as Exhibit C to this Affidavit is a Facebook post from August 15, 2025, in which Ms. Hasson says: "Home again home again jiggety jig. Vacation has officially ended. … Now I have business and surgeries to attend to."

10. My daughter, Ms. Hasson, and I may make additional trips to Florida during the school year. But we will continue to reside at the Stockton property, which is in the Delaware Valley school district.

11. After the fire, Ms. Hasson's son began living with his grandmother at a different address in the Delaware Valley school district and continues to live there.

12. Additionally, we are in the process of conveying the property that contained the home destroyed by the fire to a family friend who is assuming the mortgage on that property. As of the date I executed this Affidavit, this transaction has not yet closed.

13. In past school years, Delaware Valley has not required me to submit proof of residency before enrolling my daughter.

14. On September 5, 2025, Delaware Valley contacted me and my daughter to set up her home-instruction program with Educere for the 2025–2026 school year, the same program she used for the 2024–2025 school year.

3

15.    Because my daughter is residing in the Delaware Valley school district, she is participating in Delaware Valley's home-instruction program this school year.

I hereby certify that the foregoing statements are true, and I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
Christin Heaps

---

The above-named affiant appeared before me, a licensed attorney in the State of New Jersey, on the 9th day of September, 2025, and I made known to him the contents of the above affidavit which was then sworn and subscribed to by said affiant before me on this date.

Ronald A. Berutti
N.J. Bar No. 023361992
An Attorney-at-Law of New Jersey

4

# EXHIBIT A

## To Affidavit of Christin Heaps

## RESIDENTIAL LEASE AGREEMENT

THIS LEASE (the "Lease") dated this 1st day of April, 2025.

BETWEEN:

David Kish

(the "Landlord")

- AND-

Chris Heaps and Nan Marie Hasson

(collectively and individually the "Tenant")

(individually the "Party" and collectively the "Parties")

IN CONSIDERATION OF the Landlord leasing certain premises to the Tenant and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties agree as follows:

## Leased Property

1. The Landlord agrees to rent to the Tenant the house, municipally described as ███████████ ███ Stockton,NJ 08559, (the "Property"), for use as residential premises only.

2. Subject to the provisions of this Lease, apart from the Tenant, no other persons will live in the Property without the prior written permission of the Landlord, except for: The 2 children

3. No guests of the Tenants may occupy the Property for longer than one week without the prior written consent of the Landlord

4. The Tenant may keep pets in or about the Property. The Landlord may revoke this privilege upon thirty (30) days' notice.

5. Subject to the provisions of this Lease, the Tenant is entitled to the use of parking on or about the Property.

6. The Tenant and members of the Tenant's household will not smoke in the house nor permit any guests or visitors to smoke in the house.

7. The Tenant and members of the Tenant's household will not vape in the house nor permit any

guests or visitors to vape in the house.

## Term

8.  The term of the Lease commences at 12:00 noon on April 1, 2025and ends at 12:00 noon on March 31, 2026.

9.  Notwithstanding that the term of this Lease commences on April 1, 2025, the Tenant is entitled to possession of the Property at 12:00 noon on April 1,2025.

10. Any notice to terminate this tenancy must comply with the applicable legislation of the State of New Jersey (the "Act").

## Rent

11. Subject to the provisions of this Lease, the rent for the Property is $3,450.00 per month (the "Rent").

12. The Tenant will pay the Rent monthly, on or before the first (1st) day of each and every month of the term of this Lease, to the Landlord at ███████████ Morrisville, PA 19067 or at such other place as the Landlord may later designate.

13. The Landlord may increase the Rent for the Property upon providing to the Tenant such notice as required by the Act.

14. The Tenant will be charged an additional amount of 5 % of the Rent for any Rent that is received after the greater of 10 days after the due date and any mandatory grace period required under the Act, if any.

## Security Deposit

15. On execution of this Lease, the Tenant will pay the Landlord a security deposit of $3,450.00 (the "Security Deposit").

16. The Landlord will hold the Security Deposit at an interest bearing account solely devoted to security deposits at William Penn Bank located at 400 W. Trenton ave, Morrisville, PA 19067.

17. During the term of this Lease or after its termination, the Landlord may charge the Tenant or make deductions from the Security Deposit for any or all of the following:
    a.  repair of walls due to plugs, large nails or any unreasonable number of holes in the walls including the repainting of such damaged walls;
    b.  repainting required to repair the results of any other improper use or excessive damage by the Tenant;
    c.  unplugging toilets, sinks and drains;

d. replacing damaged or missing doors, windows, screens, mirrors or light fixtures;

e. repairing cuts, burns, or water damage to linoleum, rugs, and other areas;

f. any other repairs or cleaning due to any damage beyond normal wear and tear caused or permitted by the Tenant or by any person whom the Tenant is responsible for;

g. the cost of extermination where the Tenant or the Tenant's guests have brought or allowed insects into the Property or building;

h. repairs and replacement required where windows are left open which have caused plumbing to freeze, or rain or water damage to floors or walls;

i. replacement of locks and/or lost keys to the Property and any administrative fees associated with the replacement as a result of the Tenant's misplacement of the keys; and

j. any other purpose allowed under this Lease or the Act.

For the purpose of this clause, the Landlord may charge the Tenant for professional cleaning and repairs if the Tenant has not made alternate arrangements with the Landlord.

18. The Tenant may not use the Security Deposit as payment for the Rent.

19. The Landlord will return the Security Deposit at the end of this tenancy, less such deductions as provided in this Lease but no deduction will be made for damage due to reasonable wear and tear nor for any deduction prohibited by the Act.

20. Within the time period required by the Act and after the termination of this tenancy, the Landlord will deliver or mail the Security Deposit less any proper deductions or with further demand for payment to: _____ , or at such other place as the Tenant may advise.

## Inspections

21. The Parties will complete, sign and date an inspection report at the beginning and at the end of this tenancy.

22. At all reasonable times during the term of this Lease and any renewal of this Lease, the Landlord and its agents may enter the Property to make inspections or repairs, or to show the Property to prospective tenants or purchasers in compliance with the Act.

## Renewal of Lease

23. Upon giving written notice no later than 60 days before the expiration of the term of this Lease, the Tenant may renew this Lease for an additional term. All terms of the renewed lease will be the same except for this renewal clause and the amount of the rent. If the Parties cannot agree as

to the amount of the Rent, the amount of the Rent will be determined by mediation.

## Tenant Improvements

24. The Tenant will obtain written permission from the Landlord before doing any of the following:

   a. applying adhesive materials, or inserting nails or hooks in walls or ceilings other than two small picture hooks per wall;

   b. painting, wallpapering, redecorating or in any way significantly altering the appearance of the Property;

   c. removing or adding walls, or performing any structural alterations;

   d. installing a waterbed(s);

   e. changing the amount of heat or power normally used on the Property as well as installing additional electrical wiring or heating units;

   f. placing or exposing or allowing to be placed or exposed anywhere inside or outside the Property any placard, notice or sign for advertising or any other purpose; or

   g. affixing to or erecting upon or near the Property any radio or TV antenna or tower.

## Utilities and Other Charges

25. The Tenant is responsible for the payment of all utilities in relation to the Property.

## Insurance

26. The Tenant is hereby advised and understands that the personal property of the Tenant is not insured by the Landlord for either damage or loss, and the Landlord assumes no liability for any such loss.

27. The Tenant is not responsible for insuring the Landlord's contents and furnishings in or about the Property for either damage or loss, and the Tenant assumes no liability for any such loss.

28. The Tenant is responsible for insuring the Property for damage or loss to the structure, mechanical or improvements to the building of the Property for the benefit of the Parties. Such insurance should include such risks as fire, theft, vandalism, flood and disaster.

29. The Tenant is responsible for insuring the Property for liability insurance for the benefit of the Parties.

30. The Tenant will provide proof of such insurance to the Landlord upon the issuance or renewal of such insurance.

## Attorney Fees

31.  In the event that any action is filed in relation to this Lease, the unsuccessful Party in the action will pay to the successful Party, in addition to all the sums that either Party may be called on to pay, a reasonable sum for the successful Party's attorney fees.

## Governing Law

32.  This Lease will be construed in accordance with and exclusively governed by the laws of the State of New Jersey.

## Severability

33.  If there is a conflict between any provision of this Lease and the Act, the Act will prevail and such provisions of the Lease will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Lease.

34.  The invalidity or unenforceability of any provisions of this Lease will not affect the validity or enforceability of any other provision of this Lease. Such other provisions remain in full force and effect.

## Amendment of Lease

35.  This Lease may only be amended or modified by a written document executed by the Parties.

## Assignment and Subletting

36.  The Tenant will not assign this Lease, or sublet or grant any concession or license to use the Property or any part of the Property. Any assignment, subletting, concession, or license, whether by operation of law or otherwise, will be void and will, at Landlord's option, terminate this Lease.

## Additional Clauses

37.  Tenant is responsible for maintaining the water softening system with solar salt to protect the heating system, water heater, and fixtures.

38.  Tenant will not do any digging operate a vehicle on or around the septic field area of the property

39.  Pets and livestock are permitted to be responsibly kept on the premises. Tenant agrees to not let them become a nuisance to the neighbors and to clean up after them and repair any damage they cause promptly.

40.  Tenant will monitor the supplied heating device under the front porch during times of freezing

temperatures to keep pipes from freezing. A backup device is supplied in case the current one fails. A generator and extension cords are provided to run the device in case of a power failure, to avoid frozen pipes. Tenant is responsible for damage to pipes or the premises due to freezing.

41.  Tenants over 18 years of age will have use of the Kubotas to mow and maintain the property only. Fluids and tires must be checked prior to using and any issues reported to the landlord immediately.

42.  Propane tanks will be filled when tenant moves in and a receipt showing they are full will be required when moving out.

43.  Tenant shall be concious of any running water that may indicate a leak. The sound of the well pump turning on and off when no water is being used indicates a leak in the system. Tenant shall inform the landlord immediately if this happens, whether they are seeing any water or not. Continuous running of the well pump due to a leak or a faucet or toilet running will burn out the pump. Tenant will be responsible for the cost of replacing the pump if it burns out due to running continuously.

## Damage to Property

44.  If the Property should be damaged other than by the Tenant's negligence or willful act or that of the Tenant's employee, family, agent, or visitor and the Landlord decides not to rebuild or repair the Property, the Landlord may end this Lease by giving appropriate notice.

## Maintenance

45.  The Tenant will, at its sole expense, keep and maintain the Property and appurtenances in good and sanitary condition and repair during the term of this Lease and any renewal of this Lease.

46.  Major maintenance and repair of the Property involving anticipated or actual costs in excess of $100.00 per incident not due to the Tenant's misuse, waste, or neglect or that of the Tenant's employee, family, agent, or visitor, will be the responsibility of the Landlord or the Landlord's assigns.

47.  Where the Property has its own sidewalk, entrance, driveway or parking space which is for the exclusive use of the Tenant and its guests, the Tenant will keep the sidewalk, entrance, driveway or parking space clean, tidy and free of objectionable material including dirt, debris, snow and ice.

48.  Where the Property has its own garden or grass area which is for the exclusive use of the Tenant and its guests, the Tenant will mow and weedwack as needed.

## Care and Use of Property

49. The Tenant will promptly notify the Landlord of any damage, or of any situation that may significantly interfere with the normal use of the Property or to any furnishings supplied by the Landlord.

50. The Tenant will not engage in any illegal trade or activity on or about the Property.

51. The Parties will comply with standards of health, sanitation, fire, housing and safety as required by law.

52. The Parties will use reasonable efforts to maintain the Property in such a condition as to prevent the accumulation of moisture and the growth of mold. The Tenant will promptly notify the Landlord in writing of any moisture accumulation that occurs or of any visible evidence of mold discovered by the Tenant. The Landlord will promptly respond to any such written notices from the Tenant.

53. If the Tenant is absent from the Property and the Property is unoccupied for a period of 4 consecutive days or longer, the Tenant will arrange for regular inspection by a competent person. The Landlord will be notified in advance as to the name, address and phone number of the person doing the inspections.

54. At the expiration of the term of this Lease, the Tenant will quit and surrender the Property in as good a state and condition as they were at the commencement of this Lease, reasonable use and wear and tear excepted.

## Rules and Regulations

55. The Tenant will obey all rules and regulations of the Landlord regarding the Property.

## Window Guard Notification

56. If the Property is in a multiple dwelling building where the Property is above the first floor and is occupied by a child or children 10 years of age or younger, or a child or children 10 years of age or younger are regularly present in the Property for a substantial period of time, the Tenant may require the Landlord to install and maintain approved child-protection window guards on the windows of the Property and on any windows in the public halls of the multiple dwelling building to which persons in the Property have access without having to go out of the building. Window guards do not need to be installed on windows which give access to a fire escape, which are not designed to be open, or which are on the first floor of the building, unless there are hazardous conditions that make installation of window guards necessary to protect the safety of children. The Tenant may require the Landlord to install and maintain window guards by providing the Landlord with a written request that window guards be installed. The cost of installing window guards may be passed on to the Tenant, however the charge may not exceed

**Attachment 1 to Pl.'s Letter Brief**
**Page 12 of 23**

$20 per window guard.

## Mediation

57. If any dispute relating to this Lease between the Parties is not resolved through informal discussion within 14 days from the date a dispute arises, the Parties agree to submit the issue before a mediator. The decision of the mediator will not be binding on the Parties. Any mediator must be a neutral party acceptable to both Parties. The cost of any mediations will be shared equally by the Parties.

## Address for Notice

58. For any matter relating to this tenancy, the Tenant may be contacted at the Property or through the phone number below:
    a. Name: Chris Heaps and Nan Marie Hasson
    b. Phone: 908 ███████ and 908 ████████
    c. Email: ██████████████@gmail.com

59. For any matter relating to this tenancy, whether during or after this tenancy has been terminated, the Landlord's address for notice is:
    a. Name: David Kish
    b. Address: ████████████ Morrisville, PA 19067
    c. Phone: (215) ████████
    d. Email: ██████@msn.com

## General Provisions

60. All monetary amounts stated or referred to in this Lease are based in the United States Dollar.

61. Any waiver by the Landlord of any failure by the Tenant to perform or observe the provisions of this Lease will not operate as a waiver of the Landlord's rights under this Lease in respect of any subsequent defaults, breaches or non-performance and will not defeat or affect in any way the Landlord's rights in respect of any subsequent default or breach.

62. This Lease will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each Party. All covenants are to be construed as conditions of this Lease.

63. All sums payable by the Tenant to the Landlord pursuant to any provision of this Lease will be deemed to be additional rent and will be recovered by the Landlord as rental arrears.

64. Where there is more than one Tenant executing this Lease, all Tenants are jointly and severally liable for each other's acts, omissions and liabilities pursuant to this Lease.

65. Locks may not be added or changed without the prior written agreement of both Parties, or unless the changes are made in compliance with the Act.

66. The Tenant will be charged an additional amount of $_____ for each N.S.F. check or checks returned by the Tenant's financial institution.

67. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Lease. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

68. This Lease may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

69. This Lease constitutes the entire agreement between the Parties.

70. During the last 30 days of this Lease, the Landlord or the Landlord's agents will have the privilege of displaying the usual 'For Sale' or 'For Rent' or 'Vacancy' signs on the Property.

71. Time is of the essence in this Lease.

IN WITNESS WHEREOF Chris Heaps, Nan Marie Hasson, and David Kish have affixed their signatures to this document in the 1st day of April, 2025.

Landlord

_____
David Kish

Tenant

_____
Chris Heaps

_____
Nan Marie Hasson

_____

The Tenant acknowledges receiving a duplicate copy of this Lease signed by the Tenant and the Landlord on the _____ day of _____, _____.

Tenant

_____

Chris Heaps

_____

Nan Marie Hasson

_____

©2002-2025 LawDepot.com®

64. Where there is more than one Tenant executing this Lease, all Tenants are jointly and severally liable for each other's acts, omissions and liabilities pursuant to this Lease.

65. Locks may not be added or changed without the prior written agreement of both Parties, or unless the changes are made in compliance with the Act.

66. The Tenant will be charged an additional amount of $_____ for each N.S.F. check or checks returned by the Tenant's financial institution.

67. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Lease. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

68. This Lease may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

69. This Lease constitutes the entire agreement between the Parties.

70. During the last 30 days of this Lease, the Landlord or the Landlord's agents will have the privilege of displaying the usual 'For Sale' or 'For Rent' or 'Vacancy' signs on the Property.

71. Time is of the essence in this Lease.

IN WITNESS WHEREOF Chris Heaps, Nan Marie Hasson and David kish have affixed their signatures to this document on this first day of April, 2025.

Landlord

_____

David kish

Tenant

_____

Chris Heaps

_____

Nan Marie Hasson

The Tenant acknowledges receiving a duplicate copy of this Lease signed by the Tenant and the Landlord on the ___9th___ day of ___March___, 2025.

Tenant

_____
Chris Hearn

_____
Nan Marie Hasson

©2002-2025 LawDepot.com®

# EXHIBIT B

## To Affidavit of Christin Heaps



**REGION ENERGY**

**Transaction Report**

2025-09-05 13:09

| Customer# | ████████ | | Date Type: | All Dates |
|---|---|---|---|---|
| | CHRISTIN HEAPS | | Current Balance: | $0.00 |
| | ████████████ | | | |
| | STOCKTON NJ, 08559 | | | |

| Event Date | Posting code | Description | Reference | TLS | Units | Ppu | Amount | Open Amount | *Balance |
|---|---|---|---|---|---|---|---|---|---|
| 06/23/2025 | 222 | CHECK PAYMENT - THANK YOU | 694 | | 0.00 | 0.000000 | $-208.92 | $0.00 | $0.00 |
| 05/28/2025 | 19 | PROPANE | 20112 | Tank 1 | 76.00 | 2.749000 | $208.92 | $0.00 | $208.92 |
| 05/23/2025 | 211 | CREDIT CARD PAYMENT-THANK YOU | 52325 | | 0.00 | 0.000000 | $-226.70 | $0.00 | $0.00 |
| 04/18/2025 | 222 | CHECK PAYMENT - THANK YOU | 684 | | 0.00 | 0.000000 | $-410.53 | $0.00 | $226.70 |
| 04/09/2025 | 19 | PROPANE | 1210014 | Tank 1 | 24.00 | 2.850000 | $68.40 | $0.00 | $637.23 |
| 04/09/2025 | 19 | PROPANE | 129989 | Tank 1 | 24.00 | 2.850000 | $68.40 | $0.00 | $568.83 |
| 04/13/2025 | 246 | PREMIUM/PROMOTION2 | | | 0.00 | 0.000000 | $-100.00 | $0.00 | $500.43 |
| 04/09/2025 | 141 | PROPANE SERVICE | 17610 | Service 1 | 0.00 | 0.000000 | $89.95 | $0.00 | $600.43 |
| 04/09/2025 | 19 | PROPANE | 679399 | Tank 1 | 142.10 | 2.889000 | $410.53 | $0.00 | $510.48 |
| 04/07/2025 | 141 | PROPANE SERVICE | 15049 | Service 1 | 0.00 | 0.000000 | $99.95 | $0.00 | $99.95 |
| 03/31/2025 | 69 | SECURITY DEPOSIT | 0 | | 0.00 | 0.000000 | $546.00 | $0.00 | $0.00 |
| 04/01/2025 | 69 | SECURITY DEPOSIT | 0 | | 0.00 | 0.000000 | $-546.00 | $0.00 | $-546.00 |
| 04/01/2025 | 69 | SECURITY DEPOSIT | 0 | | 0.00 | 0.000000 | $546.00 | $0.00 | $0.00 |
| 03/31/2025 | 211 | CREDIT CARD PAYMENT-THANK YOU | 33125 | | 0.00 | 0.000000 | $-546.00 | $0.00 | $-546.00 |



Welcome, **Chris Heaps**!
My Account #: ▮▮▮▮▮▮▮▮
My Email Address: ▮▮▮▮▮▮▮@gmail.com

logout

### My Account Home
My Statements
  September 2025
  **August 2025**
  **July 2025**
  **June 2025**
  **May 2025**
**My Recent Activity**
**Auto Bill Pay**
**Pay My Bill**
**System Status**
**My Services**
**Reauthorize Equipment**
**Update Contact Info**
**Change Password**
**Paperless Billing**
**Disable Online Ordering**
**Disenroll**

Account: ▮▮▮▮▮▮
CHRIS HEAPS
▮▮▮▮▮▮▮
STOCKTON NJ 08559-1321

Billing Address:
CHRIS HEAPS
▮▮▮▮▮▮▮
STOCKTON NJ 08559-1321

Billed from: 09/01/2025
Billed to: 09/30/2025
Due Date: Upon Receipt

save/print

Payment to:
P.O. Box 65123
Baltimore, MD 21264-5123
Toll Free: (800) 225-9102

#### Service Summary

| Date | Description | Amount |
|---|---|---|
| 08/01 | PREVIOUS BALANCE | 203.50 |
| 08/06 | PAYMENT (THANK YOU) | -126.01 CR |
| 09/01 | NETWORK ACCESS FEE | 10.00 |
| 09/01 | MODEM | 8.95 |
| 09/01 | INTERNET POWERED BY PENTELEDATA | 57.95 |
| 09/01 | SALES TAX | 0.59 |
| 09/02 | ** MONTHLY DUE ** | 154.98 |

#### Please Note...

**Important Customer Information**

#### PAST DUE REMINDER

OUR RECORDS SHOW $77.49 OF YOUR PREVIOUS
BALANCE IS PAST DUE. YOUR SERVICES MAY BE SHUT
DOWN AND ACCOUNT DISCONNECTED UNLESS
PAYMENT IS RECEIVED BY YOUR DUE DATE. ALL
APPLICABLE RECONNECTION FEES WILL BE CHARGED
WHEN SERVICE IS REACTIVATED OR RECONNECTED.

| Account Summary: | Previous Balance | | Payments | | Current Charges | | Credits | | Tax | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|
| = | 203.50 | - | 126.01 | + | 76.90 | - | 0.00 | + | 0.59 | = | 154.98 |

# EXHIBIT C

## To Affidavit of Christin Heaps



Posts    About    More ▾

Nan Marie Hutchinson Hasson is with Holly Ann Borel and 2 others.

Aug 15 · 👥

Home again home again jiggity jig. Vacation has officially ended. 😩
Now I have business and surgeries to attend to. Looking forward to next year.
Gorgeous sunsets in Virginia on the way back. A beautiful sight to behold for sure.



+10

😊❤️ You, Becky Burns + 27        3 comments