**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTIN HEAPS,<br><br>      Plaintiff,<br><br>v.<br><br>SCOTT McKINNEY, individually and in his official capacity as Superintendent of School of the DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, ASHLEY MIRANDA, individually and in her official capacity as school counselor, JENNIFER DAVENPORT, in her official capacity as Attorney General of the State of New Jersey; LILY LAUX, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>      Defendants. | Civil No. 3:24-CV-00107 (GC) (JBD)<br><br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

The plaintiff Christin Heaps ("Mr. Heaps"), by his attorneys Murray-Nolan Berutti LLC, with knowledge as to his own acts, and on information and belief as to all others, as and for his Second Amended Verified Complaint alleges as follows:

**OVERVIEW**

1. This matter arises out of the actions taken by Delaware Valley Regional High School ("DVRHS") school counsellor Ashley Miranda ("Miranda"), under the auspices of the Delaware Valley Regional High School Board of Education ("Board") and Superintendent Scott McKinney ("McKinney") (collectively, together with John Does 1-10, the "District Defendants"), to socially transition Mr. Heaps's then 13 year old minor daughter, Jane Doe ("Jane"), from female to male. In so doing, the District Defendants purposely secreted Jane's in-school social transition from Mr. Heaps in violation of his rights under the United States and New Jersey constitutions.

2. After eventually learning from a third party that the District Defendants were

1

transitioning Jane, Mr. Heaps immediately and repeatedly objected to such acts and informed the District Defendants that such social transitioning was interfering with medical and therapeutic care under which his daughter was treating and demanded that such social transitioning be stopped.

3. As a matter of long-established United States constitutional law, parents--not the State--have primary authority with respect to the upbringing and education of children. *Mirabelli v. Bonta*, 2026 U.S. LEXIS 1192, *6

4. As a matter of long-established constitutional law, the United States Constitution protects the parental right not to be shut out by the State from participation in decisions regarding their children's mental health. *Id.*

5. Despite the existence of long-established constitutional law and Mr. Heaps's constitutionally protected objections to the ongoing social transitioning of Jane, the District Defendants insisted that Jane would continue to be socially transitioned regardless of Mr. Heaps's objections even after Mr. Heaps provided an opinion from Jane's treating therapist that such social transitioning was causing her to suffer with depression and anxiety, and otherwise was interfering with the therapy that pre-existed Jane's social transitioning in school.

6. The New Jersey Attorney General ("NJAG") has taken the legal position that if requested by a student, school districts are required to hide social transitioning from parents under the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-1 *et. seq.*, which provides certain anti-discrimination protections for transgender individuals.

7. The New Jersey Department of Education ("NJDOE") likewise published guidance to New Jersey public schools encouraging them to violate long-established constitutional rights of parents by taking a "student-centered approach" to students who believe themselves to be transgender, which declares, "school district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name,

chosen pronoun use, and parental communications." (The "Guidance")

8.      Such positions by the NJAG and NJDOE (together the "State Defendants") are legally novel and have no foundation whatsoever in historical precedent, but rather, have been taken for purely political reasons designed to advance social engineering goals, politicize school boards, and build voting coalitions regardless of the violations to long-established constitutionally protected rights of objecting parents that are being trampled by such positions.

9.      As a collateral consequence of defendants' unconstitutional actions, Mr. Heaps felt compelled to withdraw Jane from in-person classes for the better part of two full school years, thus, depriving Mr. Heaps of the state constitutional right to have his daughter receive a thorough and efficient public education.

10.     It became very clear within the local community that Mr. Heaps' daughter was pulled out of school due to the District Defendants' unconstitutional actions. Jane's transitioning became a subject of community gossip both about Jane and Mr. Heaps, and it harmed a business Mr.. Heaps with which Mr. Heaps was involved, as negative online reviews began to pour in from the members of the transgender after Mr. Heaps filed suit. Further, the family home mysteriously burned to the ground when a fire started in an unlocked portion of Mr. Heaps' home. Three fire investigations deemed the source of the fire to be inconclusive and arson was never ruled out, although Mr. Heaps does not rule out retaliation against him for standing up to vindicate his constitutional rights.

11.     Having nowhere else in the State where he could move so that Jane could attend a public school without being subjected to the State Defendants' unconstitutional requirements, as a collateral consequence, Mr. Heaps determined to move to Florida so that in her best interests, Jane could attend a public school where she would not be socially transitioned without Mr. Heaps receiving full disclosure and approving such actions Mr. Heaps, in keeping with his long-

3

established constitutional rights.

## THE PARTIES

12.     Mr. Heaps is a loving and caring father of minor child Jane, who was a student at DVRHS, which is a regional high school located at 19 Senator Stout Road, Frenchtown, New Jersey, until moving with Jane to Florida in February 2026.

13.     Defendant McKinney is an individual residing at 233 Short Hills Drive, Bridgewater, New Jersey, is the Superintendent of DVRHS, and as such is the chief executive of the school district ("District"). He is named herein both individually and in his official capacity.

14.     Defendant Miranda is an individual residing at 406 Saddle Ct. Flemington, New Jersey 08822. She is named herein both individually and in her official capacity.

15.     The Board is duly organized and formed pursuant to the laws of the State of New Jersey with respect to the establishment of school districts and school boards and receives federal funding.

16.     Defendant Jennifer Davenport is the Attorney General of the State of New Jersey and is only named in her official capacity.

17.     Defendant Lily Laux is Acting Commissioner of the NJDOE and is only named in her official capacity.

18.     Defendants John Roes 1-10 is a fictitious name for District Defendants who aided and abetted in the violations of Mr. Heaps's long-established constitutional rights as set forth herein.

19.     All defendants are state actors.

## JURISDICTION AND VENUE

20.     This action is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, such that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

4

21.     Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

22.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2), since it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS COMMON TO ALL COUNTS

23.     Jane is a minor child who has a documented diagnosis of being on the autism spectrum, Attention-Deficit/Hyperactivity Disorder ("ADHD"), and Unspecified Mental Disorder ("UMD").

24.     Jane endured the childhood trauma of her biological mother's death and has been under the care of a therapist for depression, anxiety, and gender confusion since April 21, 2022. Mr. Heaps directed that in keeping with the advice of Jane's mental health professionals, a cautious approach to Jane's gender confusion should be taken given her underlying trauma, psychiatric, and psychological comorbidities.

25.     The Board promulgated a policy titled "5756 - Transgender Students," ("Board Policy 5756") in keeping with the Guidance, a true copy of which is attached to the Verified Complaint as **Exhibit A** and is incorporated herein by reference, which provides, in part:

> The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court-ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression.

26.     The Guidance encourages all New Jersey public school district to take a "student-centered approach" to students who believe themselves to be transgender, and declares that "school district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun use, and parental communications." A true copy of the Guidance is attached to the Verified Complaint as **Exhibit**

**B** and is incorporated herein by reference.

27.     Social transitioning is a psychotherapeutic intervention and is not a neutral act.

28.     Gender dysphoria is considered a serious mental-health condition that requires professional help.

29.     The United States Supreme Court has held that "[g]ender dysphoria is a condition that has an important bearing on a child's mental health, but when a child exhibits symptoms of gender dysphoria at school," and the State's "policies conceal that information from parents and facilitate a degree of gender transitioning during school hours," such "policies likely violate parents' rights to direct the upbringing and education of their children." *Mirabelli v. Bonta*, 146 S. Ct. 797, 803 (2026).

30.     The District Defendants were not equipped and remain unequipped to determine whether Jane is suffering from gender dysphoria, and never attempted to make any assessment about her mental health prior to socially transitioning her.

31.     Studies demonstrate that a large percentage of children who transition are autistic and/or obsessive compulsive, and that children with psychiatric conditions and/or who are neuro-diverse children are more likely to commit suicide than those with gender dysphoria, such that the mistaken belief that a child has gender dysphoria as opposed to psychiatric conditions may be dangerous and even life-threatening to the child.

32.     Indeed, at least one study has found that a significant majority of children with gender dysphoria have at least one mental health or neurodevelopmental issue.

33.     A comprehensive survey of numerous studies released by the American College of Pediatricians, found as follows regarding mental health problems among transgender adolescents:

> Adolescents who have a gender identity not congruent with their biological sex have an increased incidence of mental health issues, including depression and suicidal ideation. Both before and after "gender affirming therapy" (GAT), adolescents who have gender identity incongruence are at higher risk for

psychopathology than their peers who identify with their biological sex. Previous adverse childhood experiences may play a major role in that psychopathology and needs to be explored in helping these patients.  There are no long-term studies demonstrating benefits nor studies evaluating risks associated with the medical and surgical interventions provided to these adolescents. There is no long-term evidence that mental health concerns are decreased or alleviated after "gender affirming therapy." Many individuals who have been treated with "GAT" later regret those interventions and seek to align their gender identity with their sex. Because of the risks of social, medical, and surgical interventions, many European countries are now cautioning against these interventions while encouraging mental health therapy.

34.    A recent and comprehensive study in Finland regarding mental health outcomes in adolescents like Jane looked at *every single* transgender-identifying Finnish person over the last thirty (30) years compared to non-transgender persons. Among the findings was the following:

> Psychiatric needs do not subside after medical gender reassignment . . . These adolescents had markedly higher psychiatric morbidity than controls before and after referral, with treatment needs often persisting and even intensifying after medical interventions--on some, they might even have a negative impact.

(*https://onlinelibrary.wiley.com/doi/10.1111/apa.70533*).

35.    Further, in 2016, the National Institutes of Health published a study which concluded that most adolescents will desist from gender dysphoria if they do not transition. *https://pubmed.ncbi.nlm.nih.gov/26754056/*

36.    As a freshman at DVRHS, Jane participated in an extracurricular club known as Students Advocating for Equality ("SAFE"), which purportedly exists to "promote open discussion and awareness about modern cultures and topics surrounding intersectionality while aiming to make positive contributions to our community and school."

37.    Miranda was the staff advisor of SAFE and is neither a state licensed medical doctor nor mental health professional.

38.    Jane attended a SAFE meeting and expressed to defendant Miranda, who encouraged Jane and convinced Jane to express that she would like to undergo a social transition from female to male in school. Miranda immediately affirmed Jane's expressed identity and began

7

to facilitate Jane's social transition.

39.    Given Jane's age, psychological and psychiatric disorders, and history of trauma, she was unequipped to make the important choice to socially transition without the full knowledge and consent of her father, who has guided Jane and has obtained appropriate medical and therapeutic treatment for years prior to Jane's expressed desire to socially transition.

40.    Neither Miranda nor any of the other District Defendants asked Jane about her mental health history, her history of trauma, or whether Jane was then under the care of a mental health professional.

41.    Contrarily, Miranda asked Jane if she would like to change her name and pronouns and be known only as a male at school, to which Jane agreed, thus promoting social transitioning.

42.    Miranda advised Jane that she would send a communication to the entire staff of DVRHS, other than two teachers who Jane asked not to be advised because of their close relationship with her family--thus, risking incidental disclosure to Mr. Heaps about the District's secret transition efforts. However, contrary to Miranda's promise to Jane that the two specified teachers would not be contacted, Miranda breached her promise to Jane by advising at least one of those teachers, thus deceiving Jane.

43.    In such communication to DVRHS staff, Miranda informed the staff of Jane's 'name change' and advised that all such staff were thereafter *required* to use the alternate male name by which Jane desired to be called. Staff were also informed that Mr. Heaps was not to be informed of Jane's social transition, which constituted a specific instruction that all staff was required to participate in the violation of Mr. Heaps's long-standing constitutional parental rights.

44.    Thereafter, when communicating with Mr. Heaps about Jane, and before Mr. Heaps eventually learned of the District Defendants' social transition actions by the District Defendants, the school's staff members always used Jane's given female name when speaking with Mr. Heaps,

which was done for the purpose of concealing Jane's social transition at DVRHS, thus demonstrating a knowing interference with Mr. Heaps's long-established rights.

45. In December 2023, months after it commenced, Mr. Heaps learned of Jane's social transition at school when another parent called Jane by a boy's name in his presence. Only after Mr. Heaps inquired of the parent why the parent was calling Jane by a boy's name, the parent explained to Mr. Heaps that Jane was being called by such name at school since she was being socially transitioned.

46. Upon learning that Jane was being secretly transitioned at school without his knowledge or approval, Mr. Heaps suffered grievous mental anguish and emotional distress, which is ongoing.

47. Upon learning that Jane had been provided with a separate identity at school and that the District Defendants were intentionally concealing such fact from him, and due to his daughter's distress at living a secret second life, Mr. Heaps placed Jane on home instruction until he could share Jane's personal and therapeutic history with the District Defendants.

48. By being *de facto* compelled to withdraw Jane from in-person public school due to the violations of his constitutional rights, defendants, including the State Defendants who mandated such unconstitutional acts, deprived Mr. Heaps of the ability to have Jane receive a thorough and efficient free public education, which is a protected fundamental right under the New Jersey Constitution.

49. Mr. Heaps was otherwise deprived of procedural due process when he *de facto* was forced to withdraw Jane from in person public school, since he was entitled to a hearing in order to state his objections to the District Defendants' refusal to honor his long-established constitutional rights under the Fourteenth Amendment to the United States Constitution.

50. On December 8, 2023, in a meeting with DVRHS and Miranda, Mr. Heaps was

informed that the District Defendants were unaware of Jane's autism, ADHD and UMD diagnoses, her past trauma, or that Jane was under the care of a therapist at Mr. Heaps's direction when Miranda first encouraged and facilitated Jane's social transition in violation of his long-established constitutional rights, and as a matter of District and State public policy.

51. Mr. Heaps informed the District that he expressly denied his consent to the continuance of Jane's social transition at school. Regardless, the District Defendants advised Mr. Heaps that despite his objections, Jane would continue to be called by a male name until such time as Jane requested otherwise, such that the District Defendants specifically and deliberately insisted on interfering with Mr. Heaps's long-established constitutional rights, by and through Miranda and McKinney, as a matter of State and District public policy.

52. Following the meeting, a Cease and Desist letter was served on the Board Defendants. The Cease and Desist letter asserted, among other things, that Mr. Heaps's parental rights were being violated. A true copy of the Cease and Desist letter is attached to the Verified Complaint as **Exhibit C** and is incorporated herein by reference.

53. Thereafter, on December 8, 2023, a letter was forwarded by Mr. Heaps's attorneys which confirmed the critical events of the meeting that had occurred, reiterated that a Cease and Desist letter was served, and renewed the demand that the District Defendants cease and desist from socially transitioning Jane against Mr. Heaps's parental judgment as to Jane's best interests, in violation of Mr. Heaps's constitutional rights. A true copy of such letter is attached to the Verified Complaint as **Exhibit D** and is incorporated herein by reference.

54. On December 22, 2023, the District Defendants responded via legal counsel, who advised that Jane was approved for home instruction, but proclaimed "that the District will continue to abide by federal and state law as well as the Department of Education guidance regarding transgender students to ensure that the District is not discriminating against a student

10

based on gender identity or expression." A true copy of such letter is attached to the Verified Complaint as **Exhibit E** and is incorporated herein by reference.

55.     It was impossible for the District to both abide by the United States Constitution and the Guidance, which specifically compelled interference with Mr. Heaps's long-established constitutional parental rights.

56.     On January 2, 2024, the District Defendants continued to knowingly violate Mr. Heaps's long-established constitutional rights when noting in an email from their legal counsel to Mr. Heaps's attorney that the District had a goal to implement "home instruction" for Jane in a public library, but that "to ensure there is no misunderstanding," Mr. Heaps should "know that during home instruction the teachers will comply with district policy, NJDOE guidance, and federal and state laws regarding Jane's name preference."

57.     Moreover, the District Defendants harassed and implicitly threatened Mr. Heaps at times by threatening Jane with truancy and by having the New Jersey Department of Children's Services visit his home to check on Jane while she was receiving in-home education.

58.     Moreover, Mr. Heaps and Jane (as well as Mr. Heaps' long-time life partner, Nanmarie Hasson,who essentially serves as Jane's surrogate mother) became the subject of community gossip and, once Mr. Heaps filed suit to vindicate his long-standing constitutional rights, a cluster of negative online reviews for the family business was posted from within the transgender community in order to damage Mr. Heaps' reputation, and the family pet grooming business, and to stigmatize Mr. Heaps, Jane, and Ms. Hasson.

59.     On January 24, 2025, a mysterious fire broke out in a part of the Heaps family home which was kept unlocked. The family was fortunate to escape with their lives but lost pets, and the entire structure and its contents were destroyed. Three separate fire investigations occurred thereafter which all came back as being inconclusive as to the cause of the fire, and none of which

11

ruled out arson. In light of the drumbeat of gossip, criticism, and hostility that Mr. Heaps and his family faced because Mr. Heaps sought to vindicate his constitutional rights, Mr. Heaps does not rule out vindictive retaliation against him.

60.     Consequently, the District Defendants, supported by the State Defendants' policies, made it impossible for Jane to receive a thorough and efficient free public education unless Mr. Heaps yielded his long-established constitutional rights, to which the District Defendants were willfully and deliberately indifferent.

61.     There is no constitutional right for Jane to socially transition, and the District Defendants have no compelling or other government interest in requiring the social transition of Jane to proceed in violation of Mr. Heaps's constitutional rights. Moreover, even if such government interest did exist, which it does not, the District Defendants' actions are not narrowly tailored to achieve such interest. *See Mirabelli v. Bonta*, 2026 U.S. LEXIS 1192

62.     The NJAG and NJDOE policies were not neutral acts, have no compelling government interest in promulgating and enforcing laws and public policies that interfere with parents' long-established constitutional rights. Even if such compelling government interest did exist, which it does not, the NJAG and NJDOE's actions are not narrowly tailored to achieve such interest.

63.     Mr. Heaps had no other viable alternative at the time other than to send Jane to DVRHS and, given the policies of the NJAG and NJDOE to enforce such known unconstitutional positions, Mr. Heaps could not transfer Jane to another New Jersey public school district without facing the same violations of his long-established constitutional rights.

64.     Following two years of litigation in which Jane was not at school in-person due to defendants' knowing violations of Mr. Heaps's long-established constitutional rights, and given that the ongoing litigation was not likely to be concluded in time for Jane to begin attending school

in person for her senior year in high school at DVRHS or any other public school in New Jersey, as a collateral consequence of defendants' unconstitutional policies, procedures, and actions, Mr. Heaps moved Jane to Florida in her best interests so that she could attend public school in person.

65.    Due to Mr. Heaps having to move out of New Jersey in Jane's best interests, the question of the unconstitutionality of defendants' policies and practices escaped review but is capable of repetition given that tens of thousands of New Jersey public school children currently are in the crosshairs of these ongoing unconstitutional policies.

66.    Further, if Mr. Heaps wanted to move Jane back to New Jersey for her senior year, he would be unable to enroll her in a public school because all of New Jersey's public schools remain subject to the State and local school districts' unconstitutional policies that violate long-established parental rights.

67.    Since moving to Florida and attending school in person, where she is not subjected to school facilitation of her desire to experience a transgender life, Jane has expressed no interest in returning to such a life. If Jane was to enroll in a New Jersey public school, the unconstitutional policies of the State and local school districts would once again serve as an affirmative enticement for Jane to return to such thoughts, and Mr. Heaps would not be informed of the same.

68.    Moreover, as a collateral consequence of defendants' unconstitutional policies, the damage done to Mr. Heaps's reputation and to Jane's reputation is permanent and cannot be vindicated such that they have been stigmatized in what had been the community in which Mr. Heaps and Jane lived for almost twelve years.

69.    Additionally, given that Jane lost two years of in-person schooling because of defendants' unconstitutional policies and practices, and otherwise suffered damage to her physical and emotional well-being and reputation, the issues that are the subject of this litigation may have collateral consequences to a future lawsuit that Jane may file to vindicate her rights which were

collaterally affected by the violations of Mr. Heaps's long-standing constitutional rights by defendants.

<u>**FIRST COUNT**</u>
**(Declaratory Judgment 28 U.S.C. § 2201)**

70.    Mr. Heaps repeats and reasserts each and every allegation above as is fully set forth herein at length.

71.    An actual controversy exists among the parties hereto within the jurisdiction of this Court as to their rights and responsibilities, which is appropriate for a declaration of the rights and other legal relations among and between them with respect to the matters set forth above.

72.    Mr. Heaps is a fit parent who has the fundamental constitutional parental rights to determine how best to raise, nurture, and educate Jane.

73.    As a fit parent, it must be presumed that Mr. Heaps acts, at all times, in Jane's best interests with regard to parenting decisions associated with raising, nurturing, educating, and caring for Jane's mental and physical health, development, and well-being.

74.    Included within Mr. Heaps's fundamental constitutional parental rights is the right not to be shut out of participation in decisions regarding Jane's mental health.

75.    Defendants' acts, omissions, and policies have violated the sanctity of Mr. Heaps's family, contrary to the deeply rooted constitutional support for families within the Nation's history and tradition.

76.    To the contrary, there is no fundamental right of minor children under the United States Constitution to socially transition without their parents' knowledge or consent.

77.    The Guidance violates Mr. Heaps's fundamental constitutional rights under the Fourteenth Amendment, without limitation, since it substituted the decisions of the State for those of Mr. Heaps with respect to important aspects of Jane's mental health, welfare, and ultimately physical health, should social transitioning lead to Jane's desire to progress with medical

transitioning, and, thus, is void and unenforceable.

78.     To the extent that the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, or other state law or policy of the State or the District is intended to preclude parental knowledge and consent of social transitioning of their minor children in schools, it violates fundamental constitutional parental rights under the Fourteenth Amendment, since it substitutes the judgment of public officials for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health should social transitioning lead to the child's desire to progress with medical transitioning and, thus, is void and unenforceable.

79.     To the extent that any other federal or state laws or policies on which defendants, or some of them, purport to rely in further proceeding with Jane's social transition, such laws and/or policies are void and unenforceable by reason of their violating Mr. Heaps's fundamental Fourteenth Amendment Due Process rights.

80.     There is no compelling governmental interest in the NJDAG, the NJDOE, the District Defendants, or anyone operating under the defendants' authority to socially transition a minor child without the fully informed consent of the child's parents.

81.     By so acting as they did, which compelled Mr. Heaps to withdraw Jane from in person schooling and subsequently move out of the State because there was no public school district which would not enforce the same unconstitutional policies, Mr. Heaps shall continue to be harmed in his constitutional rights under the United States and New Jersey constitutions unless and until all such policies are invalidated.

82.     Despite Mr. Heaps withdrawing Jane from public school in New Jersey, collateral consequences remain including, without limitation, the likely effect on future litigation that may be brought by Jane for harm caused to her for reasons including, without limitation, defendants' policies and practices which violated Mr. Heaps's long-standing constitutional parental rights

15

which in turn had adverse effects on Jane, and ongoing damage and stigmatization of Mr. Heaps and Jane in the community.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.      Declaring that, to the extent that the N.J.S.A. 10:5-1 *et seq.*, or any other State law requires the secreting of social transitioning of minor children from parents and/or does not require the fully informed consent of parents to the social transitioning of their minor child, it constitutes an unconstitutional violation of the parents' rights under the Fourteenth Amendment's Due Process clause of the United States Constitution;

B.      Declaring that, to the extent that the Guidance requires or permits the secreting of social transitioning of minor children from parents and/or does not require the fully informed consent of parents to the social transitioning of their minor child, it constitutes an unconstitutional violation of the parental rights under the Fourteenth Amendment's Due Process clause in the United States Constitution

C.      Declaring that, to the extent that Board Policy 5756 or any other school district policy within a public school system in New Jersey requires or permits the secreting of social transitioning of minor children from parents and/or does not require the fully informed consent of parents to the social transitioning of their minor child, it constitutes an unconstitutional violation of the parents' rights under the Fourteenth Amendment's Due Process clause of the United States Constitution

D.      Declaring that there is no compelling governmental interest in any of the defendants, all of whom and which are state actors, to socially transitioning a minor child without the fully informed consent of the minor child's parents or legal guardians;

16

E.       Declaring that there is no fundamental constitutional right for a minor to socially transition;

F.       Permanently restraining and enjoining the NJAG and anyone acting under her from enforcing the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to a child's mental health, welfare, and physical health, and social transitioning in particular;

G.       Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing Guidance to school districts which permit any school district to deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

H.       Providing temporary restraints and preliminary injunctive relief as needed;

I.       Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs;

J.       Awarding such other and further relief as may be equitable and just.

## SECOND COUNT
### (42 U.S.C. § 1983 – Due Process/Parental Rights)

83.       Mr. Heaps repeats and reasserts each and every allegation above as is fully set forth herein at length.

84.       Miranda, McKinney, and John Does 1-10 knowingly and contumaciously committed a constitutional tort by socially transitioning Jane without parental notification or consent so as to frustrate his long-established constitutional Parent's Rights under the Due Process Clause of the United States Constitution's Fourteenth Amendment.

17

85.    The NJAG and NJDOE have and had provided a purported legal basis for the District Defendants' unconstitutional conduct through legal interpretations and guidance which violated long-established Parental Rights under the Due Process Clause of the United States Constitution.

86.    Such constitutionally tortious conduct was undertaken by all defendants as a matter of public policy, custom, and practice under color of law.

87.    There is no compelling, significant, or other reasonable governmental interest in any state actor socially transitioning Jane in violation of Mr. Heaps's fundamental constitutional Parent's Rights as aforesaid, and the acts of all defendants in such regard otherwise are arbitrary, capricious, and/or irrational.

88.    Indeed, defendants have asserted that there is an interest in protecting transgender children against discrimination by their parents, which has never been a recognized form of actionable discrimination any jurisdiction in the United States given that such laws would be prohibited due to violation of long-established constitutional Parental Rights.

89.    By their actions, defendants have acted under color of law to deprive Mr. Heaps of the rights, privileges, or immunities secured by the Fourteenth Amendment of the United States Constitution and the New Jersey Constitution as aforesaid, including, without limitation, the right to parent a minor child who is receiving a thorough and efficient education, and have caused Mr. Heaps to suffer severe and permanent damages, including, without limitation, emotional distress, economic damages, physical harm, and consequential damages.

90.    Despite Mr. Heaps withdrawing Jane from public school in New Jersey, collateral consequences remain including, without limitation, the likely effect on future litigation that may be brought by Jane for harm caused to her for reasons including, without limitation, defendants'

policies and practices which violated Mr. Heaps's long-standing constitutional parental rights, and ongoing damage and stigmatization of Mr. Heaps and Jane.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, jointly and severally where applicable, as follows:

A.    Awarding compensatory damages against all defendants;

B.    Awarding punitive damages against the District Defendants only;

C.    Awarding Consequential Damages against all defendants;

D.    Permanently restraining and enjoining the NJAG, and anyone acting under her, from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.*, or any other state law, to the extent that it may deprive parents of fully informed knowledge and consent with respect to the social transitioning of their minor children in violation of the Fourteenth Amendment's Due Process Clause;

E.    Permanently restraining and enjoining the Acting Commissioner of the NJDOE, and anyone acting under her, from providing guidance to a New Jersey school district school to the extent that it may deprive parents of fully informed knowledge and consent with respect to the social transitioning of their minor children in violation of the Fourteenth Amendment's Due Process Clause;

F.    Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

G.    Awarding interest as allowed by law;

H.    Awarding such other and further relief as may be equitable and just.

### THIRD COUNT
**(42 U.S.C. § 1983—Procedural Due Process, District Defendants only)**

91.    Mr. Heaps repeats and reasserts each and every allegation above as if fully set forth herein at length.

19

92.     Miranda, McKinney, and John Does 1-10 knowingly and contumaciously committed a constitutional tort by socially transitioning Jane without parental notification or consent so as to frustrate his long-established constitutional rights belonging to Mr. Heaps under the First and Fourteenth Amendments of the United States Constitution, *to wit*, the Fourteenth Amendment's Due Process Clause.

93.     The NJAG and NJDOE have and had provided a purported legal basis for the District Defendants' unconstitutional conduct though legal interpretations and guidance which violated Mr. Heaps's long-established constitutional rights.

94.     Mr. Heaps specifically objected to the District Defendants' conduct in violation of Mr. Heaps's long-established constitutional rights.

95.     Mr. Heaps was entitled to a hearing in keeping with his rights pursuant to the Fourteenth Amendment of the United States Constitution's Due Process clause.

96.     The District Defendants contumaciously disregarded Mr. Heaps's objections to their violations of his long-established constitutional rights and rejected his demands without a hearing, to which he was entitled.

97.     Left with no choice after being deprived of a hearing if he wished to preserve and protect his United States constitutional rights, and his rights under the New Jersey Constitution to have a thorough and efficient free public education for his daughter, Mr. Heaps withdrew Jane from in-person classroom attendance.

98.     By their actions, the District Defendants have acted under color of law to deprive Mr. Heaps of the rights, privileges, or immunities secured by the First Amendment of the United States Constitution and the New Jersey Constitution as aforesaid, including, without limitation, the right to parent a minor child who is receiving a thorough and efficient education, and have

20

caused Mr. Heaps to suffer severe and permanent damages, including, without limitation, emotional distress, economic damages, physical harm, and consequential damages.

99. Despite Mr. Heaps withdrawing Jane from public school in New Jersey, collateral consequences remain including, without limitation, the likely effect on future litigation that may be brought by Jane for harm caused to her for reasons including, without limitation, defendants' policies and practices which violated Mr. Heaps's long-standing constitutional parental rights, and ongoing damage and stigmatization of Mr. Heaps and Jane.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, jointly and severally where applicable, as follows:

A. Awarding compensatory damages against all defendants;

B. Awarding punitive damages against the District Defendants only;

C. Awarding Consequential Damages against all defendants;

D. Permanently restraining and enjoining the NJAG, and anyone acting under her, from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq*., or any other state law, to the extent that it may deprive parents of fully informed knowledge and consent with respect to the social transitioning of their minor children in violation of the Fourteenth Amendment's Due Process Clause;

E. Permanently restraining and enjoining the Acting Commissioner of the NJDOE, and anyone acting under her, from providing guidance to a New Jersey school district school to the extent that it may deprive parents of fully informed knowledge and consent with respect to the social transitioning of their minor children in violation of the Fourteenth Amendment's Due Process Clause;

F. Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

21

G.      Awarding interest as allowed by law;

H.      Awarding such other and further relief as may be equitable and just.

**FOURTH COUNT**
**(42 U.S.C. § 1983—Privileges or Immunities)**

100.    Mr. Heaps repeats and reasserts each and every allegation above as if fully set forth herein at length.

101.    Section 1 of the Fourteenth Amendment reads:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

102.    Mr. Heaps was born in the United States, is subject to its jurisdiction and, thus, is a citizen of the United States and of New Jersey, the of the State in which he resides.

103.    Mr. Heaps is Jane's natural parent.

104.    By their actions, defendants deprived Mr. Heaps of his long-standing privileges of American life and citizenship including, without limitation, that parents have the right to the dominion and control of their children and to object to the State and District's transgender social transitioning policies with which no state actor may interfere for any reason, and especially not to carry out any one or more conflicting social engineering or political agendas, as was the case herein.

105.    More specifically, and in the case *sub judice*, defendants may not interfere with the right of Mr. Heaps to be fully informed of his minor daughter's desire to be treated like a boy at school and to deny permission of the school to do so, since such actions by defendants violate the privilege of parentage which is protected by, without limitation, the Privileges or Immunities Clause of the Constitution.

22

106.   Parents' rights are broad and require that the state fully inform parents of important information which may relate to the physical and mental well-being of such parent's minor children when such minor children are in the care, custody, and control of the state per compulsory educational requirements, and to receive the parent's fully informed consent before acting on the information related to the minor child's physical and/or mental well-being.

107.   While unenumerated in the Constitution, such privileges or immunities have been determined by the United States Supreme Court to be foundational to the preservation of Western Civilization itself and, thus, predate the Constitution, which is based in whole or in part on the philosophical underpinnings of Western Civilization. *Parham v. J.F.*, 442 U.S. 584, 602 (1979).

108.   Such privileges or immunities are natural rights of parentage that are reserved to the people through the Ninth Amendment of the Constitution, which thus are privileges or immunities of United States citizenship that are protected by the Fourteenth Amendment.

109.   Jane was in the custody, care, and control of the state while attending DVRHS, and her desire to be treated as a boy, contrary to her biological sex, was something which could affect her physical and mental well-being and her education such that defendants were required to fully inform Mr. Heaps of the same and to obtain his consent for Jane to pursue such desire.

110.   Only after providing Mr. Heaps with full disclosure and information about his daughter's desire to be treated as other than her biological sex at school would defendants be permitted to carry out such request of Jane while she is a minor, but then, only if Mr. Heaps provided his specific fully informed consent for defendants to so act, in keeping with his privileges of United States citizenship, and otherwise complied with the constitution and laws of the United States and New Jersey in doing so.

111.   To the extent that the State has promulgated laws and/or policies which would abridge a parent's rights by permitting acts related to the mental health and well-being of the

parent's minor child, such as those of DVRHS in socially transitioning Jane in secret from Mr. Heaps, without the parent's fully informed consent, such laws and/or policies violate the Privileges or Immunities Clause.

112.    Defendants' official policies, customs, and practices as aforesaid specifically called for not fully informing, not obtaining consent, and secreting Jane's social transition desire at school in violation of Mr. Heaps's rights under the Privileges and Immunities Clause.

113.    To the extent that *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872), and its progeny would deprive the Courts of an enforcement mechanism to protect Mr. Heaps's rights under the Privileges or Immunities Clause of the Fourteenth Amendment, such case or cases should be expanded, abrogated, narrowly construed, confined to their own facts, and/or overruled, since without such authority as intended by the drafters of the Fourteenth Amendment, courts applying the Constitution are powerless to curtail and to place guardrails on state actors to prevent them from intruding on the privileges or immunities of citizenship as were originally intended to be protected by the Fourteenth Amendment.

114.    By virtue of defendants having violated Mr. Heaps's fundamental rights, they have violated the Privileges or Immunities Clause of the Fourteenth Amendment and have caused Mr. Heaps to suffer grievous damages.

115.    Despite Mr. Heaps withdrawing Jane from public school in New Jersey, collateral consequences remain including, without limitation, the likely effect on future litigation that may be brought by Jane for harm caused to her for reasons including, without limitation, defendants' policies and practices which violated Mr. Heaps's long-standing constitutional parental rights, and ongoing damage and stigmatization of Mr. Heaps and Jane.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, jointly and severally where applicable, as follows:

A.    Awarding compensatory damages against all defendants;

B.    Awarding punitive damages against the District Defendants only;

C.    Awarding Consequential Damages against all defendants;

D.    Permanently restraining and enjoining the NJAG, and anyone acting under her, from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.*, or any other state law, to the extent that it may deprive parents of fully informed knowledge and consent with respect to the social transitioning of their minor children in violation of the Fourteenth Amendment's Privileges or Immunities Clause;

E.    Permanently restraining and enjoining the Acting Commissioner of the NJDOE, and anyone acting under her, from providing guidance to a New Jersey school district school to the extent that it may deprive parents of fully informed knowledge and consent with respect to the social transitioning of their minor children in violation of the Fourteenth Amendment's Privileges or Immunities Clause;

F.    Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

G.    Awarding interest as allowed by law;

H.    Awarding such other and further relief as may be equitable and just.

## JURY DEMAND

The plaintiff demands trial by jury on all Counts so triable.

**MURRAY-NOLAN BERUTTI LLC**
*Attorneys for the Plaintiff, Christin Heaps*

*/s/ Ronald A. Berutti*

Ronald A. Berutti

Dated: April 22, 2026

26