# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTIN HEAPS,<br><br>      Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, *et al.*,<br><br>      Defendants. | Hon. Georgette Castner, U.S.D.J.<br><br>Civil Action No. 3:24-cv-107 |
| MARIA LEMA, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>JENNIFER DAVENPORT, Attorney General of the State of New Jersey, *et al.*,<br><br>      Defendants. | Hon. Robert Kirsch, U.S.D.J.<br><br>Civil Action No. 3:26-cv-4682 |

## BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO CONSOLIDATE

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
Attorneys for Defendants,
Jennifer Davenport and Lily Laux

Matthew Lynch
Marie V. Cepeda Mekosh
Meghan Musso
*Deputy Attorneys General*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................1

BACKGROUND ...............................................................................................2

    A.   New Jersey Law. .................................................................................2

    B.   *Heaps* and *Lema*. ...............................................................................4

ARGUMENT ....................................................................................................6

CONCLUSION ...............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
   216 F.R.D. 567 (D.N.J. 2003)..................................................................................7

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
   769 F.3d 204 (3d Cir. 2014) ...................................................................................6

*Arnold v. E. Airlines, Inc.*,
   681 F.2d 186 (4th Cir. 1982) .................................................................................7

*C.V. v. Waterford*,
   300 A.3d 958, 968 (N.J. 2023) ..............................................................................2

*Caractor v. Hous. Bridge 93rd Ave. Fam. Residence*,
   No. 13-CV-3800, 2014 WL 1351402 (E.D.N.Y. Apr. 2, 2014)..........................13

*Citizens Bank, N.A. v. Mulye*,
   No. 23-cv-545, 2024 WL 4913949 (D.N.J. Aug. 12, 2024).................... 7, 11, 14

*Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*,
   250 F.R.D. 171 (D.N.J. 2008)..............................................................................12

*Galicki v. New Jersey*,
   No. 14-cv-169, 2014 WL 4105441 (D.N.J. Aug. 18, 2014).............. 6, 11, 12, 14

*Hall v. Hall*,
   584 U.S. 59 (2018)..................................................................................................6

*Hanson v. D.C.*,
   257 F.R.D. 19 (D.D.C. 2009) ...............................................................................13

*Hasher v. Corzine*,
   No. 07-cv-1212, 2008 WL 11338671 (D.N.J. June 4, 2008) ...............................11

ii

*In re Consol. Parlodel Litig.*,
182 F.R.D. 441 (D.N.J. 1998)................................................................7

*In re Lucent Techs. Inc. Sec. Litig.*,
221 F. Supp. 2d 472 (D.N.J. 2001)........................................ 6, 7, 13

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................12

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ...............................................................12

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
149 F.R.D. 65 (D.N.J. 1993)................................................................14

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*,
770 F. Supp. 2d 283 (D.D.C. 2011)......................................................13

*Wallace v. New York*,
No. 12-CV-5866, 2013 WL 1452018 (E.D.N.Y. Apr. 2, 2013).........................12

**Statutes**

N.J. Pub. L. 2006, c. 100....................................................................2

N.J. Pub. L. 2017, c. 137....................................................................3

N.J. Stat. Ann. § 10:5-12....................................................................2

N.J. Stat. Ann. § 18A:36-41..................................................................3

N.J. Stat. Ann. §10:5-5.......................................................................2

**Rules**

Fed. R. Civ. P. 42(a)................................................................ 1, 6, 7

Loc. Civ. R. 40.1(c)...........................................................................6

Loc. Civ. R. 42.1 ...........................................................................1, 6

# **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 42(a) and Local Civil Rule 42.1, Defendants Attorney General Jennifer Davenport and Commissioner Lily Laux (State Defendants) seek an order consolidating two related actions that challenge the constitutionality of New Jersey's law and policies concerning transgender students as violative of parental rights: *Heaps (formerly Doe) v. Delaware Valley Regional High School Board of Education, et al.*, No. 3:24-cv-00107, and *Lema, et al. v. Davenport, et al.*, No. 3:26-cv-4682.[1]

Plaintiffs in *Heaps* and *Lema*, represented by the same counsel, challenge the same set of state policies, rely on substantially similar legal theories, ask for substantially similar relief, and name the same State Defendants, who are also represented by the undersigned office in both actions. In both cases, Plaintiffs bring a Fourteenth Amendment challenge to the State's anti-discrimination laws and guidance on school district interactions with transgender students. Both cases allege that the State has violated parents' constitutional rights because they do not require parental notification and consent before recognizing a transgender student's affirmatively expressed gender identity. And both cases request declaratory and injunctive relief to prevent the Attorney General and Commissioner of Education

---

[1] Consistent with this Court's Local Rules, State Defendants have filed this motion in *Heaps*, the "case[] bearing the earliest docket number." Loc. Civ. R. 42.1.

1

from enforcing or implementing the challenged state policies. Additionally, both cases challenge local school district policies that allegedly do not require parental consent or notice for a student to have his or her gender identity recognized and respected by the district.

Allowing these constitutional challenges to proceed separately would waste judicial resources and risk the inconsistent adjudication of identical legal issues. And since both cases are in a similar procedural posture—with the operative complaint in each case filed just days apart—and involve largely overlapping counsel and defendants, consolidation would not present any undue cost or delay, but instead create efficiencies for the parties and the Court. State Defendants therefore seek an order consolidating *Lema* into the instant action, which bears the earlier docket number, for all pretrial and trial purposes.

## BACKGROUND

### A.    New Jersey Law.

New Jersey's Law Against Discrimination (NJLAD) prohibits unlawful discrimination in all public accommodations, including in "any kindergarten, primary and secondary school ... [or] high school." N.J. Stat. Ann. § 10:5-5(*l*); *see also, e.g.*, *C.V. v. Waterford*, 300 A.3d 958, 968 (N.J. 2023). This prohibition extends to discrimination on the basis of "gender identity or expression." N.J. Stat. Ann. § 10:5-12(f); N.J. Pub. L. 2006, c. 100.

Consistent with these NJLAD protections, the Legislature enacted N.J. Stat. Ann. § 18A:36-41 in 2017 to promote a safe and supportive learning environment for students regardless of gender identity or expression. *See* N.J. Pub. L. 2017, c. 137. Because New Jersey schools faced "common issues concerning the needs of transgender students," the statute directed the New Jersey Department of Education (NJDOE or Department) to issue "guidelines" to "assist schools in establishing policies and procedures that ensure a supportive and nondiscriminatory environment for transgender students." N.J. Stat. Ann. § 18A:36-41(a).

Following this statutory directive, NJDOE issued its Transgender Student Guidance for School Districts in 2018. *See* ECF No. 1-2. The Department explained that its goals, consistent with the Legislature's instruction, were "to help school and district administrators take steps to create an inclusive environment in which transgender and gender nonconforming students feel safe and supported, and to ensure that each school provides equal educational opportunities for all students." *Id.* at 2. The Guidance explains that schools must "accept a student's asserted gender identity" and should not require them to "meet any threshold diagnosis or treatment requirements" or to undergo "a legal or court-ordered name change." *Id.* The Guidance also makes clear that a school need not obtain advance "parental consent" before respecting a student's gender identity, *id.* at 3, but recognizes that there may be instances where a parent or guardian disagrees with the student regarding the

3

name and pronoun to be used at school, *id.* at 4. In such cases, the Guidance recommends schools "consult their board attorney regarding the minor student's civil rights and protections under the NJLAD"; "continue to refer to the student in accordance with the student's chosen name and pronoun at school"; and "consider providing resource information regarding family counseling and support services outside of the school district." *Id.* at 4 (offering a number of available support resources). And while the Guidance provides that school districts have "no affirmative duty … to notify a student's parent or guardian of the student's gender identity or expression," it does not forbid such notification. *Id.* at 4.

**B.    *Heaps* and *Lema*.**

The Plaintiffs in both *Heaps* and *Lema*, represented by the same counsel, challenge the same set of state policies concerning transgender students and seek substantially the same relief. Specifically, both cases seek an injunction and declaration to prevent the Attorney General from enforcing the NJLAD in a manner that would allegedly deny parents the right to provide fully informed consent for any "gender transitioning" or "social transitioning" of a minor student. *Compare* Second Am. Compl. at ¶ 6, First Count at ¶¶ 70-82, A, F, & Second Count at ¶¶ 83-90, D, ECF No. 127, *with* Ex. A at ¶¶ 4, 9, First Count at ¶¶ 50-65, A, G, & Second Count at ¶¶ 83-88, A. Similarly, both cases challenge NJDOE's Transgender Student Guidance for School Districts and seek an injunction and declaration to prevent the

4

Commissioner of Education from providing guidance that allegedly deprives parents of the right to provide fully informed consent regarding the "gender transitioning" or "social transitioning" of any minor student. *Compare* Second Am. Compl. at ¶ 7, 26, First Count at ¶¶ 70-82, B, G, & Second Count at ¶¶ 83-90, E, ECF No. 127, *with* Ex. A at ¶¶ 5, 9, 24, 31, First Count at ¶¶ 50-65, B, H, & Second Count at ¶¶ 83-88, B. And both cases challenge local school district policies, alleging that the policies unlawfully permit schools to respect a student's gender identity without requiring parental consent. *Compare* Second Am. Compl. at ¶ 25, First Count at ¶¶ 70-82, C, & Second Count at ¶¶ 83-90, ECF No. 45, *with* Ex. A at ¶¶ 2-3, 9, 26-31, 40, First Count at ¶¶ 50-65, C, I-J, & Second Count at ¶¶ 83-88, C-D.

*Heaps* was initially filed in 2024 against the Attorney General of the State of New Jersey, the Acting Commissioner of NJDOE, the Delaware Valley Regional High School Board of Education, and several local officials. ECF No. 1. Following denial of a temporary restraining order and preliminary injunction, ECF Nos. 38, 88, and the filing of a motion to dismiss for lack of jurisdiction, ECF No. 110, Plaintiff filed a Second Amended Complaint on April 22, 2026, ECF No. 127.

Less than a week later, on April 28, Plaintiffs initiated the lawsuit in *Lema*, Ex. B, and, on April 30, filed an Amended Complaint, Ex. A. Although Local Civil Rule 40.1(c) directs parties filing a new action to state whether it "grows out of the same transaction as any case already or previously pending in this Court," so the

5

case can be assigned to the judge presiding over the pending related action, Loc. Civ. R. 40.1(c), the *Lema* Plaintiffs did not identify *Heaps* as a related case. *See* Ex. C. On April 29, State Defendants filed a letter in *Lema* explaining that it was related to *Heaps* and that they intended to seek consolidation. *Id.* This motion follows.

## ARGUMENT

*Heaps* and *Lema* should be consolidated before this Court. Fed. R. Civ. P. 42(a); Loc. Civ. R. 42.1 (requiring such a motion to be filed "in the cases bearing the earliest docket number"). Rule 42(a) gives courts "broad power to consolidate cases that share common questions of law or fact." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014) (cleaned up). Rule 42(a) does not "require[] that pending suits be identical before they can be consolidated." *In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001). Rather, cases share "common issues of law or fact'" where they involve "several of the same defendants" and "some significant overlap in the causes of action at issue." *Galicki v. New Jersey*, No. 14-cv-169, 2014 WL 4105441, at *4 (D.N.J. Aug. 18, 2014). Consolidation of such cases "enabl[es] more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them." *Hall v. Hall*, 584 U.S. 59, 67 (2018).

Courts routinely exercise their authority to consolidate cases involving common issues because it serves the "intended effect" of Rule 42(a): "economy and

6

uniformity." *Citizens Bank, N.A. v. Mulye*, No. 23-cv-545, 2024 WL 4913949, at \*3 (D.N.J. Aug. 12, 2024) (citation omitted). Consolidation of related cases serves "the interests of economy and efficiency" by saving the court and the parties the "burden," "time," and "relative expense" of duplicative litigation of overlapping issues in parallel suits. *In re Lucent*, 221 F. Supp. 2d at 482. And uniformity is ensured by avoiding "the risk of inconsistent adjudications of common factual and legal issues." *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (quoting *Arnold v. E. Airlines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)). That is especially true where the "relief sought" in the two cases is the same. *See Citizens Bank*, 2024 WL 4913949, at \*3. Because of these benefits, "consolidation is generally appropriate" absent "an articulated basis to assert confusion or prejudice." *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003).

Consolidation is plainly appropriate in these two actions, where Plaintiffs ask for substantially the same relief against the same State Defendants based on overlapping constitutional challenges to the same set of state policies. As a threshold matter, both actions "involve … common question[s] of law or fact," Fed. R. Civ. P. 42(a); *see also Parlodel Litig.*, 182 F.R.D. at 443-44, because they challenge the same state policies and relevantly similar school district policies for the same reason: allegedly depriving parents of "fully informed knowledge and consent" before accepting a transgender student's expressed gender identity, Second Am. Compl. at

First Count, ¶¶ A-C, F-G, & Second Count, ¶¶ D-E, ECF No. 127; *see* Ex. A at First Count, ¶ A-C, F-I, & Second Count, ¶¶ A-C (alleging deprivation of "notice to, and the full informed consent of, fit parents"). And both complaints are largely predicated on the same legal theory. Count II of the *Lema* complaint and Counts II and IV of the *Heaps* complaint press the same argument—that the Attorney General's legal interpretation of the NJLAD, the Guidance promulgated by NJDOE, and the school districts' policies violate the Plaintiffs' parental rights under the Fourteenth Amendment to the extent they require or permit a school to honor transgender students' expressed gender identities without categorically mandating notification to, and consent from, the students' parents. *See generally* Second Am. Compl. at Second Count, ¶¶ 84-85, 89, & Fourth Count, ¶¶ 104-106, 109-112, ECF No. 127; Ex. A at Second Count, ¶¶ 84-85, 87-88.

Indeed, the operative complaints, which were filed by the same counsel just days apart, characterize the Plaintiffs' Fourteenth Amendment claims in nearly identical terms. Both argue that parents have "fundamental constitutional parental rights" "to determine how best to raise, nurture, and educate" their children, including the right not to be excluded from "participation in decisions regarding [their children's] mental health." Second Am. Compl. at ¶¶ 72-75, ECF No. 127; Ex. A at ¶ 52, 54-55, and that "Defendants' acts, omissions, and policies" have violated those rights, Second Am. Compl. at ¶ 75, ECF No. 127; *accord* Ex. A at ¶ 56; *see*

8

*also* Second Am. Compl. at ¶¶ 84-85, ECF No. 127; Ex. A at ¶¶ 84-85. Both argue, in particular, that the state-issued Guidance "violates the plaintiffs' fundamental constitutional rights under the Fourteenth Amendment … since it substitutes, or threatens to substitute, the decisions of the State for those of the plaintiffs with respect to important aspects of their minor children's mental health, welfare, and ultimately physical health" without parental notice and consent. Ex. A at ¶ 59; *accord* Second Am. Compl. at ¶¶ 77-78, ECF No. 127. Both argue that "[t]o the extent that the NJLAD … or other … law or policy of the State or the District is intended to preclude parental knowledge and consent of social transitioning of their minor children in schools, it violates fundamental constitutional rights under the Fourteenth Amendment." Second Am. Compl. at ¶ 78, ECF No. 127; *accord* Ex. A at ¶ 60. Both argue that Defendants have "no compelling governmental interest" in honoring students' requests to use names or pronouns consistent with their gender identity without "fully informed consent of" parents. Second Am. Compl. at ¶ 80, ECF No. 127; Ex. A at ¶ 62. And both argue that "minor children" have no "fundamental right" to "socially transition without their parents' knowledge or consent." Second Am. Compl. at ¶ 76, ECF No. 127; *accord* Ex. A at ¶ 58.

Moreover, the relief requested in the two actions is substantially the same. Count I of each operative complaint is styled as a cause of action under the Declaratory Judgment Act, *see* Second Am. Compl. at 14 (First Count), ECF No.

127; Ex. A at 10 (First Count), but simply asserts entitlement to declaratory and injunctive relief based on the substantive violations of laws that are asserted in the rest of the complaint, particularly the parental rights theory detailed above. Specifically, both complaints seek declaratory and injunctive relief against any statewide guidance recommending that schools respect a student's request to be treated in line with their gender identity, without requiring notice to and/or consent from the student's parents. Second Am. Compl. at First Count, ¶¶ B, G & Second Count, ¶ E, ECF No. 127; Ex. A at First Count, ¶¶ B, H & Second Count, ¶ B. And both seek declaratory and injunctive relief against any state law that requires or permits schools to respect students' requests to use a name or pronouns consistent with their gender identity, without requiring parental notice and/or consent. Second Am. Compl. at First Count, ¶¶ A, G & Second Count, ¶ D, ECF No. 127; Ex. A at First Count, ¶¶ A, G & Second Count, ¶ A.

The overlap between the two cases does not end there. Both ask for a declaration that a minor has "no fundamental right" to respect for his or her gender identity and that there is "no compelling governmental interest" in recognizing and respecting a child's request to use a name or pronouns consistent with his or her gender identity without the consent of parents. Second Am. Compl. at First Count, ¶¶ D-E, ECF No. 127; Ex. A at First Count, ¶¶ D-E. And as to the school district defendants, both cases seek a declaration that school board policies violate the

Fourteenth Amendment if they do not require parental consent for a student to have their gender identity recognized and respected by schools. Second Am. Compl. at First Count, ¶ C, ECF No. 127; Ex. A at First Count, ¶ C. Finally, although Count III of the *Lema* complaint is a First Amendment free exercise claim that is not asserted in *Heaps*, the remedy it seeks against the State Defendants is the same— restraining and enjoining any NJLAD enforcement action or statewide guidance that would deny parents the right to be notified of their child's gender transitioning. Ex. A at Third Count, ¶¶ 94, A-B.[2]

Consolidation is clearly warranted here given that the cases involve, at a minimum, "some significant overlap in the causes of action at issue" brought against "several of the same defendants," *Galicki*, 2014 WL 4105441, at *4, and the "relief sought" is the same, *Citizens Bank*, 2024 WL 4913949, at *3. "Allowing for common issues of … law," such as the overlapping constitutional challenges to identical sets of state policies presented here, "to be considered at once provides for judicial economy as well as uniformity in the outcomes the cases[,] … [which] was the intended effect of Rule 42(a)." *Id.* (quoting *Hasher v. Corzine*, No. 07-cv-1212, 2008 WL 11338671, at *2 (D.N.J. June 4, 2008)); *accord Galicki*, 2014 WL

---

[2] Count III of the *Heaps* complaint is a procedural due process claim that purports to be against the school "[d]istrict [d]efendants only." *See* Second Am. Compl. at 19, ECF No. 127. The count nonetheless seeks relief against the State Defendants that is duplicative of the relief requested in other counts.

11

4105441, at *4 ("The purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'") (quoting *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999)); *see also Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 176 (D.N.J. 2008) (finding consolidation appropriate where the factual and legal issues overlapped and the outcome in one case had the potential to "effectively negate" the outcome of the other). And while there may be some factual and legal differences regarding certain individual Plaintiffs' standing to seek relief, that does not negate the benefits of streamlined and consistent adjudication of the merits of their claims. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998) ("[T]he facts and legal issues need not be identical to warrant consolidation.") (collecting cases). Nor is consolidation improper simply because the *Lema* Plaintiffs raise an additional First Amendment argument. Courts routinely consolidate substantially overlapping cases despite variations in the causes of action. *See, e.g., Wallace v. New York*, No. 12-CV-5866, 2013 WL 1452018, at *2 (E.D.N.Y. Apr. 2, 2013) (consolidating despite "differences in the causes of action," where "some of the plaintiffs … sought to overturn an additional law," where the "differences … d[id] not outweigh the interests of judicial economy served by consolidation"); *Caractor v. Hous. Bridge 93rd Ave. Fam. Residence*, No. 13-CV-3800, 2014 WL 1351402, at *2 (E.D.N.Y.

12

Apr. 2, 2014) ("Cases may also be consolidated even where, as here, there are differences in the causes of action.").

The efficiencies of consolidation are especially clear because the two actions involve overlapping parties and largely the same attorneys. The State Defendants in both cases are the New Jersey Attorney General and the Commissioner of NJDOE, both represented by the undersigned office, and the Plaintiffs in *Heaps* and *Lema* are represented by the same counsel. Consolidation will avoid duplicative briefing from the same parties on the same issues before two different judges and will allow for coordinated and streamlined pre-trial proceedings. While the parties are not identical in both cases, "cases may be consolidated even … where, as here, the plaintiffs are different but are asserting identical questions of law against the same defendant[s]." *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011); *see also Hanson v. D.C.*, 257 F.R.D. 19, 21-22 (D.D.C. 2009); *In re Lucent*, 221 F. Supp. 2d at 479, 482. That makes sense: even without a perfect identity of parties or counsel, consolidation will create significant efficiencies by sparing the overlapping parties and counsel from litigating multiple parallel cases.

By contrast, consolidation will not prejudice the Plaintiffs in either case. Both actions are in a similar procedural posture. The operative complaints in *Heaps* and *Lema* were filed just over one week apart, *supra* at 5, and Defendants have not yet

13

filed an answer or motion to dismiss in response to either complaint.[3] *But see Citizens Bank*, 2024 WL 4913949, at *4 (consolidating even when "the cases are on different stages at this point"). Additionally, even assuming that fact discovery on the merits of Plaintiffs' claims proves necessary, neither case has proceeded to that stage.[4] Consolidation would therefore not inconvenience the parties or delay adjudication of any of these cases. *See Galicki*, 2014 WL 4105441, at *4 (finding that, where cases "ha[d] nearly identical procedural postures, consolidation would not cause any undue 'inconvenience, delay or expense'") (quoting *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993)). To the contrary, because of the similar procedural posture of both cases, the parties and the Court would be able to more efficiently address common preliminary or merits issues that arise if both cases proceed along a similar timeline.

In sum, adjudicating these cases separately would be a waste of judicial resources and needlessly create a risk of inconsistent judgments. The potential for

---

[3] While the Plaintiffs in *Lema* initially filed a request for a temporary restraining order and preliminary injunction alongside their complaint, ECF No. 1-8, they did not correct the procedural deficiencies identified by the Court, ECF No. 3, nor renew their request when filing their amended complaint, ECF No. 6. Consolidation would not, of course, prevent the *Lema* Plaintiffs from renewing their motion in this Court.

[4] In *Heaps*, the parties engaged in limited discovery for purposes of the preliminary injunction motion filed in that case, which focused primarily on the lack of irreparable harm to Plaintiff. *See, e.g.*, ECF Nos. 55, 57, 70, 102, 106. However, the parties have not yet engaged in factual discovery on the merits of Plaintiff's claims.

14

inefficiency and unnecessary cost that separate actions would entail overwhelmingly favors immediate consolidation.

## **CONCLUSION**

This Court should grant the motion for consolidation, and *Lema* should be consolidated into the instant action.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By:    /s/ Meghan Musso
Meghan Musso
Deputy Attorney General

15

**CERTIFICATE OF SERVICE**

I certify that on May 7, 2026, I electronically filed the foregoing Brief in Support of State Defendants' Motion to Consolidate with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.


Dated:  May 7, 2026                    /s/ Meghan Musso
                                        Meghan Musso

16