# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN DOE (said name being fictitious),<br><br>Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, SCOTT MCKINNEY, individually and in his official capacity as Superintendent of Schools, ASHLEY MIRANDA, individually and in her official capacity as school counselor, MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey, ANGELICA ALLEN-McMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education, and JOHN ROES 1-10 (said names being fictitious), individually and in their official capacities,<br><br>Defendants. | Civil No.<br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

The plaintiff John Doe, said name being fictitious, by his attorneys Murray-Nolan Berutti LLC, with knowledge as to his own acts, and on information and belief as to all others, alleges as follows:

## OVERVIEW

1.    This matter arises out of the actions taken by staff members at Delaware Valley Regional High School ("DVRHS"), under the auspices of the Delaware Valley Regional High School Board of Education ("Board"), the Attorney General of New Jersey ("AG"), and the New Jersey Department of Education ("NJDOE"), to socially transition Jane Doe ("Jane"), a minor child, from female to male without informing the plaintiff John Doe, her father, or seeking his consent. Mr. Doe has repeatedly expressed his objections to such acts and has been advised that the acts shall continue regardless, purportedly due to requirements of state discrimination law and policy.

1

2.      The Board's actions constitute deliberate interference with Mr. Doe's fundamental constitutional right to care for and raise his child, a liberty interest under the Fourteenth Amendment of the United States Constitution, as determined by the Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality). Such acts, and the enforcement of the laws and policies on which such interference purportedly is based, must immediately be restrained and enjoined since Mr. Doe is being deprived of his constitutional right to make critical child-rearing decisions concerning the care, custody, and control of his minor child. Defendants' actions are subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest, a standard which cannot be satisfied by defendants under the circumstances presented.

3.      Defendants' actions and the laws and policies upon which they are purportedly based also violate Mr. Doe's rights to be the primary person responsible for his child's education, in violation of 20 U.S.C. §3401(3).

4.      Defendants' actions and the laws and policies upon which they are purportedly based also violate Mr. Doe's parental rights as guaranteed by the New Jersey Constitution.

5.      Mr. Doe seeks to vindicate his fundamental rights of parenting, including the rights to have primary authority in the upbringing of his children and the right to make healthcare and medical decisions for his child without interference by the State. Thus, Mr. Doe seeks a Declaratory Judgment that defendants' acts and public policies are unconstitutional, an injunction prohibiting such interference with his constitutional and statutory rights and against the enforcement of contrary laws and public policies, and an award of monetary damages against the Board, the Superintendent, and individual employees of the school district who have violated his fundamental rights.

## THE PARTIES

1.      John Doe ("Mr. Doe") is a loving and caring father of minor child Jane Doe

("Jane"), who is a student at DVRHS, which is a regional high school located at 19 Senator Stout Road, Frenchtown, New Jersey.

2.      Defendant Scott McKinney ("McKinney") is an individual residing at 233 Short Hills Drive, Bridgewater, New Jersey, is the Superintendent of DVRHS, and as such is the chief executive of the school district. He is named individually and in his official capacity.

3.      Defendant Ashley Miranda ("Miranda") is an individual residing at 406 Saddle Ct. Flemington, New Jersey 08822. She is named individually and in her official capacity.

4.      The Board is duly organized and formed pursuant to the laws of the State of New Jersey with respect to the establishment of school districts and school boards and receives federal funding.

5.      Matthew J. Platkin is the Attorney General of the State of New Jersey and is named only in his official capacity.

6.      Defendant Angelica Allen-McMillan is Acting Commissioner of the NJDOE and is named only in her official capacity.

7.      John Roes 1-10 is a fictitious name for Board members and/or employees who aided in the violations of Mr. Doe's rights as set forth herein.

8.      All defendants are state actors.

## JURISDICTION AND VENUE

9.      This action is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, such that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

10.     Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b) since defendants reside in the District, and the events and omissions complained of occurred in the District.

3

## FACTS COMMON TO ALL COUNTS

12.     Jane is a minor child who has a documented diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD") and Unspecified Mental Disorder ("UMD").

13.     Jane, who endured the childhood trauma of the death of her mother, has been under the care of a therapist for depression, anxiety, and gender confusion since April 21, 2022. Mr. Doe and mental health professionals have agreed to take a cautious approach to Jane's gender confusion given her underlying trauma and psychiatric co-morbidities.

14.     The Board has a policy titled "5756 - Transgender Students," ("Board Policy 5756") a true copy of which is attached hereto as **Exhibit A** and which is incorporated herein by reference, which provides, in part:

> The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court-ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression.

15.     The NJDOE published guidance to New Jersey public schools encourages them to take a "student-centered approach" to students who believe themselves to be transgender, which declares, "school district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun use, and parental communications." A true copy of such guidance is attached hereto as **Exhibit B** and is incorporated herein by reference.

16.     Upon information and belief, the AG is actively litigating the legal position that although such policy is merely guidance, school districts must follow it since to do otherwise would violate the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.*, which provides certain anti-discrimination provisions with respect to gender identity.

17.    When a student's name and pronouns are changed by a school so that the student can live as the opposite sex while at school and/or elsewhere, the school is initiating a social transition. Social transition is a psychotherapeutic intervention and is not a neutral act. Cass, H., *Independent review of gender identity services for children and young people: Interim report* (2022).

18.    Gender dysphoria is considered a serious mental-health condition that requires professional help. "Since it is impossible to definitively delineate the contribution of various factors contributing to gender identity development for any given young person, a comprehensive clinical approach is important and necessary" *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, WPATH, International J. Trans. Health 2022, Vol. 23, No. S1-S258 (2022) ("WPATH").

19.    Parents must be permitted to seek a mental health evaluation prior to any psychological intervention. Mental health providers "should provide guidance to parents/caregivers and supports to a child when a social gender transition is being considered" so that the parents can succeed in "making informed decisions about the advisability and/or parameters of a social transition for their child." WPATH at S78

20.    As a freshman at DVRHS, Jane participated in an extracurricular club known as Students Advocating for Equality ("SAFE"), which purportedly exists or claims to exist to "promote open discussion and awareness about modern cultures and topics surrounding intersectionality while aiming to make positive contributions to our community and school."

21.    Miranda is the staff advisor of SAFE and is neither a state licensed medical doctor nor psychologist.

22.    Jane attended a SAFE meeting and expressed to defendant Miranda that she would like to undergo a social transition from female to male in school. Miranda immediately affirmed

Jane's expressed identity and began to facilitate Jane's social transition.

23. Miranda did not ask Jane about her mental health history, her history of trauma, or whether Jane was currently under the care of a mental health professional.

24. Contrarily, Miranda asked Jane if she would like to change her name and pronouns and be known only as a male at school, to which Jane agreed.

25. Miranda sent a communication to the entire staff of DVRHS other than two teachers. In such communication, Miranda informed staff of Jane's name change and advised that all such staff were required thereafter to use the alternate male name by which Jane desired to be called. Staff were also informed that Mr. Doe was not to be informed of Jane's social transition.

26. The only exception is that Miranda decided not to send the communication to two teachers, both of whom have contacts with members of the Doe household. The purpose of excluding such teachers, Sarah Hall and Kari Gursky, from the email was to keep Mr. Doe from learning of Jane's social transition which was taking place at DVRHS.

27. Thereafter, when communicating with Mr. Doe about his daughter, and before Mr. Doe eventually learned of the social transition of his daughter at DVRHS, the school always uses Jane's given female name, which was done for the purpose of concealing Jane's social transition at DVRHS, thus demonstrating a knowing interference with Mr. Doe's rights.

28. In December 2023, months after it commenced, Mr. Doe learned of Jane's social transition at school when another parent called Jane by a boy's name in his presence. Only after Mr. Doe inquired of the parent why the parent was calling Jane by a boy's name, the parent explained to Mr. Doe that Jane was being called by such name at school since she was being socially transitioned.

29. Upon learning that Jane had been provided with a separate identity at school and that DVRHS and its staff was intentionally concealing such fact from him, and due to his

6

daughter's distress at living a second life, Mr. Doe placed Jane on home instruction until he could share Jane's personal and therapeutic history with McKinney, Ashley, and the Board (the "Board Defendants").

30. On December 8, 2023, Mr. Doe met with DVRHS administration as well as Miranda, who indicated that she was not aware of Jane's ADHD and UMD diagnoses or her past trauma when she facilitated Jane's social transition. Miranda also advised that she was unaware that Jane was under the care of a therapist at Mr. Doe's parental direction and with his consent.

31. Mr. Doe informed the District that he and Jane's therapist were not in agreement with Jane's social transition and expressly denied his consent to the continuance of Jane's social transition at school.

32. The District advised that it would continue to have Jane called by a male name until such time as Jane indicated otherwise, such that it specifically and deliberately insisted on interfering directly with protected aspects of Mr. Doe's parent-child relationship.

33. Following the meeting, a Cease and Desist letter was served on the Board Defendants. The Cease and Desist letter asserted, among other things, that Mr. Doe's parental rights were being violated. A true copy of the Cease and Desist letter is attached hereto as **Exhibit C**, and is incorporated herein by reference.

34. Thereafter on December 8, 2023, a letter was forwarded by Mr. Doe's attorneys which confirmed the critical events of the meeting that had occurred, reiterated that a Cease and Desist was served, and renewed the demand that the Board Defendants cease and desist from socially transitioning Jane against Mr. Doe's parental judgment as to Jane's best interests. A true copy of such letter is attached hereto as **Exhibit D** and is incorporated herein by reference.

35. On December 22, 2023, the Board Defendants responded via legal counsel, who advised that Jane was approved for home instruction, but "that the District will continue to abide

by federal and state law as well as the Department of Education guidance regarding transgender students to ensure that the District is not discriminating against a student based on gender identity or expression." A true copy of such letter is attached hereto as **Exhibit E** and is incorporated herein by reference.

36.    Consequently, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship and expressed deliberate indifference to Mr. Doe's fundamental rights and further interfered with such constitutional and statutory rights by establishing a policy that the only way Jane could return to the classroom is if Mr. Doe chose to waive his constitutional and statutory parental rights and to abide by the Board Defendants' violations thereof, based on the Board Defendants' interpretation of law and public policy, as to Policy 5756's guidance.

37.    On January 2, 2024, counsel for the Board Defendants further noted in an email to Mr. Doe's attorney that the school district had a goal to implement "home instruction" for Jane in a public library, but that "to ensure there is no misunderstanding," Mr. Doe should "know that during home instruction the teachers will comply with district policy, NJDOE guidance, and federal and state laws regarding A.H.'s name preference."

38.    Consequently, the Board Defendants again specifically and deliberately interfered with constitutionally and statutorily protected aspects of Mr. Doe's parent-child relationship, expressed deliberate indifference to Mr. Doe's fundamental rights, and further interfered with such constitutional and statutory rights by establishing a policy that made it impossible for Jane to receive a public education unless Mr. Doe yielded his constitutional and statutory parental rights.

39.    There is no fundamental constitutional right for Jane to socially transition, and the Board Defendants have no compelling government interest in requiring the social transition of Jane to proceed. Moreover, even if such compelling government interest did exist, which it does

Case 3:24-cv-00107-GC-JBD    Document 1    Filed 01/05/24    Page 9 of 19 PageID: 9

not, the Board Defendants' actions are not narrowly tailored to achieve such interest.

40.    The AG and NJDOE have no compelling government interest in promulgating and enforcing laws and public policies that interfere with parents' fundamental constitutional and federal statutory rights, as is the case with Mr. Doe, and even if such compelling government interest did exist, which it does not, the AG and NJDOE's actions are not narrowly tailored to achieve such interest.

41.    Mr. Doe has no other viable alternative other than to send Jane to DVRHS. In light of the willful and deliberate violations to his rights that have occurred, and the promise of continued violations of the same rights based on the purported basis of Board Policy 5756, NJDOE guidance, and federal and state laws which alleged to require as much, Mr. Doe hereby seeks the immediate protection of his parental rights.

42.    Such rights also include Mr. Doe's parental right for Jane to receive "maintenance and support for a thorough and efficient system of free public school instruction," in keeping with N.J. Cont. Art. 8 §1.

43.    Further, given the District's intransigent insistence that even during what purportedly is "home instruction" it will deliberately violate Mr. Doe's rights, Mr. Doe seeks appointment of an independent monitor to ensure that defendants do not interfere with his rights upon Jane's return to school.

## FIRST COUNT
### (Declaratory Judgment 28 U.S.C. § 2201)

1.    Mr. Doe repeats and reasserts each and every allegation above as is fully set forth herein at length.

2.    An actual controversy exists among the parties hereto within the jurisdiction of this Court as to their rights and responsibilities which is appropriate for declaration of the rights and other legal relations among and between them with respect to the matters set forth above.

3.      "It is cardinal with ... [the United States Supreme Court] that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality).

4.      The rights to "to teach and the right of parents to engage ... so to instruct their children ... are within the liberty of the [Fourteenth] Amendment." *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Troxel, supra,* 530 U.S. at 77 (Thomas, J., concurring).

5.      The United States Supreme Court has thus "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66

6.      Accordingly, "so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69

7.      There is a "presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69

8.      The United States Supreme Court's "decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland*, 431 U.S. 494, 503-504 (1977) (plurality).

9.      20 *U.S.C.* §3401(3) is the supreme law of the land, and provides, in pertinent part, that "parents have the primary responsibility for the education of their children, and States, localities, and private institutions have the primary responsibility for supporting that parental role."

10.     There is no fundamental right of minor children under the United States Constitution to socially transition without their parents' knowledge or consent.

11.    The NJDOE's Policy 5756 violates Mr. Doe's fundamental constitutional rights under the Fourteenth Amendment's Due Process Clause, without limitation, since it promites the substitution of the judgment of school districts, school administrators, and school staff members for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health, should social transitioning lead to the child's desire to progress with medical transitioning, and, thus, is void and unenforceable.

12.    To the extent that the NJLAD, *N.J.S.A.* 10:5-1 *et seq.* or other state law is intended to preclude parental knowledge and consent of social transitioning of their minor children in schools, it violates fundamental constitutional parental rights under the Fourteenth Amendment's Due Process Clause, since it substitutes the judgment of public officials for that of parents with respect to important aspects of their children's mental health, welfare, and ultimately physical health should social transitioning lead to the child's desire to progress with medical transitioning and, thus, is void and unenforceable.

13.    The NJDOE Policy 5756 and Board Policy 5756 violate fundamental constitutional parental rights since they substitute the judgment of public officials for that of parents with respect to important aspects of their children's education, including related to issues concerning mental health, welfare, and physical health, should social transitioning lead to the child's desire to progress with medical transitioning, and, thus, are void and unenforceable.

14.    The NJDOE's guidance violates 20 *U.S.C.* §3401(3), since the state's school districts receive federal funding, and the guidance removes parents from having primary responsibility for the education of their children and places the primary responsibility for the education of children as to social transitioning with state and localities that do not necessarily support the parental role, but rather interfere with the parental role, as in Mr. Doe's case.

15.    To the extent that the NJLAD is intended to preclude parental knowledge and

11

consent of social transitioning of their minor children, it is contrary to and cannot be harmonized with the responsibilities of school districts in the state to support parents' educational upbringing of their minor children per 20 *U.S.C.* §3401(3) and, thus, is unconstitutional as violating the Supremacy Clause, *U.S. Const.* Art. VI, Cl. 2, such that it void and unenforceable.

16.     The District's Policy 5756 is unconstitutional as violating the Supremacy Clause, *U.S. Const.* Art. VI, Cl. 2, since the district receives federal funding and is thus required to comply with 20 *U.S.C.* §3401(3), which it is violating.

17.     To the extent that any other federal or state laws or policies on which defendants, or some of them, purport to rely in further proceeding with Jane's social transition, such laws and/or policies are void and unenforceable by reason of their violating the Fourteenth Amendment's Due Process Clause and/or 20 *U.S.C.* §3401(3), in whole or in part, for the reasons set forth above.

18.     There is no compelling governmental interest in the State, the Board Defendants, or anyone operating under the Board's authority to socially transition a minor child without the fully informed consent of the child's parents.

19.     The Board Defendants have shown an outward contempt of Mr. Doe's parental rights and have promised to compel Jane's continued social transition despite Mr. Doe's demands to the contrary such that his constitutional and statutory parental rights are knowingly and contumaciously being impaired, such that independent monitoring of the District's practices as related the violation of Mr. Doe's rights must be required.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

A.     Declaring that so long as he is a fit parent, which is presumed, Mr. Doe has a fundamental right pursuant to the Fourteenth Amendment's Due Process Clause to direct the

12

upbringing of his child including, without limitation, with respect to all issues related to his child's mental health, welfare, and physical health, without interference by defendants in the absence of a compelling governmental interest which is narrowly tailored to achieve such interest;

B.      Declaring that there is no compelling governmental interest in any of the defendants, all of whom and which are state actors, to socially transitioning a child without the fully informed consent of the child's parents or legal guardians;

C.      Declaring the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, to be unconstitutional and void under the Fourteenth Amendment's Due Process Clause to the extent that it is would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

D.      Declaring the NJDOE's Policy 5756 and Board Policy 5756 to be unconstitutional and void under the Fourteenth Amendment's Due Process Clause since they deprive parents of fully informed knowledge and consent with respect to aspects of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

E.      Declaring the NJDOE's guidance to be in violation of 20 *U.S.C.* §3401(3), such that it is unconstitutional and void under Article VI, Cl. 2 of the United States Constitution;

F.      Declaring the NJLAD, *N.J.S.A.* 10:5-1 *et seq.*, to be in violation of 20 *U.S.C.* §3401(3), to the extent that it is deprives parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular such that it is unconstitutional and void under Article VI, Cl. 2 of the United States Constitution;

G.     Declaring the District's Policy 5756 to be in violation of 20 *U.S.C.* §3401(3), such that it is unconstitutional and void under Article VI, Cl. 2 of the United States Constitution;

H.     Declaring that there is no fundamental constitutional right for a minor to socially transition;

I.     Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

J.     Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

K.     Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

L.     Providing temporary restraints and preliminary injunctive relief as needed;

M.     Compelling the Board to provide mainstream classroom instruction to Jane;

N.     Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole expense, upon Jane's return to school;

O.     Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs;

P.     Awarding such other and further relief as may be equitable and just.

14

## SECOND COUNT
### (42 U.S.C. § 1983 – Parental Rights)

1.      Mr. Doe repeats and reasserts each and every allegation above as is fully set forth herein at length.

2.      The Board Defendants have knowingly and contumaciously committed and continue to commit a constitutional tort by socially transitioning Mr. Doe's minor daughter without parental notification or consent so as to frustrate his right to direct the upbringing of his child including, without limitation, issues related to his child's mental health, welfare, and physical health, without interference by the state in violation of Mr. Doe's fundamental liberty interests as set forth above, in violation of the Fourteenth Amendment's Due Process clause.

3.      There is no compelling, significant, or other reasonable governmental interest in the Board Defendants' socially transitioning Jane in violation of Mr. Doe's fundamental constitutional parental rights as aforesaid, and their acts in such regard otherwise are arbitrary, capricious, and/or irrational.

4.      Defendants' actions are purportedly based on reliance on federal and state law and policy which compels such actions all of which such laws and policies including, without limitation, N.J.S.A. 10:5-1 *et seq.*, and the NJDOE's Policy 5756, enforcement and promulgation of which by state actors violates the federal constitutional and statutory rights of parents as aforesaid, such that they violate the Supremacy Clause of the Constitution.

5.      By their actions, defendants have deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution, *to wit,* the Fourteenth Amendment of the Constitution, and are causing severe and permanent damages, including, without limitation, emotional distress, economic damages, physical harm, and consequential damages.

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants, as follows:

15

A.    Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B.    Punitive Damages against the Board Defendants and John Roes 1-10 only;

C.    Consequential Damages against the Board Defendants and John Roes 1-10 only;

D.    Permanently restraining and enjoining the Board Defendants, and anyone acting under their authority, from socially transitioning the plaintiff's daughter or otherwise interfering with his parental rights;

E.    Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

F.    Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

G.    Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

H.    Appointing an independent monitor to protect Mr. Doe's parental rights, at the Board's sole cost and expense, upon Jane's return to school;

I.    Awarding the plaintiff all costs of suit, including reasonable attorneys' fees and costs, per statute;

J.    Awarding interest as allowed by law;

K.    Awarding such other and further relief as may be equitable and just.

## THIRD COUNT
### (Violation of N.J.S.A. 10:6-2 *et seq.*)

1.    Mr. Doe repeats and reasserts each and every allegation above as if fully set forth herein at length.

2.    Defendants, by their conduct, have acted under color of law so as to interfere and/or attempt to interfere by means of express or implied threats, intimidation, and coercion with the exercise and enjoyment by Mr. Doe of his due process rights, privileges, and/or immunities secured by the Constitution or laws of the United States, and the New Jersey Constitution as aforesaid, including, without limitation, the right to parent a minor child who is receiving a thorough and efficient education, such that they have caused Mr. Doe damage in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 *et seq.*

WHEREFORE, the plaintiff demands judgment in his favor, and against defendants as follows:

A.    Compensatory Damages against the Board Defendants and John Roes 1-10 only;

B.    Punitive Damages against the Board Defendants and John Roes 1-10 only;

C.    Consequential Damages against the Board Defendants and John Roes 1-10 only;

D.    Permanently restraining and enjoining the AG and anyone acting under him from enforcing the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* or any other state law to the extent that it may deprive parents of fully informed knowledge and consent with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

E.    Permanently restraining and enjoining the Acting Commissioner of the NJDOE and anyone acting under her from providing guidance to school districts in accordance with Policy 5756 or otherwise which would deprive parents of fully informed knowledge and consent

17

with respect to any aspect of their children's education including, without limitation, issues related to his child's mental health, welfare, and physical health, and social transitioning in particular;

F.      Permanently restraining and enjoining the District, Superintendent, the Board, and all employees thereof, from enforcing Board Policy 5756 and otherwise acting to socially transition the plaintiff's daughter without his fully informed knowledge and consent;

G.      Appointing an independent monitor to protect Mr. Doe's parental rights, at the sole expense of the school district, upon his daughter's return to school;

H.      Awarding the plaintiff all costs of suit, including reasonable legal fees and costs, per statute;

I.      Awarding interest as allowed by law;

J.      Awarding such other and further relief as may be equitable and just.

## JURY DEMAND

The plaintiff demands trial by jury on all Counts so triable.

> **MURRAY-NOLAN BERUTTI LLC**
> Attorneys for Defendants/Counterclaimants/Third Party Plaintiffs.
>
> */ Ronald A. Berutti*
>
> _____
> Ronald A. Berutti

Dated: January 5, 2024

## VERIFICATION UNDER OATH

John Doe of full age, being duly sworn upon his or her oath according to law deposes and says:

1. I am the plaintiff in this matter.

2. I have read the Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

_____
John Doe

Dated: January 5, 2024

# EXHIBIT A



**Delaware Valley Regional Board of Education**

Home



< Prev    Next >

To Regulation

Search District Policies

District Policies TOC

## District Policy

### 5756 – TRANSGENDER STUDENTS

Section: Students
Date Created: October 2014
Date Edited: May 2019

**M**

The Board of Education is committed to providing a safe, supportive, and inclusive learning environment for all students. The New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12(11)(f), generally makes it unlawful for schools to subject individuals to differential treatment based on gender identity or expression. Title IX of the Education Amendments of 1972 ("Title IX") specifically prohibits discrimination on the basis of sex in Federally-funded education programs and activities [20 U.S.C. § 1681(a)].

N.J.S.A. 18A:36-41 directs the Commissioner of Education to establish guidelines outlined in this Policy to provide direction for schools in addressing common issues concerning the needs of transgender students, and to assist schools in establishing policies and procedures that ensure a supportive and nondiscriminatory environment for transgender students.

Definitions/Terms

A safe and supportive environment within a school begins with understanding and respect. The Board believes students, teachers, and administrators should be provided with common terminology associated with gender identity. The terms listed below are commonly used by advocacy and human rights groups, however students may prefer other terms to describe their gender identity, appearance, or behavior. It is recommended school personnel discuss with the student the terminology and pronouns each student has chosen.

"Gender identity" means a person's internal, deeply held sense of gender. All people have a gender identity, not just transgender people. For transgender people, the individual's internal gender identity is not the same as the gender assigned at birth.

"Gender expression" means external manifestations of gender, expressed through a person's name, pronouns, clothing, haircut, behavior, voice, and/or body characteristics. Society identifies these cues as masculine and feminine, although what is considered masculine or feminine changes over time and varies by culture.

"Assigned sex at birth (ASAB)" refers to the biological sex designation recorded on a person's birth certificate upon the initial issuance of that certificate, should such a record be provided at birth.

"Gender assigned at birth" refers to the gender a child is assigned at birth or assumed to be, based on their biological sex assigned at birth.

"Sexual orientation" describes a person's enduring physical, romantic, and/or emotional attraction to another person. Gender identity and sexual orientation are not the same. A transgender person may be straight, lesbian, gay, bisexual, or asexual. For example, a person who transitions from male to female and is attracted solely to men may identify as a straight woman.

"Transgender" is a term for an individual whose gender identity and/or gender expression differs from those typically associated with the sex and gender assigned at birth.

"Transition" is the process by which a transgender person recognizes that their authentic gender identity is not the same as the gender assigned at birth, and develops a more affirming gender expression that feels authentic. Some individuals socially transition, for example, through dress, use of names and/or pronouns. Some individuals may undergo physical transition, which might include hormone treatments and surgery. School district personnel should avoid the phrase "sex change," as it is an inaccurate description of the transition process; the process is more accurately described as "gender-confirming."

"LGBTQ" is an acronym for "lesbian, gay, bisexual, transgender, and queer/questioning."

"Gender nonconforming" describes a person whose gender expression does not conform to the gender expectations of their family or community. Gender nonconformity is not necessarily an indication that a youth is transgender; many non-transgender youth do not conform to stereotypical expectations.

"Gender expansive, Gender diverse, Gender fluid, Gender non-binary, A gender, Gender queer" are terms that convey a wider, more flexible range of gender identity and/or expression than typically associated with the binary gender system. For example, students who identify as gender queer or gender fluid might not identify as boys or girls; for these students, the non-binary gender identity functions as the student's gender identity.

"Cisgender" refers to individuals whose gender identity, expression, or behavior conforms with those typically associated with their sex assigned at birth.

Student-Centered Approach

The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court-ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression.

There may be instances where a parent of a minor student disagrees with the student regarding the name and pronoun to be used at school and in the student's education records. In the event a parent objects to the minor student's name change request, the Superintendent or designee should consult the Board Attorney regarding the minor student's civil rights and protections under the NJLAD. School staff members should continue to refer to the student in accordance with the student's chosen name and pronoun at school and may consider providing resource information regarding family counseling and support services outside of the school district.

School districts should be mindful of disputes between minor students and parents concerning the student's gender identity or expression. Many support resources are available through advocacy groups and resources from the New Jersey Department of Children and Families and New Jersey Department of Education's "Child Abuse, Neglect, and Missing Children" webpage.

The Principal or designee should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun to use, and parental communications. A transgender student shall be addressed at school by the name and pronoun chosen by the student, regardless of whether a legal name change or change in official school records has occurred. The school shall issue school documentation for a transgender student, such as student identification cards, in the name chosen by the student. A transgender student shall be allowed to dress in accordance with the student's gender identity.

The Principal or designee should also discuss with the student, and any other individuals at the student's request, the risks associated with the student's transgender status being inadvertently disclosed. For example, the Principal or designee should inform the student the transgender status may be revealed due to other students' discussions at home. The Principal or designee should work with the transgender student to ensure awareness of activities and events that may inadvertently disclose the transgender student's status.

Safe and Supportive Environment

The Board developed and adopted this Policy to ensure that its schools provide a safe and supportive learning environment that is free from discrimination and harassment for transgender students, including students going through a gender transition. Gender-based policies, rules, and practices can have the effect of marginalizing, stigmatizing, and excluding students, whether they are gender nonconforming or not.

The Superintendent or designee shall review and update existing policies and procedures, including those regarding classroom activities, school ceremonies, school photographs, and dress codes, to verify transgender students are not excluded. In addition, the school district shall take the following steps to establish and maintain a nondiscriminatory environment for all students, including transgender and transitioning students:

- The school district must comply with N.J.S.A. 18A:37-15 and N.J.A.C. 6A:16-7.7, which prohibit harassment, intimidation, and bullying. The Board is required to develop, adopt, and implement a Policy in accordance with N.J.S.A. 18A:37-15 and N.J.A.C. 6A:16-7.7 that prohibits harassment, intimidation, or bullying on school property, at a school-sponsored function, or on a school bus. If harassment, intimidation, or bullying based on gender identity creates a hostile environment, the school must take prompt and effective steps to end the harassment, intimidation, or bullying, prevent its recurrence, and, as appropriate, remedy its effects.

- The Superintendent or designee should ensure training is provided to school staff members on sensitivity and respect towards transgender students.

- Social and Emotional Learning (SEL) concepts should be incorporated into school culture and curricula.

- The school district may seek a variety of professionals, including counselors and school psychologists, to provide emotional supports for all students who demonstrate a need. The Superintendent or designee shall ensure school counselors are knowledgeable regarding issues and concerns relevant to transgender students, students facing other gender identity issues, or students who may be transitioning.

- Student dress codes should not be enforced more strictly for transgender and gender nonconforming students than for other students.

- The school district shall honor and recognize a student's asserted gender identity, and shall not require any documentation or evidence in any form, including diagnosis, treatment, or legal name change.

- A school's obligation to ensure nondiscrimination on the basis of gender identity requires schools to provide transgender students equal access to educational programs and activities, even in circumstances in which other students, parents, or community members raise objections or concerns.

Confidentiality and Privacy

School staff members may not disclose information that may reveal a student's transgender status except as allowed by law. The Principal or designee is advised to work with the student to create an appropriate confidentiality plan regarding the student's transgender or transitioning status.

The school district shall keep confidential a current, new, or prospective student's transgender status. Schools should address the student using a chosen name and the student's birth name should be kept confidential by school and school staff members.

Due to a specific and compelling need, such as the health and safety of a student or an incident of bias-related crime, the school district may be obligated to disclose a student's status. In this event, the Principal or designee should inform the student the school or school district intends to disclose the student's transgender status for the student's protection and well-being. Prior to disclosure, the student should be given the opportunity to personally disclose that information. The school district should make every effort to ensure any disclosure is made in a way that reduces or eliminates the risk of re-disclosure and protects the transgender student from further harassment. Those measures may include the facilitation of counseling for the student and the student's family to facilitate the family's acceptance and support of the student's transgender status.

During a harassment, intimidation, or bullying investigation the school district is obligated to develop a procedure to report, verbally and in writing, an act of harassment, intimidation, and bullying committed by an adult or youth against a student, pursuant to N.J.A.C. 6A:16-7.7(a)2viii. In this instance, the Principal or designee should inform the student of the school's obligation to report the findings of the harassment, intimidation, and bullying investigation pursuant to N.J.S.A. 18A:37-15(d), which permits the parents of the students who are parties to the investigation to receive information about the investigation in accordance with Federal and State law and regulation. Under harassment, intimidation, and bullying legal requirements, parents are entitled to know the nature of the investigation; whether the district found evidence of harassment, intimidation, or bullying; or whether disciplinary action was imposed or services provided to address the incident of harassment, intimidation, or bullying.

The Principal or designee shall take into account the circumstances of the incident when providing notification to parents of all students involved in the reported harassment, intimidation, or bullying incident and when conveying the nature of the incident, including the actual or perceived protected category motivating the alleged offense, pursuant to N.J.A.C. 6A:16-7.7(a)2viii(2).

Disclosure of personally identifiable information from a student's education record to other school officials within the school district, whom the school district has determined have a legitimate educational interest in the information, may be permissible under Family Educational Rights and Privacy Act (FERPA) (34 C.F.R. § 99.31(a)(1)). The school district shall make a concerted effort to ensure school officials obtain access to only those education records in which they have legitimate educational interests.

The school district shall comply with all laws and regulations regarding the confidentiality of student records and student privacy, including the requirements set forth at 20 U.S.C. § 1232g, Family Educational Rights and Privacy Act; 34 CFR Part 99, Family Educational Rights and Privacy; 20 U.S.C. § 1232h, Protection of Pupil Rights; 34 CFR Part 98, Student Rights in Research, Experimental Programs, and Testing; P.L. 104-191, Health Insurance Portability and Accountability Act; 45 CFR Part 160, General Administrative Requirements; 20 U.S.C. § 7917, Transfer of school disciplinary records; 42 CFR Part 2, Confidentiality of Alcohol and Drug Abuse Patient Records; N.J.S.A. 18A:40A-7.1, Confidentiality of certain information provided by pupils, exceptions; N.J.A.C. 6A:16-3.2, Confidentiality of student alcohol and other drug information; N.J.S.A. 18A:36-19, Pupil Records, creation, maintenance and retention, security and access, regulations, nonliability; N.J.S.A. 2A:4A-60, Disclosure of juvenile information, penalties for disclosure; N.J.A.C. 6A:32-7, Student Records; N.J.A.C. 6A:14-2.9, Student records; as well as all other existing Federal and State laws and rules pertaining to student records and confidentiality.

School Records

If a student has expressed a preference to be called by a name other than their birth name, permanent student records containing the student's birth name should be kept in a separate, confidential file. This file should only be shared with appropriate school staff members after consultation with a student. A separate file containing records bearing the student's chosen name may also be kept. If the student has previously been known at school or in school records by a birth name, the Principal or designee should direct school staff members to use the student's chosen name and not the student's birth name.

To ensure consistency among teachers, school administrators, substitute teachers, and other school staff members, every effort should be made to immediately update student education records (for example, attendance records, transcripts, Individualized Education Programs (IEP), etc.) with the student's chosen name and gender pronouns, consistent with the student's gender identity and expression, and not circulate records with the student's birth name, unless directed by the student.

- The school district shall report to the New Jersey Department of Education (NJDOE) through NJ SMART a student's name or gender based upon that student's chosen name and corresponding gender identity. Changing the name or gender identity from what was reported in previous years will not affect the reliability of the data reported.

- If the school district changes a student's name or gender identity, it must also maintain locally a separate record reflecting the student's legal name and sex assigned at birth until receipt of documentation of a legal change of name or gender.

Activities

With respect to gender-segregated classes or athletic activities, including intramural and interscholastic athletics, all students must be allowed to participate in a manner consistent with their gender identity.

The school district shall:

- Provide transgender students with the same opportunities to participate in physical education as other students in accordance with their gender identity;

- Permit a transgender student to participate in gender-segregated school activities in accordance with the student's gender identity;

- Permit and support the formation of student clubs or programs regarding issues related to lesbian, gay, bisexual, transgender, and queer/questioning (LGBTQ) youth; and

- Offer support in the creation of peer led educational groups.

Use of Facilities

All students are entitled to have access to restrooms, locker rooms, and changing facilities in accordance with their gender identity to allow for involvement in various school programs and activities.

In all cases, the Principal or designee must work with the student and school staff members so all parties are aware of facility policies and understand the student may access the restroom, locker room, and changing facility that corresponds to the student's gender identity. While some transgender students will want this arrangement, others may be uncomfortable with it. Transgender students who are uncomfortable using a sex-segregated restroom should be provided with a safe and adequate alternative, such as a single "unisex" restroom or the nurse's restroom. Similarly, some transgender students may be uncomfortable using the changing facilities that correspond to the student's gender identity. Non-transgender students should also be afforded the option to use a private facility, such as a unisex facility or the nurse's restroom, should they feel uncomfortable.

- The school district shall allow a transgender student to use a restroom or locker room based on the student's gender identity.

- Reasonable alternative arrangements shall be made if needed to ensure a student's safety and comfort. This direction for accommodations should come from the student.

The Superintendent or designee will make available to school staff members a variety of resources regarding professional development opportunities as sourced by the NJDOE as well as developmentally appropriate information for students regarding LGBTQ issues.

The Board adopts this Policy to help school and district administrators take steps to create an inclusive environment in which transgender and gender nonconforming students feel safe and supported, and to ensure each school provides equal educational opportunities for all students, in compliance with N.J.A.C. 6A:7-1.1 et

seq.

N.J.S.A. 18A:36-41; 18A:37-15
N.J.A.C. 6A:7-1.1 et seq.; N.J.A.C. 6A:16-7.7
New Jersey Department of Education – October 2018
Transgender Student Guidance for School Districts

Adopted: 24 November 2014

Revised: 28 September 2015

Revised: 20 May 2019

# EXHIBIT B

 **Transgender Student Guidance for School Districts**

The New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-12(11)(f), generally makes it unlawful for schools to subject individuals to differential treatment based on race, creed, color, national origin, ancestry, marital status, domestic partnership or civil union status, sex, affectional or sexual orientation, gender identity or expression, disability or nationality.

Title IX of the Education Amendments of 1972 ("Title IX") specifically prohibits discrimination on the basis of sex in federally-funded education programs and activities [20 U.S.C. § 1681(a)].

*N.J.S.A.* 18A:36-41 directs the Commissioner of the New Jersey Department of Education to establish guidelines to provide direction for schools in addressing common issues concerning the needs of transgender students, and to assist schools in establishing policies and procedures that ensure a supportive and nondiscriminatory environment for transgender students.

This guidance was prepared by the New Jersey Department of Education after a review of policies and guidance from other states and organizations, and in consultation with educators, counselors, school psychologists, advocates, and parents. The intended purpose of this guidance is to help school and district administrators take steps to create an inclusive environment in which transgender and gender nonconforming students feel safe and supported, and to ensure that each school provides equal educational opportunities for all students, in compliance with *N.J.A.C.* 6A:7-1.1 *et seq.*

Communication with the student is paramount. Schools and school districts are encouraged to communicate openly, albeit confidentially, with students regarding their transgender status or gender identity. Proper communication with the student will ensure that appropriate steps are taken to determine a student's preferences and address potential privacy concerns and associated risks to the student's well-being.

1. **Definitions**

   A safe and supportive environment within a school begins with understanding and respect. Students, teachers, and administrators should be provided with common terminology associated with gender identity. Although these terms are commonly used by advocacy and human rights groups, students may prefer other terms to describe their gender identity, appearance, or behavior.

   - **Gender Identity** means a person's internal, deeply held sense of gender. All people have a gender identity, not just transgender people. For transgender people, the individual's internal gender identity is not the same as the gender assigned at birth.
   - **Gender Expression** means external manifestations of gender, expressed through a person's name, pronouns, clothing, haircut, behavior, voice, and/or body characteristics. Society

identifies these cues as masculine and feminine, although what is considered masculine or feminine changes over time and varies by culture.

- **Assigned Sex at Birth (ASAB)** refers to the biological sex designation recorded on a person's birth certificate upon the initial issuance of that certificate, should such a record be provided at birth.
- **Gender Assigned at Birth** refers to the gender a child is assigned at birth or assumed to be, based on their biological sex assigned at birth.
- **Sexual Orientation** describes a person's enduring physical, romantic, and/or emotional attraction to another person. Gender identity and sexual orientation are not the same. A transgender person may be straight, lesbian, gay, bisexual, or asexual. For example, a person who transitions from male to female and is attracted solely to men may identify as a straight woman.
- **Transgender** is a term for an individual whose gender identity and/or gender expression differs from those typically associated with the sex and gender assigned at birth.
- **Transition** is the process by which a transgender person recognizes that their authentic gender identity is not the same as the gender assigned at birth, and develops a more affirming gender expression that feels authentic.  Some individuals socially transition, for example, through dress, use of names and/or pronouns. Some individuals may undergo a physical transition, which might include hormone treatments and surgery. School district personnel should avoid the phrase "sex change," as it is an inaccurate description of the transition process; the process is more accurately described as "gender-confirming."
- **LGBTQ** is an acronym for "lesbian, gay, bisexual, transgender, and queer/questioning."
- **Gender nonconforming** describes a person whose gender expression does not conform to the gender expectations of their family or community. Gender nonconformity is not necessarily an indication that a youth is transgender; many non-transgender youth do not conform to stereotypical expectations.
- **Gender Expansive/Gender Diverse/Gender Fluid/Gender Non-Binary/Agender/Gender Queer** are terms that convey a wider, more flexible range of gender identity and/or expression than typically associated with the binary gender system. For example, students who identify as gender queer or gender fluid might not identify as boys or girls; for these students, the non-binary gender identity functions as the student's gender identity.
- **Cisgender** refers to individuals whose gender identity, expression, or behavior conforms with those typically associated with their sex assigned at birth.

GLAAD, The Human Rights Campaign, and PFLAG also provide comprehensive reference guides on terminology. *(See Section 8, Resources)*

It is recommended that school personnel discuss with the student the terminology and pronouns each student has chosen.

2. **Student-Centered Approach**

A school district shall accept a student's asserted gender identity; parental consent is not required. Further, a student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the district, school or school personnel.  Nor is a

legal or court-ordered name change required. There is no affirmative duty for any school district personnel to notify a student's parent or guardian of the student's gender identity or expression.

There may be instances where a parent or guardian of a minor student disagrees with the student regarding the name and pronoun to be used at school and in the student's education records. A parent or guardian may object to the minor student's name change request. School districts should consult their board attorney regarding the minor student's civil rights and protections under the NJLAD. Staff should continue to refer to the student in accordance with the student's chosen name and pronoun at school and may consider providing resource information regarding family counseling and support services outside of the school district.

School districts should be mindful of disputes between minor students and parent/guardians concerning the student's gender identity or expression. Many support resources are available through advocacy groups and resources from the New Jersey Department of Children and Families and New Jersey Department of Education's "Child Abuse, Neglect, and Missing Children" webpage.

One of the most important factors in ensuring a safe and supportive environment for transgender students is communication between the school/district and student. School district personnel should have an open, but confidential discussion with the student to ascertain the student's preference on matters such as chosen name, chosen pronoun to use, and parental communications.

- School districts shall ensure that a transgender student is addressed at school by the name and pronoun chosen by the student, regardless of whether a legal name change or change in official school records has occurred.
- School districts shall issue school documentation for a transgender student, such as student identification cards, in the name chosen by the student.
- A transgender student shall be allowed to dress in accordance with the student's gender identity.

School districts should discuss with the student, and any other individuals at the student's request, the risks associated with the student's transgender status being inadvertently disclosed. For example, school districts should inform the student that the transgender status may be revealed due to other students' discussions at home. The school district should work with the transgender student to ensure awareness of activities and events that may inadvertently disclose the transgender student's status.

## 3. Safe and Supportive Environment
Each school district shall develop policies and procedures to ensure that its schools provide a safe and supportive learning environment that is free from discrimination and harassment for transgender students, including students going through a gender transition. Gender-based policies, rules, and practices can have the effect of marginalizing, stigmatizing, and excluding students, whether they are gender nonconforming or not. All school districts shall review and update their

existing policies and procedures, including those regarding classroom activities, school ceremonies, school photographs, and dress codes, to verify that transgender students are not excluded. In addition, school districts shall take the following steps to establish and maintain a nondiscriminatory environment for all students, including transgender and transitioning students:

- School districts must comply with *N.J.S.A.* 18A:37-15 and *N.J.A.C.* 6A:16-7.7, which prohibit harassment, intimidation and bullying, and require that each district board of education develop, adopt, and implement a policy prohibiting harassment, intimidation, or bullying on school property, at a school-sponsored function or on a school bus. If harassment based on gender identity creates a hostile environment, the school must take prompt and effective steps to end the harassment, prevent its recurrence, and, as appropriate, remedy its effects.
- School districts should provide staff training on sensitivity and respect towards transgender students.
- Social and Emotional Learning (SEL) concepts should be incorporated into school culture and curricula.
    - Resources on SEL can be found on the Department of Education's Social and Emotion Learning webpage (https://www.state.nj.us/education/students/safety/sandp/sel/)
- School districts may seek a variety of professionals, including counselors and school psychologists, to provide emotional supports for all students who demonstrate a need. School districts shall ensure that school counselors are knowledgeable regarding issues and concerns relevant to transgender students, students facing other gender identity issues, or students who may be transitioning.
- Dress codes should not be enforced more strictly for transgender and gender nonconforming students than for other students.
- School districts shall honor and recognize a student's asserted gender identity, and shall not require any documentation or evidence in any form, including diagnosis, treatment, or legal name change.
- A school's obligation to ensure nondiscrimination on the basis of gender identity requires schools to provide transgender students equal access to educational programs and activities, even in circumstances in which other students, parents, or community members raise objections or concerns.

## 4. Confidentiality and Privacy

School personnel may not disclose information that may reveal a student's transgender status except as allowed by law. Schools are advised to work with the student to create an appropriate confidentiality plan regarding the student's transgender or transitioning status.

A school district shall keep confidential a current, new, or prospective student's transgender status. Schools should address the student using a chosen name; the student's birth name should be kept confidential by school and district staff (*See Section 5, School Records*).

Due to a specific and compelling need, such as the health and safety of a student or an incident of bias-related crime, a school district may be obligated to disclose a student's status. The school district should inform the student that the school intends to disclose the student's transgender status for the student's protection and well-being. Prior to disclosure, the student should be given the opportunity to personally disclose that information. School districts should make every effort to ensure that any disclosure is made in a way that reduces or eliminates the risk of re-disclosure and protects the transgender student from further harassment. Those measures may include the facilitation of counseling for the student and the student's family to facilitate the family's acceptance and support of the student's transgender status.

During a Harassment, Intimidation, or Bullying investigation a school district is obligated to develop a procedure to report, verbally and in writing, an act of harassment, intimidation, and bullying (HIB) committed by an adult or youth against a student, pursuant to *N.J.A.C.* 6A:16-7.7(a)2viii. In this instance, the school district should inform the student of the school's obligation to report the findings of the HIB investigation pursuant to *N.J.S.A.* 18A:37-15(d), which permits the parents or guardians of the students who are parties to the investigation to receive information about the investigation in accordance with federal and state law and regulation. Under HIB requirements, parents or guardians are entitled to know the nature of the investigation, whether the district found evidence of harassment, intimidation, or bullying, or whether disciplinary action was imposed or services provided to address the incident of harassment, intimidation, or bullying.

School district officials shall take into account the circumstances of the incident when providing notification to parents or guardians of all students involved in the reported harassment, intimidation, or bullying incident and when conveying the nature of the incident, including the actual or perceived protected category motivating the alleged offense, pursuant to *N.J.A.C.* 6A:16-7.7(a)2viii(2).

Disclosure of personally identifiable information from a student's education record to other school officials within the district, whom the district has determined have a legitimate educational interest in the information, may be permissible under FERPA (34 C.F.R. § 99.31(a)(1)). The school district shall make a concerted effort to ensure that school officials obtain access to only those education records in which they have legitimate educational interests.

- School districts shall comply with all laws and regulations regarding the confidentiality of student records and student privacy, including the requirements set forth at 20 U.S.C. § 1232g, Family Educational Rights and Privacy Act; 34 CFR Part 99, Family Educational Rights and Privacy; 20 U.S.C. § 1232h, Protection of Pupil Rights; 34 CFR Part 98, Student Rights in Research, Experimental Programs, and Testing; *P.L.* 104-191, Health Insurance Portability and Accountability Act; 45 CFR Part 160, General Administrative Requirements; 20 U.S.C. § 7917, Transfer of school disciplinary records; 42 CFR Part 2, Confidentiality of Alcohol and Drug Abuse Patient Records; *N.J.S.A.* 18A:40A-7.1, Confidentiality of certain information provided by pupils, exceptions; *N.J.A.C.* 6A:16-3.2, Confidentiality of student alcohol and other drug information; *N.J.S.A.* 18A:36-19, Pupil records, creation, maintenance and

retention, security and access, regulations, nonliability; *N.J.S.A.* 2A:4A-60, Disclosure of juvenile information, penalties for disclosure; *N.J.A.C.* 6A:32-7, Student Records; *N.J.A.C.* 6A:14-2.9, Student records; as well as all other existing Federal and State laws and rules pertaining to student records and confidentiality.

## 5. School records

If a student has expressed a preference to be called by a name other than their birth name, permanent student records containing the student's birth name should be kept in a separate, confidential file. This file should only be shared with appropriate school staff after consultation with a student. A separate file containing records bearing the student's chosen name may also be kept. If the student has previously been known at school or in school records by a birth name, the principal should direct school personnel to use the student's chosen name and not the student's birth name. To ensure consistency among teachers, school administrators, substitute teachers and other staff, every effort should be made to immediately update student education records (for example, attendance records, transcripts, Individualized Education Programs, etc.) with the student's chosen name and gender pronouns, consistent with the student's gender identity and expression, and not circulate records with the student's birth name, unless directed by the student.

- Districts shall report to the New Jersey Department of Education through NJ SMART a student's name or gender based upon that student's chosen name and corresponding gender identity. Changing the name or gender identity from what was reported in previous years will not affect the reliability of the data reported.
- If a district changes a student's name or gender identity, it must also maintain locally a separate record reflecting the student's legal name and sex assigned at birth until receipt of documentation of a legal change of name or gender.

## 6. Activities

With respect to gender-segregated classes or athletic activities, including intramural and interscholastic athletics, all students must be allowed to participate in a manner consistent with their gender identity.

School districts shall:

- Provide transgender students with the same opportunities to participate in physical education as other students in accordance with their gender identity;
- Permit a transgender student to participate in gender-segregated school activities in accordance with the student's gender identity;
- Permit and support the formation of student clubs or programs regarding issues related to lesbian, gay, bisexual, transgender, and queer/questioning (LGBTQ) youth; and
- Offer support in the creation of peer led educational groups.

## 7. Use of Facilities

All students are entitled to have access to restrooms, locker rooms and changing facilities in accordance with their gender identity to allow for involvement in various school programs and activities.

In all cases, the school principal must work with the student and staff so all parties are aware of facility policies and understand that the student may access the restroom, locker room, and changing facility that corresponds to the student's gender identity. While some transgender students will want that arrangement, others may be uncomfortable with it. Transgender students who are uncomfortable using a sex-segregated restroom should be provided with a safe and adequate alternative, such as a single "unisex" restroom or the nurse's restroom. Similarly, some transgender students may be uncomfortable using the changing facilities that correspond to the student's gender identity. Non-transgender students should also be afforded the option to use a private facility, such as a unisex facility or the nurse's restroom, should they feel uncomfortable.

- School districts shall allow a transgender student to use a restroom or locker room based on the student's gender identity.
- Reasonable alternative arrangements shall be made if needed to ensure a student's safety and comfort. This direction for accommodations should come from the student.

## 8. Resources

The Department has sourced a variety of resources regarding professional development opportunities for school district personnel as well as developmentally appropriate information for students regarding LGBTQ issues. These resources can be found here: https://nj.gov/education/students/safety/sandp/transgender/

*Please be advised that these resources are provided for informational purposes only. Neither the New Jersey Department of Education, nor its officers, employees, nor agents, specifically endorse these resources or the entity hosting these resources. Please note that the New Jersey Department of Education has not validated the materials related to these resources.*

*For additional information or if you have any questions regarding this guidance, please contact the Division of Student Services at schoolclimate@doe.nj.gov.*

# EXHIBIT C

# MURRAY-NOLAN BERUTTI LLC
## *Attorneys at Law*

**Partners**
Gwyneth K. Murray-Nolan (NJ, NY, DC)
gwyneth@murray-nolanberutti.com

Ronald A. Berutti (NJ, NY, KY)
ron@murray-nolanberutti.com

**Associate**
Rebecca Petersen (NJ)
rebecca@murray-nolanberutti.com

**Of Counsel**
Stephanie Jablonsky (NJ)
stephanie@murray-nolanberutti.com

### HIGHLY CONFIDENTIAL

December 8, 2023

**By Hand Delivery**
Mr. Scott McKinney
Superintendent
Delaware Valley Regional High School
19 Senator Stout Road
Frenchtown, NJ 08825

Re.   **CEASE AND DESIST**
▬▬▬. Delaware Valley High School Board of Ed. et als.
**Our File No. 01195**

Dear Mr. McKinney,

    This firm has been retained to represent the interests of ▬▬▬▬▬▬▬ and his minor daughter, ▬▬▬▬▬▬. We have been advised the Delaware Valley Regional High School District ("District") has been taking affirmative actions to socially transition ▬▬▬, a child who is diagnosed with Asperger's Syndrome, including facilitating her use of a male identity at school without parental notice or consent. Moreover, we understand that the District has been actively concealing such actions from ▬▬▬ **Demand hereby is made that the District and all of its employees and agents immediately cease and desist from undertaking any and all such activity.**

    Mr. ▬▬▬ contends that the District's actions violate, without limitation, the fundamental right of parents to care for and raise their children, as set forth by the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000). As such, the District has and continues to violate Mr. ▬▬▬ rights under the Fourteenth Amendment of the United States Constitution. Mr. ▬▬▬

**136 Central Avenue, 2nd Floor, Clark, New Jersey 07066 (908) 588-2111**

30 Wall Street, 8ᵗʰ Floor, New York, New York 10005 (Please reply to NJ office)

December 8, 2023
Page 2

Mr. Scott McKinney, Superintendent
Delaware Valley Regional High School District

further contends, without limitation, that the District's acts violate 20 U.S.C. §3401(3), which provides: "parents have the primary responsibility for the education of their children, and States, localities, and private institutions have the primary responsibility for supporting that parental role." Thus, to the extent the District contends that state law or policy compels the District to act in the manner in which it has toward ▇▇▇▇, the Supremacy Clause of the United States Constitution (Art. VI, Cl. 2) provides otherwise. Moreover, Mr. ▇▇▇▇ contends that the District's actions otherwise violate the New Jersey Constitution and laws, and public policy and laws of the United States and of New Jersey.

We look forward to your immediate confirmation that the District and all those acting under it will comport with this demand, and that all records of the District correctly reflect that Avery is the child's name, and that she is a female.

Please be guided accordingly.

Very truly yours,

MURRAY-NOLAN BERUTTI LLC

By: _____
Ronald A. Berutti

RAB/rp

# EXHIBIT D

# MURRAY-NOLAN BERUTTI LLC

## *Attorneys at Law*

**Partners**
Gwyneth K. Murray-Nolan (NJ, NY, DC)
gwyneth@murray-nolanberutti.com

Ronald A. Berutti (NJ, NY, KY)
ron@murray-nolanberutti.com

**Associate**
Rebecca Petersen (NJ)
rebecca@murray-nolanberutti.com

**Of Counsel**
Stephanie Jablonsky (NJ)
stephanie@murray-nolanberutti.com

### HIGHLY CONFIDENTIAL

December 8, 2023

**Via Email**
Stacey Cherry, Esq.
Fogerty & Hara, Esqs.
21-00 Route 208 South
Fair Lawn, New Jersey 07410

███████ Delaware Valley High School Board of Ed. et als.
**Our File No. 01195**

Dear Ms. Cherry,

As you are aware, this firm represents ███████████ regarding issues concerning his parental rights with respect to his daughter, ████████████. Please accept this letter as a follow up to our meeting of this morning regarding our meeting at the Delaware Valley High School, at which you represented the Delaware Valley Regional High School District ("District"). The following individuals were present at the meeting: Michael Kays, Principal; Kristina Sterbenc, Supervisor of Counselling; and Ashley Miranda, School Counselor. This letter will memorialize the following:

- District employee Ashley Miranda ("Ms. Miranda") advised that she facilitated ███████ name and pronoun change upon ███████ request;

- Ms. Miranda declines to share any information gleaned during what she called a "confidential counseling session" with ███████

**136 Central Avenue, 2nd Floor, Clark, New Jersey 07066 (908) 588-2111**

30 Wall Street, 8ᵗʰ Floor, New York, New York 10005 (Please reply to NJ office)

Stacy Cherry, Esq.
Fogerty & Hara, Esqs.

December 8, 2023
Page 2

- Ms. Miranda stated that she was not aware that ⬛ has been diagnosed with ASD and ADHD, or that she experienced severe childhood trauma with the death of her mother when she was four years old;

- Ms. Miranda stated that she did not explore any of these issues with ⬛ prior to implementing ⬛ social transition;

- Ms. Miranda was also unaware that ⬛ under the care of a therapist;

- The District notified all staff to utilize ⬛ chosen male name and pronouns;

- You advised that District staff was not permitted to refer to ⬛ by her given name;

- You likewise confirmed that ⬛ was not informed by the District of ⬛ social transition or in-school name change;

- You advised that the District will continue to socially transition ⬛ going forward against the express wishes of ⬛

- You further threatened that if ⬛ did not return ⬛ to school, that the District would "take further action."

This will also confirm that at the meeting's conclusion, I handed you a Cease and Desist letter directed to Superintendent McKinney, dated December 8, 2023. Please note that our client's legal positions within the Cease and Desist letter remain unchanged, including, without limitation, that the District is violating ⬛ constitutional rights. Thus, we look forward to receiving the District's response on Monday.

Thank you.

Very truly yours,

**MURRAY-NOLAN BERUTTI LLC**

*Rebecca Petersen*

By:_____
        Rebecca Petersen

RP/rab

# EXHIBIT E

## FOGARTY & HARA
### COUNSELLORS AT LAW

RODNEY T. HARA
STEPHEN R. FOGARTY
VITTORIO S. LAPIRA
STACEY THERESE CHERRY
ROBERT D. LORFINK

JANET L. FIKE
DAVID J. ULRIC
SEAN W. FOGARTY
VERONICA A. ACEVEDO

21-00 ROUTE 208 SOUTH
FAIR LAWN, NEW JERSEY 07410

(201) 791-3340
TELECOPIER (201) 791-3432

December 14, 2023

**VIA EMAIL**

Rebecca Petersen, Esq.
Murray-Nolan Berutti LLC
136 Central Avenue
2nd Floor
Clark, New Jersey 07066

> **Re:  In the Matter of the Delaware Valley Regional High School Board of Education and** ▓▓▓▓
> **Our File No.:  18/334**

Dear Ms. Petersen:

This office represents the Delaware Valley Regional High School Board of Education, which operates the Delaware Valley Regional High School District. Mr. Berutti's letter of December 8, 2023, to Superintendent Scott McKinney was forwarded to our attention for a response. Please be advised that the District has and will continue to act in accordance with applicable federal and state laws, and the New Jersey Department of Education's guidance on transgender students.

Please also accept this correspondence in response to your letter of December 8, 2023, which purports to summarize our December 8, 2023 meeting. Your letter does not accurately reflect the discussion and makes inferences that are not based on the information shared. First, the District is not facilitating a name or pronoun change. Rather, the District is following federal and state anti-discrimination law, as well as the Department of Education's guidance regarding accepting a student's asserted gender identity.

Second, the counselor was not aware of ▓▓▓▓ diagnoses of Autism Spectrum Disorder or Attention Deficit Hyperactivity Disorder, or that she is seeing a therapist. ▓▓▓▓, ▓▓▓▓▓▓▓, who also attended the meeting, confirmed at the meeting that this information was not previously shared with the District. The counselor was aware of the passing of ▓▓▓▓ mother.

Third, the District did not state that they will not refer to ▓▓▓▓ by her given name and pronouns. Rather, I clarified that the District will follow applicable federal and state laws and the Department of Education guidance. Should ▓▓▓▓ request to be called by

{F&H00177052.DOCX/4}

Rebecca Petersen, Esq.
December 14, 2023
Page 2

a name or pronoun other than that which she was assigned at birth, the District will honor that request.

Finally, ▬▬▬ was not threatened. ▬▬ has not attended school for more than 10 days. We advised that she will be considered truant and the District may have to take further action, as it is required by law to do, N.J.A.C. 6A:16-7.6, if she continues to be absent. We also advised that, if a letter requesting medical home instruction was submitted, it would be reviewed by the school. No such request has been submitted; however, you indicated in a phone message today that you will be providing medical documentation regarding ▬▬▬ absences. The District will review that information once it is received.

The District also notes that ▬▬▬ conduct at the meeting was threatening. Moreover, when I cautioned her that her language appeared threatening, she made a point of specifically stating that she was making a threat. You attempted to clarify that it was a threat of legal action; however, her intention was clear from her unequivocal language. Please advise your client that threats and intimidation of any kind against the school and its staff will not be tolerated.

In closing, the District again wants to reiterate that its staff remains ready for ▬▬▬ to return to school and it hopes that no further action is necessary to ensure that she receives an education in compliance with the compulsory education laws. Therefore, please confirm when ▬▬▬ will be returning to school, if the parents will be submitting a request for home instruction, or if they will be withdrawing her from the District and providing for her education in compliance with the compulsory education laws. If she continues to be absent without medical documentation, the District will have no choice but to take further action to address her lack of attendance.

If you have any questions, of course, do not hesitate to contact me.

With kind regards, I am

Very truly yours,

FOGARTY & HARA

BY: _/s/ Stacey Therese Cherry_
    Stacey Therese Cherry

STC:aec
cc:    Scott McKinney – via email only
       Superintendent of Schools

{F&H00177052.DOCX/4}