**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTIN HEAPS,<br><br>Plaintiff,<br><br>v.<br><br>DELAWARE VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, *et al.*,<br><br>Defendants. | Civil Action No. 24-107 (GC) (JBD)<br><br>**MEMORANDUM ORDER** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Attorney General of the State of New Jersey Jennifer Davenport and Commissioner of the New Jersey Department of Education Lily Laux (State Defendants)'s Motion to Consolidate this matter (the Heaps Action) with *Lema v. Davenport*, Civ. No. 26-4682 (D.N.J.) (the Lema Action), currently pending before the Honorable Robert Kirsch, U.S.D.J., pursuant to Federal Rule of Civil Procedure (Rule) 42(a). (ECF No. 130.) Heaps opposed, (ECF No. 133), and the State Defendants replied, (ECF No. 136). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motion to Consolidate is **DENIED**.

# I. BACKGROUND

## A. The Heaps Action[1]

The Heaps Action was filed on January 5, 2024, and the operative Second Amended Complaint (SAC) was filed on April 22, 2026. (*Heaps*, ECF Nos. 1, 127.) The plaintiff is the parent of Jane, a child formerly enrolled at the Delaware Valley Regional High School (DVRHS). (*Heaps*, ECF No. 127 at 4.)[2] The defendants include the New Jersey Attorney General, the Commissioner of the New Jersey Department of Education (NJDOE), the DVRHS Board of Education (BOE), the Superintendent of the DVRHS BOE, and a DVRHS School Counselor (the DVRHS BOE, Superintendent and School Counselor, the District Defendants). (*Id.* at 1, 4.) The Attorney General, Commissioner, Superintendent and School Counselor are each sued in their official capacities; the Superintendent and School Counselor are also sued in their individual capacities. (*Id.* at 4.)

The Heaps Action arises out of "actions taken . . . to socially transition [Jane] from female to male" at DVRHS, a public school. (*Id.* ¶ 1.) Heaps alleges that the Attorney General "has taken the legal position that if requested by a student, school districts are required to hide social transition from parents under the New Jersey Law Against Discrimination, . . . which provides certain anti-discrimination protections for transgender individuals." (*Id.* ¶ 6.) Heaps further alleges that the NJDOE published guidance "encouraging" public schools to take a "student-centered approach" to students who believe themselves to be transgender. (*Id.* ¶ 7.) The guidance stated that "school district personnel should have an open, but confidential discussion with the student to ascertain

---

[1] The Court summarizes the factual allegations from the two operative complaints for the purpose of deciding the instant Motion.

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

the student's preference on matters such as chosen name, chosen pronoun use, and parental communications." (*Id.* ¶¶ 7, 26.) Heaps also alleges that the DVRHS BOE adopted a policy that accords with this guidance, as it states:

> The school district shall accept a student's asserted gender identity; parental consent is not required. A student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the school district, school, or school staff members. In addition, a legal or court ordered name change is not required. There is no affirmative duty for any school district staff member to notify a student's parent of the student's gender identity or expression.

(*Id.* ¶ 25.)

Heaps alleges that these state and local policies resulted in the violation of his constitutional rights. Jane, as a freshman at DVRHS, participated in an extracurricular club and expressed to the club's staff advisor, the School Counselor, that Jane "would like to undergo a social transition from female to male in school." (*Id.* ¶¶ 36-38.) The School Counselor "affirmed Jane's expressed identity" and helped "facilitate Jane's social transition." (*Id.* ¶ 38.) The School Counselor "asked Jane if she would like to change her name and pronouns and be known only as a male at school, to which Jane agreed." (*Id.* ¶ 41.) The School Counselor "advised that all such staff were thereafter *required* to use the alternate male name by which Jane desired to be called." (*Id.* ¶¶ 42-43 (emphasis in original).)

Jane did not want Heaps to know about this decision. (*Id.* ¶ 42.) To conceal Jane's social transition, school staff "always used Jane's given female name when speaking with [ ] Heaps." (*Id.* ¶ 44.) Heaps eventually learned of Jane's social transition after a parent called Jane by a male name in Heaps' presence. (*Id.* ¶ 45.)

Heaps subsequently "placed Jane on home instruction." (*Id.* ¶ 47.) In a meeting with the District Defendants, Heaps "expressly denied his consent to the continuance of Jane's social

transition at school" but, despite his objections, Heaps was advised that "as a matter of State and District public policy," "Jane would continue to be called by a male name until such time as Jane requested otherwise." (*Id.* ¶ 51.) The District Defendants sought to implement home instruction in a local library but stated teachers would "comply with district policy, NJDOE guidance, and federal and state laws regarding Jane's name preference." (*Id.* ¶ 56.) Heaps eventually moved to Florida with Jane.[3] (*Id.* ¶¶ 64-65.)

The SAC alleges violations of Plaintiff's Fourteenth Amendment substantive and procedural due process rights as well as a deprivation of "long-standing privileges of American life and citizenship" under the Privileges or Immunities Clause of the Fourteenth Amendment. (*Id.* at 17-25.) Heaps seeks extensive declaratory relief, (*id.* at 16-17), monetary damages, including consequential, punitive, and compensatory damages, (*id.* at 19, 21, 25), and injunctive relief, (*id.*), as well as reasonable attorneys' fees and costs with interest, (*id.*).

**B. The Lema Action**

The Lema Action was filed on April 28, 2026, and the operative Amended Complaint was filed on April 30, 2026. (*Lema*, ECF Nos. 1, 6.) The plaintiffs are parents of children enrolled in various New Jersey public schools. (*Lema*, ECF No. 6 at 4-5.) The defendants include the Attorney General, the Commissioner of the NJDOE, and the presidents of five municipal BOEs, including for Hackensack, Burlington Township, North Hunterdon-Voorhees Regional High

---

[3] After this Court denied Heaps' motion for a preliminary injunction, (*Heaps*, ECF No. 89), Heaps appealed that ruling to the Third Circuit, (*Heaps*, ECF No. 92). While the appeal was pending, Heaps moved to Florida with Jane and subsequently withdrew the appeal. (*Heaps*, ECF Nos. 112, 114; *see also Heaps*, ECF No. 133 at 9 ("Heaps moved to Florida . . . . Consequently, as there was no longer a need for emergent relief, Mr. Heaps withdrew his appeal.").) Heaps subsequently filed the SAC, which is the operative pleading in the Heaps Action.

School District, Bethlehem Township, and Newark (collectively, the School Boards). (*Id.*) The Lema Action defendants are named exclusively in their official capacities. (*Id.*)

The Lema Action plaintiffs allege that New Jersey state and local policies requiring schools to keep student efforts to transition confidential from parents, unless the student consents to disclosure, are unconstitutional. (*Id.* at 2.) Like in the Heaps Action, the Lema Action plaintiffs take issue with the Attorney General's interpretation of NJLAD to mean "that if requested by a student, school districts are required to, or at the very least are permitted to, hide gender transitioning from parents." (*Id.* ¶ 4.) They further allege, like in the Heaps Action, that the related NJDOE guidance violates "long-established constitutional rights of parents." (*Id.* ¶ 5.)

The Lema Action plaintiffs further allege that the School Boards have followed this state guidance to adopt policies permitting students to explore gender transitioning without mandatory notice to parents. (*Id.* ¶¶ 3-5, 24-31.) Plaintiffs' allegations are not based on any specific application of the School Boards' policies to their children, but rather they object to the policies on the basis that, at any moment, they *could* be applied at the child's request, "presenting a constant threat of an immediate and irreparable harm to the plaintiffs' fundamental constitutional rights." (*Id.* ¶ 47.)

Plaintiffs assert two causes of action under the First Amendment and the Fourteenth Amendment for violation of Plaintiffs' free exercise and substantive due process rights, respectively. (*Id.* at 16-22.) They seek extensive declaratory relief, (*id.* at 13-16), and injunctive relief, (*id.* at 18-19, 21-22), as well as reasonable attorneys' fees and costs, (*id.* at 19, 22).

**C. The Pending Motion to Consolidate**

The State Defendants ask the Court to consolidate these actions "for all pretrial and trial purposes." (*Heaps*, ECF No. 130-1 at 6.) They argue that the plaintiffs are "represented by the

same counsel," "challenge the same set of state policies," "rely on substantially similar legal theories," "ask for substantially similar relief," "name the same State Defendants," "bring a Fourteenth Amendment challenge to the State's anti-discrimination laws and guidance on school district interactions with transgender students," "allege that the State has violated parents' constitutional rights because they do not require parental notification and consent before recognizing a transgender student's affirmatively expressed gender identity," "request declaratory and injunctive relief to prevent the Attorney General and Commissioner of Education from enforcing or implementing the challenged state policies," and ultimately "challenge local school district policies that allegedly do not require parental consent or notice for a student to have his or her gender identity recognized and respected by the district." (*Id.* at 5-6.) They argue that proceeding separately "would waste judicial resources" and would "risk the inconsistent adjudication of identical legal issues." (*Id.* at 6.) They further note that the cases are in a similar procedural posture, as the operative complaints in each case were filed just over one week apart, and "involve largely overlapping counsel and defendants," suggesting that consolidation is unlikely to create undue cost or delay and, rather, would "create efficiencies for the parties and the Court." (*Id.*)

In response, Heaps argues that consolidation is not warranted here. While Heaps concedes that "there are common questions of fact and law involved in the two cases," Heaps contends that the Court should look past this because "consolidation has the potential of being highly prejudicial to the plaintiffs in both cases and will not promote cost-savings or judicial efficiency." (*Heaps*, ECF No. 133 at 11-13.) Heaps emphasizes that his case is ready for discovery, whereas the Lema Action plaintiffs intend to pursue preliminary injunctive relief. (*Id.* at 6-7.) Heaps further notes that the Lema Action seeks no money damages and will require only minimal discovery "since the

issues raised are pure questions of constitutional law." (*Id.* at 7.) Heaps also expresses concern about the impact of consolidation on a potential appeal of a decision on the Lema Action's anticipated motion for a preliminary injunction because "no court appears to have decided whether Rule 42(a) permits an immediate appeal of a preliminary injunction denial in one of two consolidated cases," which Heaps argues could require the Lema Action plaintiffs "to wait until a final judgment is entered in *Heaps* before taking an appeal of a preliminary injunction denial." (*Id.*)

## II. LEGAL STANDARD

For "convenience and economy in administration," *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 497 (1933)), Rule 42(a) permits but does not require consolidation of actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (emphasizing that under Rule 42(a), "the court *may* . . . consolidate the actions" (emphasis in original)). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018) (citing 9A Wright & Miller § 2383 (collecting cases)). Courts should weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (citation omitted). "The burden is on the moving party to show that consolidation is appropriate." *Goldberg v. Nedelcu*, Civ. No. 24-10000, 2025 WL 2533606, at *1 (D.N.J. Sep. 3, 2025).

## III. DISCUSSION

The Court finds that consolidation is not appropriate or warranted at this time. While the opposition concedes that "it is correct that there are common questions of fact and law involved in the two cases," (*Heaps*, ECF No. 133 at 13), "the mere existence of common issues does not

require consolidation," *Shire LLC v. Watson Lab'ys, Inc.*, Civ. No. 12-83, 2012 WL 12902495, at *2 (D.N.J. June 20, 2012); *see also Easterday v. Federated Mut. Ins. Co.*, Civ. No. 14-1415, 2015 WL 1312684, at *5 (E.D. Pa. Mar. 24, 2015) ("While there are many common questions of law and fact between the two cases, there are important enough differences which would make consolidation inappropriate."). There are several important distinctions between the Heaps Action and the Lema Action that warrant declining to consolidate in the interest of avoiding potential delay and prejudice to Plaintiffs.

First, while both actions are presently at the pleading stage, the cases have distinct procedural backgrounds and trajectories. After substantial litigation of Heaps' motion for a preliminary injunction—including, for a time, an appeal to the Third Circuit—the parties have been litigating the case for over two years. Heaps now represents that he seeks only permanent—not preliminary—injunctive relief and intends to proceed with discovery, as Heaps notes that the Third Circuit's holding in *Doe v. Pine Richland School District*, No. 24-3348, 2026 WL 1103489 (3d Cir. Apr. 23, 2026), precludes further preliminary injunctive relief because Heaps and his child now live outside of New Jersey. (*Heaps*, ECF No. 133 at 6, 14.) The *Lema* plaintiffs, on the other hand, have indicated their intent to file a motion for a preliminary injunction and a subsequent appeal, if necessary. (*Heaps*, ECF No.133 at 5 n.2, 6-7, 10 ("It is a virtual certainty that the disappointed parties in *Lema* will want to bring an immediate appeal[.]").)

Upon the filing of a motion for a preliminary injunction, the cases are likely to proceed on two separate tracks, which would not result in the conservation of judicial resources. An appeal

of any preliminary injunction ruling will result in significant delays of the Heaps Action.[4] Also, the State Defendants may still seek to dismiss the Heaps Action pursuant to Rule 12.

Second, the actions are in part predicated on distinct factual allegations. In particular, Heaps asserts that his rights were violated in part because of certain defendants' specific conduct regarding his child after his child expressed a desire to socially transition at school. (*Heaps*, ECF No. 127 ¶¶ 36-58, 89, 98, 114.) No such allegations exist in the Lema Action. Indeed, the State Defendants are the only consistent parties across the actions; the plaintiffs of each action and the other defendants in each action all differ. And further, arising from these differing factual allegations is the demand for monetary damages in the Heaps Action, including compensatory and consequential damages from all defendants and punitive damages from the District Defendants, whereas the Lema Action seeks only injunctive and declaratory relief. (*Heaps*, ECF No. 127 at 19, 21, 25; *Heaps*, ECF No. 133 at 14 ("The *Lema* plaintiffs do not seek any money damages.").) Pursuit of monetary damages in the Heaps Action may require discovery into issues not relevant to the Lema Action, such as discovery into factual issues like motive, intent, and "reckless or callous indifference." *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (finding punitive damages available in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"). Such discovery in the Heaps Action may lead to unnecessary delays in the Lema Action. *See Adami v. Cardo Windows, Inc.*, Civ. No. 12-2804, 2013 WL 12180797, at *2 (D.N.J. Aug. 1, 2013) ("Punitive damage discovery is often costly, time-consuming, and intrusive, and could lead to numerous disputes."). When the events giving rise to cases differ, courts may deny motions to

---

4 If an interlocutory appeal would not be permitted, the opposition argues that the *Lema* plaintiffs may be required to wait until a final judgment to take such appeal. (*Heaps*, ECF No. 133 at 14-15.)

consolidate. *See Williams v. Gavin*, 640 F. App'x 152, 155 (3d Cir. 2016) (noting the broad discretion afforded district courts in case consolidation and affirming the district court's denial of a motion to consolidate in part because of differing facts in the cases at issue).

Third, the cases will require inquiry into differing and complex legal issues. While the Plaintiffs may challenge the same underlying state policies, the legal basis for doing so is not entirely the same. Notably, Heaps alleges a violation of his procedural due process rights and a count under the Privileges or Immunities Clause that the Lema Action does not assert, and the Lema Action includes a count under the Free Exercise Clause of the First Amendment that the Heaps Action does not assert. (*See, e.g.*, *Heaps*, ECF No. 127 at 14-17; *Lema*, ECF No. 6 at 10-16.) The Court notes the State Defendants' argument that denying consolidation could "risk the inconsistent adjudication of identical legal issues." (*Heaps*, ECF No. 130-1 at 6.) However, the Court finds there are significant distinctions between the cases that outweigh this concern. *See Carcaise v. Cemex, Inc.*, 217 F. Supp. 2d 603, 609 (W.D. Pa. 2002) (denying motion to consolidate despite the risk of inconsistent adjudications).

On balance, the Court finds that the potential for prejudice and delay outweigh any potential convenience and efficiency consolidation could offer.

## IV. ORDER

For the reasons set forth above, and other good cause shown,

**IT IS** on this 29th day of July, 2026 **ORDERED** as follows:

1. The Motion to Consolidate (ECF No. 130) is **DENIED** without prejudice.

2. The Clerk's Office is directed to **TERMINATE** the Motion pending at ECF No. 130.

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE